Marcia Hofmann (250087)
*marcia@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333 x116
Facsimile: (415) 436-9993

David L. Sobel *(pro hac vice pending)*
*sobel@eff.org*
ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Ave. NW
Suite 650
Washington, DC  20009
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>                                    Plaintiff,<br><br>    v.<br><br>OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE<br><br>  and<br><br> DEPARTMENT OF JUSTICE,<br><br>                                    Defendants. | NO. 08-1023 EDL<br><br>**NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. iii

I.  INTRODUCTION ....................................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................................... 2

A.  The Administration's Campaign to Shield Telecommunications Carriers From   Liability for Their Role in Unlawful Surveillance Activity.................................. 2

B.  EFF's Freedom of Information Act Requests For Records About the Telecom Lobbying Campaign and Requests for Expedited Processing ............................... 8

III.  ARGUMENT ........................................................................................................... 11

A.  The Court has Jurisdiction to Grant the Requested Relief ................................. 11

B.  EFF is Entitled to Entry of an Order for Preliminary Injunction ....................... 12

1.  EFF is Likely to Prevail on the Merits of Its Claim.................................... 13

2.  EFF Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief.......................................................................................... 16

3.  Injunctive Relief Will Not Burden Others' Interests .................................. 20

4.  The Public Interest Favors the Requested Relief......................................... 21

C.  The Court Should Order Defendants to Process EFF's FOIA Requests Immediately......... 22

IV.  CONCLUSION ........................................................................................................ 25

-ii-

PL.'S NOT. OF MOT. AND MOT. FOR PRELIM. INJ.; MEM. IN SUPP. OF
PL.'S MOT. FOR PRELIM. INJ.

1

2

## TABLE OF AUTHORITIES

3

**CASES**

*ACLU v. Dep't of Defense,*
  339 F. Supp. 2d 501 (S.D.N.Y. 2004)............................................................................. 22, 23

*ACLU v. Dep't of Justice,*
  321 F. Supp. 2d 24 (D.D.C. 2004)................................................................................. 18, 22

*Aguilera v. FBI,*
  941 F. Supp. 144 (D.D.C. 1996)....................................................................................... 22

*Al-Fayed v. CIA,*
  254 F.3d 300 (D.C. Cir. 2001)...................................................................................... 11, 12

*Asseo v. An Am. Grain Co.,*
  805 F.2d 23 (1st Cir. 1986) ................................................................................................. 3

*August v. FBI,*
  328 F.3d 697 (D.C. Cir. 2003) .......................................................................................... 16

*Board of Educ. v. Pico,*
  457 U.S. 853 (1982)......................................................................................................... 17

*Cherokee National of Okla. v. Babbitt,*
  117 F.3d 1489 (D.C. Cir. 1997)........................................................................................ 21

*Cleaver v. Kelley,*
  427 F. Supp. 80 (D.D.C. 1976)......................................................................................... 22

*Cornelius v. NAACP Legal Def. & Educ. Fund,*
  473 U.S. 788 (1985)......................................................................................................... 17

*Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*
  49 F. Supp. 2d 3 (D.D.C. 1999)..................................................................................... 21-22

*Dep't of Justice v. Reporters Committee for Freedom of the Press,*
  489 U.S. 749 (1989).......................................................................................................... 21

*Edmonds v. FBI,*
  No. 02-1294, 2002 U.S. Dist. LEXIS 26578 (D.D.C. Dec. 3, 2002)........................................ 21

*Elec. Privacy Info. Ctr. v. Dep't of Justice,*
  No. 05-845, 2005 U.S. Dist. LEXIS 40318 (D.D.C. Nov. 16, 2005) ................................... 23-24

*Elec. Privacy Info. Ctr. v. Dep't of Justice,*
  416 F. Supp. 2d 24 (D.D.C. 2006).................................................................................passim

*Elec. Frontier Foundation v. Dep't of Justice,*
  No. 07-0656 (JDB) slip op. (D.D.C. June 15, 2007) ........................................................ 13, 24

*Elec. Frontier Foundation v. Office of the Director of National Intelligence,*
  No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585 (N.D. Cal. Nov. 27, 2007) ........................passim

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iii-

*Flynt Distrib. Co. v. Harvey,*
  734 F.2d 1389 (9th Cir. 1984) ............................................................................... 3

*Gerstein v. CIA,*
  No. C-06-4643 MMC, 2006 U.S. Dist. LEXIS 89847 (N.D. Cal. Nov. 29, 2006) .............. 18, 23

*Gerstein v. CIA,*
  No. C-06-4643 MMC, 2006 U.S. Dist. LEXIS 89883 (N.D. Cal. Nov. 29, 2006) ..............passim

*Gilmore v. Dep't of Energy,*
  33 F. Supp. 1184 (N.D. Cal. 1998) ...................................................................14, 15

*Idaho Watersheds Project v. Hahn,*
  307 F.3d 815 (9th Cir. 2002) ............................................................................ 12-13

*In re NSA Telecommunications Records Litigation*
  (MDL Docket No. 06-1791 VRW) ........................................................................... 5

*Jacksonville Port Authr. v. Adams,*
  556 F.2d 52 (D.C. Cir. 1977) ................................................................................. 21

*Judicial Watch, Inc. v. Dep't of Energy,*
  191 F. Supp. 2d 138 (D.D.C. 2002) ........................................................................ 23

*Kos Pharm., Inc. v. Andrx Corp.,*
  369 F.3d 700 (3d Cir. 2004) ..................................................................................... 3

*Leadership Conference on Civil Rights v. Gonzales,*
  404 F. Supp. 2d 246 (D.D.C. 2005) ........................................................................ 18

*Local Lodge No. 1266, Int'l Ass'n of Machinists and Aerospace Workers v. Panoramic Corp.,*
  668 F.2d 276 (7th Cir. 1981). ................................................................................. 19

*Los Angeles Times Communications LLC v. Dep't of Labor,*
  483 F. Supp. 2d 975 (C.D. Cal. 2007) ..................................................................... 21

*Martin-Marietta Corp. v. Bendix Corp.,*
  690 F.2d 558 (6th Cir. 1982) .................................................................................. 16

*Nat'l Archives & Records Admin. v. Favish,*
  541 U.S. 157 (2004) ............................................................................................... 19

*Nat'l Ctr. For Immigrants Rights v. INS,*
  743 F.2d 1365 (9th Cir. 1984) ............................................................................... 13

*Natural Resources Defense Council v. Dep't of Energy,*
  191 F. Supp. 2d 41 (D.D.C. 2002) ................................................................. 19, 23-24

*New York Times Co. v. Sullivan,*
  376 U.S. 254 (1964) ............................................................................................... 17

*New.Net, Inc. v. Lavasoft,*
  356 F Supp. 2d 1071 (C.D. Cal. 2003) ...................................................................... 3

-iv-

PL.'S NOT. OF MOT. AND MOT. FOR PRELIM. INJ.; MEM. IN SUPP. OF
PL.'S MOT. FOR PRELIM. INJ.

*Oglesby v. Dep't of the Army*,
  920 F.2d 57 (D.C. Cir. 1990).................................................................................... 12

*Open America v. Watergate Special Prosecution Force*,
  547 F. 2d 605 (D.C. Cir. 1976).................................................................................. 24

*Payne Enterprises, Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988).................................................................................. 16

*Republic of the Philippines v. Marcos*,
  862 F.2d 1355 (9th Cir. 1988) (en banc)................................................................... 3

*Rosen Entm't Sts. LP v. Eiger Vision*,
  343 F. Supp. 2d 908 (C.D. Cal. 2004) ....................................................................... 3

*Sammis v. Barnhardt*,
  No. C01-3973 BZ, 2002 U.S. Dist. LEXIS 10321 (N.D. Cal. June 6, 2002) ............. 21

*Senate of the Commonwealth of Puerto Rico v. Dep't of Justice*,
  823 F.2d 574 (D.C. Cir. 1987) ................................................................................. 16

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
  739 F.2d 1415 (9th Cir. 1984) ................................................................................. 12

*Sun Microsystems, Inc. v. Microsoft Corp.*,
  188 F.3d 1115 (9th Cir. 1999) ................................................................................. 13

*United States v. BNS, Inc.*,
  858 F.2d 456 (9th Cir. 1988) ............................................................................... 16-17

*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973).................................................................................. 23

**STATUTES**

Freedom of Information Act, 5 U.S.C. § 552................................................................... 1

5 U.S.C. § 552(a)(4)(B) ............................................................................................ 11-12

5 U.S.C. § 552(a)(6)(A) ............................................................................................ 10, 12

5 U.S.C. § 552(a)(6)(C) ................................................................................................. 12

5 U.S.C. § 552(a)(6)(E)(i) ............................................................................................. 14

5 U.S.C. § 552(a)(6)(E)(ii)(I) ....................................................................................... 22

5 U.S.C. § 552(a)(6)(E)(iii)...............................................................................11, 14, 22

5 U.S.C. § 552(a)(6)(E)(v) ............................................................................................ 14

5 U.S.C. § 552(a)(6)(E)(v)(II) ........................................................................................ 9

28 U.S.C. § 1331........................................................................................................... 11

PL.'S NOT. OF MOT. AND MOT. FOR PRELIM. INJ.; MEM. IN SUPP. OF
PL.'S MOT. FOR PRELIM. INJ.

28 C.F.R. § 16.5(a) ........................................................................................................ 22

28 C.F.R. § 16.5(d) ........................................................................................................ 22

28 C.F.R. § 16.5(d)(1) .................................................................................................... 14

28 C.F.R. § 16.5(d)(1)(ii) ................................................................................................. 9

28 C.F.R. § 16.5(d)(4) .................................................................................................... 14

32 C.F.R. § 1700.12(a) .................................................................................................. 22

32 C.F.R. § 1700.12(b) ............................................................................................ 14, 22

32 C.F.R. § 1700.12(c) .................................................................................................. 22

32 C.F.R. § 1700.12(c)(2) .......................................................................................... 9, 14

OPEN Government Act of 2007, Pub. L. No. 110-175, § 6(b), 121 Stat. 2524 (2007) ................. 19

RESTORE Act of 2007, H.R. 3773, 110th Cong. (introduced Oct. 9, 2007). ................................. 7

Fed. R. Civ. P. 65 ............................................................................................................ 1

**OTHER AUTHORITIES**

Leslie Cauley and John Diamond, *Telecoms Let NSA Spy on Calls*, USA TODAY, Feb. 6, 2006 ...... 4

*Current and Projected National Security Threats: Hearing of the S. Select Comm. on Intelligence*, 110th Cong. (Feb. 5, 2008) .......................................................................................... 7

*DNI Authorities and Personnel Issues: Hearing of the S. Select Comm. on Intelligence*, 110th Cong. (Feb. 14, 2008) ....................................................................................... 7

*FISA: Hearing of the H. Permanent Select Comm. on Intelligence*, 110th Cong. (Sept. 20, 2007) ................................................................................................... 6-7

*FISA Amendments: How to Protect Americans' Security and Privacy and Preserve the Rule of Law and Government Accountability: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Oct. 31, 2007) ......................................................................................... 7

*The Foreign Intelligence Surveillance Act and the Protect America Act: Hearing of the H. Permanent Select Comm. on Intelligence*, 110th Cong. (Sept. 18, 2007) ..................... 6

Mark Hosenball and Michael Isikoff, *Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About*, NEWSWEEK, updated Sept. 26, 2007 .......... 6

*Justice Department Oversight: Hearing of the H. Comm. on the Judiciary*, 110th Cong. (Feb. 7, 2008) .......................................................................................................... 7

Eric Lichtblau, *Spy Agency Mined Vast Data Trove, Officials Report*, N.Y. TIMES, Dec. 24, 2005 ............................................................................................................ 3-4

*Nomination of Mark Flip to be Deputy Attorney General: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Dec. 19, 2007) .................................................................. 7

*Oversight of the U.S. Department of Justice: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Jan. 30, 2008) ......................................................................................... 7

*Preserving the Rule of Law in the Fight Against Terrorism: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Oct. 2, 2007) ...................................................................... 7

President's Radio Address, Dec. 17, 2005 ................................................................ 3

Press Conference of the President, Feb. 28, 2008 ..................................................... 8

James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. TIMES, Dec. 16, 2005 .................................................................................................... 3

James Risen, *Bush Signs Law to Widen Reach for Wiretappin*g, N.Y. TIMES, Aug. 5, 2007 ............ 5

Chris Roberts, Transcript: Debate on the Foreign Intelligence Surveillance Act, EL PASO TIMES, Aug. 22, 2007 ........................................................................................................ 6

Signing Statement, President Bush Commends Congress on Passage of Intelligence Legislation, Aug. 6, 2007 .................................................................................................... 5-6

Tim Starks, *House Allows FISA Law to Expire*, CQ TODAY, Feb. 18, 2008 ............................ 8

*Strengthening FISA: Does the Protect America Act Protect Americans' Civil Liberties and Enhance Security?: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Sept. 25, 2007) .... 7

U.S. Dep't of Justice, Freedom of Information Act Report for Fiscal Year 2007, Compliance with Time Limits/Status of Pending Requests ............................................................. 20

U.S. Office of the Director of National Intelligence, Freedom of Information Act Report for Fiscal Year 2007, Compliance with Time Limits/Status of Pending Requests ........................... 20

*Warrantless Surveillance and the Foreign Intelligence Surveillance Act: The Role of Checks and Balances in Protecting Americans' Privacy Rights (Part I): Hearing of the H. Comm. on the Judiciary*, 110th Cong. (Sept. 5, 2007) .............................................................. 6

*Warrantless Surveillance and the Foreign Intelligence Surveillance Act: The Role of Checks and Balances in Protecting Americans' Privacy Rights (Part II): Hearing of the H. Comm. on the Judiciary*, 110th Cong. (Sept. 18, 2007) ............................................................ 6

*Worldwide Threats: Hearing of the H. Permanent Select Comm. on Intelligence*, 110th Cong. (Feb. 7, 2008) .................................................................................................. 7

TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 25, 2008, or as soon thereafter as the matter may be heard, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Electronic Frontier Foundation ("EFF") will, and hereby does, move for an order granting preliminary injunctive relief.

Pursuant to Federal Rule of Civil Procedure 65, EFF seeks to enjoin the Office of the Director of National Intelligence ("ODNI") and the Department of Justice ("DOJ") from impeding EFF's efforts to expeditiously obtain agency records concerning a lobbying campaign to amend federal surveillance law, particularly to insulate telecommunications carriers from liability for their cooperation in widespread and illegal government surveillance. EFF respectfully asks that this Court issue an order requiring Defendants to expedite the processing of EFF's Freedom of Information Act requests submitted to the agencies, and to complete their processing within 10 days of the Court's order. This motion is based on this notice of motion, the memorandum of points and authorities in support of this motion, the declaration of Marcia Hofmann and attached exhibits in support of this motion, and all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the expedited processing and release of records held by Defendants ODNI and DOJ concerning efforts of the agencies and telecommunications industry to push for changes to federal surveillance law, especially to ensure that telecommunications carriers are not held accountable for their participation in the government's unlawful surveillance of millions of Americans.

Defendants ODNI and DOJ acknowledge that the requested information qualifies for

-1-

expedited processing, and each agency has purported to grant EFF's requests for such treatment. Nonetheless, in violation of the FOIA and Defendants' own regulations, ODNI and DOJ have failed to process EFF's requests even within the statutory time frame (20 business days) for a standard request that is *not* entitled to expedited treatment. Defendants' failure to process the requests — or to even identify a date by which it expects to complete processing — violates the law.

An order compelling the timely processing and production of these documents is critical because the information requested is directly relevant to understanding the Defendants' roles in lobbying on behalf of telecommunications providers for legislation designed to force the dismissal of lawsuits against the companies, more than 40 of which are currently pending before this Court. As Defendants forestall compliance with EFF's lawful FOIA requests, Congress continues to consider highly controversial legislation demanded by the President and the Director of National Intelligence. Because both EFF's rights and Defendants' obligations are highly time-sensitive, EFF respectfully requests entry of an order compelling Defendants ODNI and DOJ to process and disclose the requested records immediately.

## II.    STATEMENT OF FACTS

### A.    The Administration's Campaign to Shield Telecommunications Carriers From Liability for Their Role in Unlawful Surveillance Activity

The agency activities at the heart of this case concern ODNI and DOJ's lobbying efforts to ensure telecommunications providers are not held responsible for their participation in a massive, well-documented surveillance program through which the United States government has unlawfully gathered information about millions of Americans. The first news of this surveillance program reached the public on December 15, 2005, when the *New York Times* reported:

> Months after the Sept. 11 attacks, President Bush secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to

search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying, according to government officials.

Under a presidential order signed in 2002, the intelligence agency has monitored the international telephone calls and international e-mail messages of hundreds, perhaps thousands, of people inside the United States without warrants over the past three years in an effort to track possible "dirty numbers" linked to Al Qaeda, the officials said.

James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. TIMES, Dec. 16, 2005, *available at* http://www.nytimes.com/2005/12/16/politics/16program.html (subscription required) (attached to the Declaration of Marcia Hofmann (hereafter "Hofmann Decl.") as Ex. A).[1] The following day, President Bush confirmed in a radio address that he had authorized a surveillance program to intercept international communications in which one participant was suspected of having a connection to the terrorist organization al-Qaeda. President's Radio Address, Dec. 17, 2005, http://www.whitehouse.gov/news/releases/2005/12/20051217.html (Hofmann Decl. Ex. B).

Shortly thereafter, the *New York Times* reported that the NSA's surveillance activity was far more extensive than President Bush had admitted. According to the *Times*:

---

[1] While newspaper accounts are hearsay, it is well established that this Court has the discretion to consider hearsay or otherwise inadmissible evidence for purposes of deciding whether to issue a preliminary injunction. *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc) (allowing hearsay evidence); *accord Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *Rosen Entm't Sts. LP v. Eiger Vision*, 343 F. Supp. 2d 908, 912 (C.D. Cal. 2004) ("District courts have discretion to consider otherwise inadmissible evidence in ruling on the merits of an application for a preliminary injunction."); *New.Net, Inc. v. Lavasoft*, 356 F Supp. 2d 1071, 1076 n.3 (C.D. Cal. 2003) ("[T]he Court may, in its discretion, accept hearsay for purposes of deciding whether to issue the preliminary injunction.") "District courts must exercise their discretion in weighing all the attendant factors, *including the need for expedition*, to assess whether, and to what extent, affidavits or other hearsay materials are appropriate given the character and objectives of the injunctive proceeding." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 719 (3d Cir. 2004) (quoting *Asseo v. An Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986) (quotation marks omitted)) (emphasis added).

> The National Security Agency has traced and analyzed large volumes of telephone and Internet communications flowing into and out of the United States as part of the eavesdropping program that President Bush approved after the Sept. 11, 2001, attacks to hunt for evidence of terrorist activity, according to current and former government officials.
>
> The volume of information harvested from telecommunication data and voice networks, without court-approved warrants, is much larger than the White House has acknowledged, the officials said. It was collected by tapping directly into some of the American telecommunication system's main arteries, they said.
>
> As part of the program approved by President Bush for domestic surveillance without warrants, the N.S.A. has gained the cooperation of American telecommunications companies to obtain backdoor access to streams of domestic and international communications, the officials said.

Eric Lichtblau, *Spy Agency Mined Vast Data Trove, Officials Report*, N.Y. TIMES, Dec. 24, 2005, *available at* http://www.nytimes.com/2005/12/24/politics/24spy.html (Hofmann Decl. Ex. C).

The press continued to reveal the broad scope of the government's surveillance operation. On February 6, 2006, for instance, *USA Today* reported, "[t]he National Security Agency has secured the cooperation of large telecommunications companies, including AT&T, MCI and Sprint, in its efforts to eavesdrop without warrants on international calls by suspected terrorists, according to seven telecommunications executives." Leslie Cauley and John Diamond, *Telecoms Let NSA Spy on Calls*, USA TODAY, Feb. 6, 2006, *available at* http://www.usatoday.com/news/washington/2006-02-05-nsa-telecoms_x.htm (Hofmann Decl. Ex. D).

Since the NSA's massive and illegal warrantless surveillance program was first revealed, approximately 41 lawsuits have been filed throughout the United States seeking to hold the government and cooperating telecommunications carriers responsible for violating the law and the privacy of countless citizens and customers. An additional seven suits have arisen from attempts by state public utility commissioners and attorneys general to seek information from telecommunications carriers about their involvement in warrantless surveillance activities. Nearly all of these lawsuits have been consolidated and are currently pending here in the United States

-4-

PL.'S NOT. OF MOT. AND MEM. FOR PRELIM. INJ.; MEM. IN SUPP. OF
PL.'S MOT. FOR PRELIM. INJ.

District Court for the Northern District of California. *In re NSA Telecommunications Records Litigation* (MDL Docket No. 06-1791 VRW).[2]

On August 5, 2007, President Bush signed into law the Protect America Act of 2007, which expanded the government's authority to intercept communications of Americans without warrants through the Foreign Intelligence Surveillance Act ("FISA"). Pub. L. No. 110-55, 121 Stat. 552. Among other things, the law contained provisions designed to protect telecommunications companies from *future* legal liability for their role in certain government surveillance activity.

In an article published the same day the Protect America Act became law, the *New York Times* reported:

> [The Protect American Act] gave the administration greater power to force telecommunications companies to cooperate with such spying operations. The companies can now be compelled to cooperate by orders from the attorney general and the director of national intelligence.

> Democratic Congressional aides said Sunday that some telecommunications company officials had told Congressional leaders that they were unhappy with that provision in the bill and might challenge the new law in court. The aides said the telecommunications companies had told lawmakers that they would rather have a court-approved warrant ordering them to comply.

> In fact, pressure from the telecommunications companies on the Bush administration has apparently played a major hidden role in the political battle over the surveillance issue over the past few months.

James Risen, *Bush Signs Law to Widen Reach for Wiretapping*, N.Y. TIMES, Aug. 5, 2007, *available at* http://www.nytimes.com/2007/08/06/washington/06nsa.html  (Hofmann Decl. Ex. E).

The Protect America Act included a provision stating that the law would expire in February 2008 without further congressional action. President Bush indicated that the Administration would push for more extensive, and likely retroactive, legal immunity for telecommunications companies:

> When Congress returns in September the Intelligence committees and leaders in both parties will need to complete work on the comprehensive reforms requested by Director [of National Intelligence Mike] McConnell, including the important issue of providing meaningful liability protection to those who are alleged to have assisted our Nation following the attacks of September 11, 2001.

---

[2] EFF is Co-Lead Coordinating Counsel in this litigation.

Signing Statement, President Bush Commends Congress on Passage of Intelligence Legislation, Aug. 6, 2007, *available at* http://www.whitehouse.gov/news/releases/2007/08/20070805.html (Hofmann Decl. Ex. F). In an August 22, 2007 interview discussing the government's warrantless surveillance activities, Director McConnell stated:

> [U]nder the president's program, the terrorist surveillance program, the private sector had assisted us. Because if you're going to get access you've got to have a partner and they were being sued. Now if you play out the suits at the value they're claimed, it would bankrupt these companies. So my position was that we have to provide liability protection to these private sector entities.

Chris Roberts, *Transcript: Debate on the Foreign Intelligence Surveillance Act*, EL PASO TIMES, Aug. 22, 2007, *available at* http://www.elpasotimes.com/news/ci_6685679 (Hofmann Decl. Ex. G). Furthermore, according to an article published by *Newsweek*, "[t]he nation's biggest telecommunications companies, working closely with the White House, have mounted a secretive lobbying campaign to get Congress to quickly approve a measure wiping out all private lawsuits against them for assisting the U.S. intelligence community's warrantless surveillance programs." Mark Hosenball and Michael Isikoff, *Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About*, NEWSWEEK, updated Sept. 26, 2007, *available at* http://www.newsweek.com/id/41142 (Hofmann Decl. Ex. H).

Since passing the Protect America Act, Congress has continued to mull over additional changes to federal surveillance law. *See, i.e., Warrantless Surveillance and the Foreign Intelligence Surveillance Act: The Role of Checks and Balances in Protecting Americans' Privacy Rights (Part I): Hearing of the H. Comm. on the Judiciary*, 110th Cong. (Sept. 5, 2007); *The Foreign Intelligence Surveillance Act and the Protect America Act: Hearing of the H. Permanent Select Comm. on Intelligence*, 110th Cong. (Sept. 18, 2007); *Warrantless Surveillance and the Foreign Intelligence Surveillance Act: The Role of Checks and Balances in Protecting Americans' Privacy Rights (Part II): Hearing of the H. Comm. on the Judiciary*, 110th Cong. (Sept. 18, 2007);

*FISA: Hearing of the H. Permanent Select Comm. on Intelligence*, 110th Cong. (Sept. 20, 2007); *Strengthening FISA: Does the Protect America Act Protect Americans' Civil Liberties and Enhance Security?: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Sept. 25, 2007); *Preserving the Rule of Law in the Fight Against Terrorism: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Oct. 2, 2007); *FISA Amendments: How to Protect Americans' Security and Privacy and Preserve the Rule of Law and Government Accountability: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Oct. 31, 2007); *Nomination of Mark Flip to be Deputy Attorney General: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Dec. 19, 2007); *Oversight of the U.S. Department of Justice: Hearing of the S. Comm. on the Judiciary*, 110th Cong. (Jan. 30, 2008); *Current and Projected National Security Threats: Hearing of the S. Select Comm. on Intelligence*, 110th Cong. (Feb. 5, 2008); *Justice Department Oversight: Hearing of the H. Comm. on the Judiciary*, 110th Cong. (Feb. 7, 2008); *Worldwide Threats: Hearing of the H. Permanent Select Comm. on Intelligence*, 110th Cong. (Feb. 7, 2008); *DNI Authorities and Personnel Issues: Hearing of the S. Select Comm. on Intelligence*, 110th Cong. (Feb. 14, 2008).

As of the filing of this motion, Congress is still considering whether to give telecommunications carriers legal immunity for their cooperation in the government's warrantless surveillance program. The House of Representatives has passed the RESTORE Act of 2007, which would not protect telecommunications companies from civil liability for their role in the surveillance operation. H.R. 3773 (as passed by House). On February 12, 2008, however, the Senate passed its own version of legislation to amend FISA, which purports to require dismissal of any state or federal lawsuit against a carrier for facilitating government surveillance if the Attorney General certifies to the court that the company was assisting in certain intelligence activity authorized by the President. H.R. 3773, FISA Amendments Act of 2008 (engrossed amendment as agreed to by Senate).

-7-

PL.'S NOT. OF MOT. AND MOT. FOR PRELIM. INJ.; MEM. IN SUPP. OF
PL.'S MOT. FOR PRELIM. INJ.

Congress allowed the Protect America Act to expire on February 16, 2008 without reaching an agreement to extend the controversial law. *See generally* Tim Starks, *House Allows FISA Law to Expire*, CONGRESSIONAL QUARTERLY, Feb. 17, 2008, *available at* http://www.cqpolitics.com/wmspage.cfm?docID=weeklyreport-000002672840 (Hofmann Decl. Ex. I). However, the Administration continues to push aggressively for additional surveillance legislation. Just yesterday, President Bush told reporters that amending FISA is a "very urgent priority," and that subjecting telecommunications companies to liability for their participation in past government surveillance would be "unfair." Press Conference of the President, Feb. 28, 2008, http://www.whitehouse.gov/news/releases/2008/02/20080228-2.html (Hofmann Decl. Ex. J).

**B.     EFF's Freedom of Information Act Requests For Records About the Telecom Lobbying Campaign and Requests for Expedited Processing**

In letters sent by facsimile on December 21, 2007, to ODNI and the DOJ Office of the Attorney General, Office of Legislative Affairs, Office of Legal Policy, Office of Legal Counsel, and National Security Division, EFF requested under the FOIA all records from September 1, 2007 to December 21, 2007 concerning "briefings, discussions, or other exchanges" that agency officials

> have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications companies concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities. This request includes, but is not limited to, all email, appointment calendars, telephone message slips, or other records indicating that such briefings, discussions, or other exchanges took place.[3]

---

[3] Each request contained the following footnote:

> The phrase "representatives or agents of telecommunications companies" is intended to include lobbyists and lawyers acting on behalf of such companies. According to *Newsweek*, these individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom Donilon (who represents Verizon), former deputy attorney

-8-

Letter from Marcia Hofmann, Staff Attorney, Electronic Frontier Foundation, to Freedom of Information Act/Privacy Office, Office of the Director of National Intelligence, December 21, 2007 (Hofmann Decl. Ex. K); Letters from Marcia Hofmann, Staff Attorney, Electronic Frontier Foundation, to Carmen L. Mallon, Chief of Staff, Office of Information and Privacy, Department of Justice, Requesting Records from the Office of the Attorney General, Office of Legislative Affairs, and Office of Legal Policy, December 21, 2007 (Hofmann Decl. Ex. L); Letter from Marcia Hofmann, Staff Attorney, Electronic Frontier Foundation, to Bette Ferris, Supervisory Paralegal, Office of Legal Counsel, Department of Justice, December 21, 2007 (Hofmann Decl. Ex. M); Marcia Hofmann, Staff Attorney, Electronic Frontier Foundation, to GayLa Sessoms, FOIA Coordinator, National Security Division, Department of Justice, December 21, 2007 (Hofmann Decl. Ex. N).

In each of its December 21 letters, EFF formally requested that the processing of these requests be expedited because they seek the disclosure of information about which there is "[a]n urgency to inform the public about an actual or alleged [f]ederal [g]overnment activity," and were "made by a person primarily engaged in disseminating information," as provided in 5 U.S.C. § 552(a)(6)(E)(v)(II), 32 C.F.R. § 1700.12(c)(2), and 28 C.F.R. § 16.5(d)(1)(ii). (Hofmann Decl. Exs. K-N.)

In a letter dated December 28, 2007, the DOJ Office of Information and Privacy acknowledged that it had received EFF's FOIA December 21 requests to the Office of the Attorney General, Office of Legislative Affairs, and Office of Legal Policy, and informed EFF that its requests for expedited processing had been granted. Letter from Melanie Ann Pustay, Director,

---

general Jamie Gorelick (whose law firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff, *Case Dismissed?*, NEWSWEEK, updated Sept. 26, 2007.

Office of Information and Privacy, Department of Justice, to Marcia Hofmann, Staff Attorney, Electronic Frontier Foundation, Dec. 28, 2007. (Hofmann Decl. Ex. O.) In a letter dated January 7, 2008, ODNI acknowledged that it had received EFF's December 21 FOIA request and informed EFF that its request for expedited processing had been granted.  Letter from John F. Hackett, Chief, Information Management Office, Office of the Director of National Intelligence, to Marcia Hofmann, Staff Attorney, Electronic Frontier Foundation, Jan. 7, 2008. (Hofmann Decl. Ex. P.) In a letter dated January 9, 2008, the DOJ Office of Legal Counsel acknowledged that it had received EFF's December 21 FOIA request and informed EFF that its request for expedited processing had been granted. Letter from Bradley T. Smith, Attorney-Adviser, Office of Legal Counsel, Department of Justice, to Marcia Hofmann, Staff Attorney, Electronic Frontier Foundation, Jan. 9, 2008. (Hofmann Decl, Ex. Q.) Finally, in a letter dated December 27, 2007, the DOJ National Security Division acknowledged receipt of EFF's December 21 FOIA request, and in a letter dated January 29, 2008 informed EFF that its request for expedited processing had been granted. Letters from Theresa Crosland, FOIA Public Liaison, National Security Division, Department of Justice, to Marcia Hofmann, Staff Attorney, Electronic Frontier Foundation, Dec. 27, 2007 and Jan. 29, 2008 (Hofmann Decl. Exs. R & S.)

Notwithstanding ODNI and DOJ's purported decisions to process EFF's December 21 FOIA requests in an expedited fashion, to date, neither agency has completed the processing of EFF's requests, nor informed EFF of an anticipated date for the completion of the processing of the requests. (Hofmann Decl. ¶ 19.) Furthermore, both ODNI and DOJ have exceeded the generally applicable 20-day statutory deadline for processing a standard, non-expedited FOIA request. See 5 U.S.C. § 552(a)(6)(A).

EFF initiated this lawsuit on February 20, 2008. On February 21, 27 and 28, 2008, EFF contacted counsel for Defendants to explore the possibility of negotiating a processing schedule for

EFF's FOIA requests to eliminate the need for further action in this case. (Hofmann Decl. ¶ 23.) EFF explained that it planned to seek preliminary injunctive relief if the parties could not agree upon a mutually acceptable date by which to process EFF's requests. (*Id.*) However, Defendants have been unwilling to agree to process the requests by a specific date. (*Id.*)

## III.    ARGUMENT

The issue raised in this motion is clear-cut and discrete. Although ODNI and DOJ have acknowledged EFF's legal entitlement to expedited processing of its December 21, 2007 FOIA requests, the agencies have failed to comply not only with the FOIA's provisions for expedited processing, but also the statute's mandated time frame of 20 working days for responding to standard FOIA requests. The agencies' failure to process the requests is a continuing impediment to EFF's — and the public's — ability to timely examine the scope of the lobbying campaign to secure legal immunity for telecommunications carriers for their cooperation with the government's warrantless surveillance operations. The agencies' actions are unlawful and must be enjoined.

### A.    The Court has Jurisdiction to Grant the Requested Relief

The Court's jurisdiction to consider this matter and grant appropriate relief is clear. The FOIA provides, in pertinent part:

> Agency action to deny or affirm denial of a request for expedited processing . . . shall be subject to judicial review under paragraph (4), except that the judicial review shall be based on the record before the agency at the time of the determination.

5 U.S.C. § 552(a)(6)(E)(iii). The referenced judicial review provision states, in pertinent part:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B).[4] *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001).

Here, notwithstanding ODNI and DOJ's decisions to "expedite" EFF's requests, the agencies have failed to respond within the generally applicable 20-working-day time limit established by 5 U.S.C. § 552(a)(6)(A). EFF's claim is ripe for adjudication because EFF has exhausted all applicable administrative remedies. The FOIA provides:

> [a]ny person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.

5 U.S.C. § 552(a)(6)(C). *See also Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) ("If the agency has not responded within the statutory time limits, then . . . the requester may bring suit."). As the FOIA provides, in reviewing ODNI and DOJ's actions, "the court shall determine the matter de novo." 5 U.S.C. § 552(a)(4)(B); *see also Al-Fayed*, 254 F.3d at 308 ("[A] district court must review de novo an agency's denial of a request for expedition under FOIA.").

## B.    EFF is Entitled to Entry of an Order for Preliminary Injunction

A preliminary injunction is a device for "preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) (citation omitted). The Court may review this motion under one of two tests:

> The "traditional" test requires the movant to: (1) establish a strong likelihood of success on the merits; (2) show the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) show a balance of hardships favoring the movant; and (4) show that granting the injunction favors the public interest. The "alternative" test requires that the movant demonstrate either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in his favor. Under either test, plaintiff must demonstrate that there exists a significant threat of irreparable injury.

*Elec. Frontier Foundation v. Office of the Director of National Intelligence*, No. 07-5278 SI, 2007

---

[4] EFF's principal place of business is in San Francisco, California. (Hofmann Decl. ¶ 2.) This Court also has jurisdiction of this case under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.").

-12-

PL.'S NOT. OF MOT. AND MOT. FOR PRELIM. INJ.; MEM. IN SUPP. OF
PL.'S MOT. FOR PRELIM. INJ.

1  U.S. Dist. LEXIS 89585, at * 8 (N.D. Cal. Nov. 27, 2007) (citations omitted). Furthermore, in

2  deciding whether to grant the injunction, "the court must balance the equities between the parties

3  and give due regard to the public interest." *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 833

4  (9th Cir. 2002).

5  In determining whether a preliminary injunction is proper, "[t]he district court is not

6  required to make any binding findings of fact; it need only find probabilities that the necessary

7  facts can be proved." *Id*. at 1423. Moreover, "the greater the relative hardship to the moving

8  party, the less probably of success must be shown." *Sun Microsystems, Inc. v. Microsoft Corp.*,

9  188 F.3d 1115, 1119 (9th Cir. 1999), quoting *Nat'l Ctr. For Immigrants Rights v. INS*, 743 F.2d

10  1365, 1369 (9th Cir. 1984).

11  Though preliminary injunction is not the norm in FOIA cases, this Court has concluded that

12  such relief is appropriate where a plaintiff establishes that its requests are entitled to expedited

13  processing under the statute, and the government fails to process them in a timely manner.[5] *Elec.*

14  *Frontier Foundation*, 2007 U.S. Dist. LEXIS 89585, *11; *Gerstein v. CIA*, No. C-06-4643 MMC,

15  2006 U.S. Dist. LEXIS 89883, at **12-13 (N.D. Cal. Nov. 29, 2006) ("*Gerstein I*"). The

16  preliminary injunction factors in this case firmly establish EFF's entitlement to injunctive relief.

17  **1.    EFF is Likely to Prevail on the Merits of Its Claim**

18  Given EFF's uncontested entitlement to the expedited processing of its requests under the

19  explicit terms of the FOIA, EFF's likelihood of prevailing on the merits could not be stronger.

20  Because ODNI and DOJ have already determined that EFF's FOIA requests are entitled to

21  expediting processing, the only question before the court is whether the Defendants are "actually

-13-

processing the requests 'as soon as practicable.'" *Id.* at *12. EFF is entitled to prevail on this issue, since the agencies have conceded that EFF's requests are entitled to expedited processing, and yet have violated the terms of the FOIA and agency regulations by failing to satisfy the processing time for even a standard, non-expedited request. As this Court has found, "an agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA, and is an improper withholding of the requested documents." *Gilmore v. Dep't of Energy*, 33 F. Supp. 2d 1184, 1187 (N.D. Cal. 1998).

The FOIA clearly establishes the circumstances in which an agency must process a request in an expedited manner. According to the statute, "[e]ach agency shall promulgate regulations . . . providing for expedited processing of requests for records . . . in cases in which the person requesting the records demonstrates a compelling need and . . . in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). "Compelling need" includes, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v).

Pursuant to this statutory directive, ODNI and DOJ have both issued regulations establishing grounds for expedited processing, only one of which is relevant here. Both agencies' regulations provide that requests "will be taken out of order and given expedited [processing] treatment whenever it is determined that they involve . . . [a]n urgency to inform the public about an actual or alleged [f]ederal [g]overnment activity, if made by a person primarily engaged in disseminating information." 32 C.F.R. § 1700.12(c)(2) & 28 C.F.R. §16.5(d)(1). If the agencies grant expedited treatment, they are obligated to process the request "as soon as practicable." 5

---

[5] As one judge has noted, "where a plaintiff contends in good faith that an agency has failed to expedite processing of a FOIA request in accordance with statute or regulation . . . the availability of an order that effectively is an injunction, preliminary or otherwise, should not be foreclosed." *Elec. Frontier Foundation v. Dep't of Justice*, No. 07-0656 (JDB), slip op. at 4 (D.D.C. June 15, 2007) (Hofmann Decl. Ex. T).

U.S.C. § 552(a)(6)(E)(iii); 32 C.F.R. § 1700.12(b) & 28 C.F.R. §16.5(d)(4). As one court has noted, the statute's "phrase 'as soon as practicable,' in the context of a provision of FOIA allowing for *expedited* processing, cannot be interpreted to impose a lower burden on the agency than would otherwise exist." *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 24, 39 (D.D.C. 2006) (hereafter "*Elec. Privacy Info. Ctr. I*") (emphasis in original).

As such, an agency is presumed to have violated the "expedited processing" provisions of the FOIA when it fails to comply with the generally applicable 20-working-day deadline imposed by the FOIA for processing a non-expedited request. *Elec. Frontier Foundation*, 2007 U.S. Dist. LEXIS 89585 at *13 (citing *id.*). Once the 20-working-day deadline has passed, the agency bears the burden of proving that it is in fact processing the expedited request "as soon as practicable." *Elec. Privacy Info. Ctr. I,* 416 F. Supp. 2d 24, 39 at n.8. While the agency may rebut the presumption that it failed to process a request "as soon as practicable," *Elec. Frontier Foundation*, 2007 U.S. Dist. LEXIS 89585 at *13, neither ODNI nor DOJ has even attempted to make that showing.

Here, EFF requested expedited processing of its FOIA requests because they concern a lobbying campaign to amend federal surveillance law, which is a matter about which there is "an urgency to inform the public about actual or alleged federal government activity." (Hofmann Decl. Exs. K-N.) Furthermore, the requests were made on behalf of EFF, which is a requester "primarily engaged in disseminating information." (*Id.*) Defendants ODNI and DOJ determined that EFF's requests were indeed entitled to expedited processing under this standard. (Hofmann Decl. Exs. O, P, Q & S). There is no indication in the record, however, that ODNI and DOJ have done anything other than pay lip service to EFF's entitlement to expedition. As this Court has noted, "in the absence of relevant evidence as to the reasons for their delay in processing [a plaintiff's FOIA] requests, [the government] ha[s] *no* likelihood of success on the merits." *Gerstein I*, 2006 U.S.

Dist. LEXIS 89883 at *14 (emphasis added).  *See also Gilmore*, 33 F. Supp. 2d at 1188 ("unless an agency makes a timely determination that documents should or should not be disclosed . . . there is no compliance with the FOIA.")

Although it is undisputed that all of EFF's requests are legally entitled to expedited treatment, ODNI and DOJ have failed to comply with the 20-day deadline set by the FOIA and their own regulations for issuing a determination on even a non-expedited FOIA request. The agencies have not (and cannot) offer adequate justification for the delay. For these reasons, EFF is entitled to the immediate processing and release of the requested records, and asks that the Court issue an order to secure this right.

### 2. EFF Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief

Unless ODNI and DOJ's unlawful failure to comply with their obligations to expedite the processing of EFF's FOIA requests is immediately enjoined, EFF will suffer irreparable harm. The very nature of the right that EFF seeks to vindicate in this action — expedited processing — depends upon timeliness, because "stale information is of little value." *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988); *Elec. Privacy Info. Ctr. I*, 416 F. Supp. 2d at 40-41; *See also August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) ("[T]he statutory goals [of FOIA] — efficient, *prompt*, and full disclosure of information — can be frustrated by agency actions that operate to delay the ultimate resolution of the disclosure request." (quoting *Senate of the Commonwealth of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 580 (D.C. Cir. 1987) (internal quotation marks and citations omitted) (emphasis in original)). Courts have recognized that the requisite injury is present, and preliminary injunctive relief is appropriate, in cases where expedited FOIA processing is at issue and where time thus is of the essence, because delay "constitutes a cognizable harm." *Gerstein I*, 2006 U.S. Dist. LEXIS 89983 at * 15, quoting *Elec. Privacy Info.*

*Ctr. I*, 416 F. Supp. 2d at 40; *see also*, *e.g.*, *United States v. BNS, Inc.*, 858 F.2d 456, 465 (9th Cir. 1988); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982). Under the statutory scheme Congress established in the FOIA, it is clear that timing is a critical component of expedited processing, and unless ODNI and DOJ are ordered to process EFF's requests immediately, EFF's right to expedition under the FOIA will be irretrievably lost.

In addition to the loss of its clearly established statutory right, any further delay in the processing of EFF's FOIA requests will irreparably harm EFF's ability, and that of the public, to obtain in a timely fashion information vital to the current and ongoing debate surrounding whether Congress should amend FISA, particularly to render telecommunications carriers immune from legal liability for their complicity in the government's warrantless surveillance program. (Hofmann Decl. ¶¶ 20-22.) The Supreme Court has long recognized our democracy's interest in "the uninhibited, robust, and wide-open debate about matters of public importance that secures an informed citizenry." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 815 (1985), quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (internal quotation marks omitted); *see also Board of Educ. v. Pico*, 457 U.S. 853, 876 (1982) ("[T]he Constitution presupposes the existence of an informed citizenry prepared to participate in governmental affairs.").

Furthermore, the courts have recognized that providing information for legislative debate is a compelling public interest. This recognized interest clearly would be compromised by further delay in the disclosure EFF seeks. First, the question of whether and how FISA should be modified, and whether telecommunications companies should receive some governmental protection from liability for their cooperation in unlawful government surveillance, has already garnered extraordinary media interest. (*See*, *e.g.*, Hofmann Decl. Exs. E, G, H & I.) Second, since EFF submitted its FOIA requests to ODNI and DOJ on December 21, the issues about which EFF

-17-

seeks information have become only more vital to the American public. While both the House and Senate have passed bills that would amend FISA, they have not agreed upon a final version of the law. Furthermore, the Protect America Act has lapsed, which only puts more pressure on the government to enact final legislation. In such circumstances, "the public interest is particularly well-served by the timely release of the requested documents." *Elec. Privacy Info. Ctr. I*, 416 F. Supp. 2d at 42.  Moreover, the bill that has been passed by the Senate would provide retroactive protection to telecommunications carriers involved in the government's warrantless surveillance program, which has placed the decision of whether to extend immunity to the carriers squarely before the House. H.R. 3773, FISA Amendments Act of 2008 (engrossed amendment as agreed to by Senate). This Court and others have determined that the existence of pending legislation related to the subject of a FOIA request weighs in favor of a grant of expedited processing. *Elec. Frontier Foundation*, 2007 U.S. Dist. LEXIS 89585 at * 19 ("irreparable harm can exist in FOIA cases such as this because ongoing public and congressional debates about issues of vital national importance cannot be restarted or wound back.") (quoting *Gerstein I*, U.S. Dist. LEXIS 89883 at *4 (quotation marks omitted)); *Gerstein v. CIA*, No. 06-4643 MMC, 2006 U.S. Dist. LEXIS 89847, at *20 (N.D. Cal. Nov. 29, 2006) ("*Gerstein II*") (granting expedited processing where this Court noted that "there is a significant recognized interest in enhancing public debate on potential legislative action"); *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 31 (D.D.C. 2004). EFF and the public's interest here is particularly compelling, as this Court has already recognized that delay in the context of the current congressional debate over amending FISA is a sufficient showing of likelihood of irreparable injury. *Elec. Frontier Foundation*, 2007 U.S. Dist. LEXIS 89585 at *20 ("Plaintiff seeks information from defendant specifically so that plaintiff, Congress, and the public many participate in the debate over the pending [FISA] legislation on an informed basis.

Accordingly, the Court finds that plaintiff has shown the likelihood of irreparable injury").

If there is to be a meaningful public debate on the issue of retroactive protection for telecommunications companies the examination "cannot be based solely upon information that the Administration voluntarily chooses to disseminate." *Elec. Privacy Info. Ctr. I*, 416 F. Supp. 2d at 41 n.9. Indeed, the public oversight mechanism provided by the FOIA is central to open and democratic debate on critical policy issues such as telecommunications industry's lobbying campaign and government agencies' role in it. As the Supreme Court has observed, the Act is "a means for citizens to know what the Government is up to. This phrase should not be dismissed as a convenient formalism. *It defines a structural necessity in a real democracy*." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-172 (2004) (emphasis added; citation and internal quotation marks omitted). Moreover, "[n]ot only is public awareness a necessity, but so too is *timely* public awareness." *Elec. Privacy Info. Ctr. I*, 416 F. Supp. 2d at 40 (emphasis in original).

It is clear that the information EFF seeks must be disclosed expeditiously if it is to contribute to the public debate on amending foreign intelligence surveillance law, particularly on the issue of telecommunications carrier immunity. Because time is of the essence in this matter, EFF will be irreparably harmed unless the Court acts now, "when it [is] still possible to grant effective relief," and before "all opportunity to grant the requested relief [is] foreclosed." *Local Lodge No. 1266, Int'l Ass'n of Machinists and Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 290 (7th Cir. 1981).[6]

---

[6]   As one court has recognized, delay in the processing of FOIA requests "may well result in disclosing the relevant documents after the need for them in the formulation of national . . . policy has been overtaken by events." *Natural Resources Defense Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002) *("NRDC")* (granting motion for release of documents).

1

2

3          **3.      Injunctive Relief Will Not Burden Others' Interests**

4          Defendants ODNI and DOJ cannot be "burdened" by a requirement that they merely

5   comply with the law.[7] The immediate relief EFF seeks will require nothing more of the government

6   than what federal law already mandates: the expedited processing of EFF's FOIA requests, which

7   ODNI and DOJ do not dispute are entitled to such treatment.  Furthermore, the relief EFF seeks

8   will not burden the interests of other parties who have submitted FOIA requests to ODNI or DOJ in

9   any manner beyond that foreseen by Congress.  In providing for expedited processing of qualifying

10  requests, Congress intended that such requests would take precedence over those that do not

11  qualify for such treatment. As such, expedited processing here should not be unduly burdensome

12  for any party. ODNI and the relevant offices within DOJ carry a relatively small FOIA caseload,

13  and handle few, if any, requests that require expedited processing. In fact, the most recently

14  published ODNI statistics on FOIA processing shows that the agency processed 103 requests in

15  fiscal year 2007, only two of which were afforded expedited processing. U.S. Office of the

16  Director of National Intelligence, Freedom of Information Act Report for Fiscal Year 2007, Initial

17  FOIA/PA Access Requests, Compliance with Time Limits/Status of Pending Requests,

18  http://www.odni.gov/Annual_Report_Final.pdf (Hofmann Decl. Ex. U). Similarly, at the time the

19  most recent DOJ statistics on FOIA processing were published, the Office of the Attorney General

20  had 134 requests pending, twelve of which had been granted expedited processing; the Office of

21

22

23

24  ───────────────
    [7] As this Court has pointed out, "any complaints about the burdens of complying with the [FOIA]
25  are best addressed to Congress, not the courts." *Elec. Frontier Foundation*, 2007 U.S. Dist. LEXIS
    89585 at * 20. It is worth noting that Congress appears unimpressed by the government's FOIA
26  performance. In recent amendments to the FOIA, Congress opted to impose penalties upon
    agencies that fail to observe the law's deadlines and are unable to show that exceptional
27  circumstances justify the non-compliance. OPEN Government Act of 2007, Pub. L. 110-175, §
    6(b), 121 Stat. 2524 (2007). This provision of the law shall take effect on December 31, 2008. *Id.*
28

Legislative Affairs had 42 requests pending, seven of which had been granted expedited processing; the Office of Legal Policy had 32 requests pending, two of which had been granted expedited processing; the Office of Legal Counsel had 11 requests pending, one of which had been granted expedited processing; and the National Security Division had 20 requests pending, none of which had been granted expedited processing. U.S. Department of Justice, Freedom of Information Act Report for Fiscal Year 2007, Compliance With Time Limits/Status of Pending Requests, http://www.usdoj.gov/oip/annual_report/2007/07foiapg7.pdf (Hofmann Decl. Ex. V). None of these statistics suggest that these offices should be unable to do what the law and agency regulations require: process EFF's requests in an expedited manner.

### 4.    The Public Interest Favors the Requested Relief

The final factor in the preliminary injunction analysis also weighs in favor of the issuance of the order EFF seeks in this case. The courts have long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Authr .v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *Elec. Privacy Info. Ctr. I*, 416 F. Supp. 2d at 42. Similarly, it is "axiomatic that an agency is required to follow its own regulations." *Edmonds v. FBI*, No. 02-1294, 2002 U.S. Dist. LEXIS 26578, at *9 n.3 (D.D.C. Dec. 3, 2002) (quoting *Cherokee National of Okla. v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997) (internal quotation marks omitted)). Such adherence is all that EFF seeks here.

The public interest will also be served by the expedited release of the requested records, which will further the FOIA's core purpose of "shedding light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989); *Sammis v. Barnhardt*, No. C01-3973 BZ, 2002 U.S. Dist. LEXIS 10321, at **3-4 (N.D. Cal. June 6, 2002); *Los Angeles Times Communications LLC v. Dep't of Labor*, 483 F. Supp. 2d 975, 981 (C.D. Cal. 2007). The public interest weighs in favor of a preliminary injunction

-21-

because "[t]here is public benefit in the release of information that adds to citizens' knowledge" of government activities. *Ctr. to Prevent Handgun Violence v. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999). For these reasons, the public interest favors the issuance of an order directing ODNI and DOJ to immediately process and release the requested information.

### C.    The Court Should Order Defendants to Process EFF's FOIA Requests Immediately

It is well established that preliminary injunctive relief is appropriate when, as in this case, an agency has failed to act upon a well-founded request for expedited processing. *Elec. Privacy Info. Ctr. I*, 416 F. Supp. at 35 n.4 ("the court may use its equitable power to prevent agency delay, even when exercise of such authority is preliminary in nature.") Congress expressly required agencies to make determinations on requests for expedited processing within 10 calendar days, 5 U.S.C. § 552(a)(6)(E)(ii)(I), and provided for immediate judicial review of adverse determinations, 5 U.S.C. § 552(a)(6)(E)(iii), demonstrating an intent that the courts should act quickly to vindicate the right to expedition.  *See, e.g., ACLU v. Dep't of Justice*, 321 F. Supp. 2d at 28-29 (complete exhaustion of administrative remedies not a prerequisite to judicial review of agency expedition decisions). Congress's mandate that disputes concerning expedited processing should be quickly resolved would be frustrated if aggrieved requesters were required to remain idle for 20 days after initiating suit before moving for partial summary judgment. Fed. R. Civ. P. 56(a). As such, claims involving entitlement to expedited processing are appropriately addressed through motions for preliminary relief. *Elec. Privacy Info. Ctr. I*, 416 F. Supp. at 35.  *See also Aguilera v. FBI*, 941 F. Supp. 144, 152-153 (D.D.C. 1996) (granting preliminary injunction FOIA lawsuit for expedited processing); *Cleaver v. Kelley*, 427 F. Supp. 80, 81-82 (D.D.C. 1976) (same); *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004) (same).

The appropriate form of relief is no more than ordering the agencies to follow the

applicable ODNI and DOJ regulations that dictate the manner in which expedited FOIA requests must be processed. The regulations provide that ODNI and DOJ generally processes requests in the order received. 32 C.F.R. § 1700.12(a) (ODNI), 28 C.F.R. §16.5(a) (DOJ), but that requests "will be taken out of order and given expedited processing treatment whenever it is determined that they [meet the criteria for expedited processing]." 32 C.F.R. § 1700.12(c); 28 C.F.R. §16.5(d). "If a request for expedited treatment is granted, the request shall be given priority and shall be processed as soon as practicable." 32 C.F.R. § 1700.12(b); 28 C.F.R. §16.5(d). ODNI and DOJ concede that EFF's requests qualify for expedited treatment, and so there is no dispute that EFF's requests must be processed as soon as practicable. Therefore, the Court should order ODNI and DOJ to complete the processing of EFF's FOIA requests immediately.

In several recent cases, courts have imposed specific processing deadlines on agencies, requiring the prompt delivery of non-exempt records to FOIA requesters. This Court, for example, recently ordered ODNI to process and produce all non-exempt records responsive to two EFF FOIA requests within 13 days of the Court's order. *Elec. Frontier Foundation*, 2007 U.S. Dist. LEXIS 8958, at * 23. Likewise, in both *Gerstein I & II*, the Court ordered the defendant federal agencies to process and produce all non-exempt records responsive to the plaintiff's FOIA requests within 30 days of the Court's orders. 2006 U.S. Dist. LEXIS 89883, at * 16; 2006 U.S. Dist. LEXIS 89847, at * 27.

Other courts have imposed similar schedules. In *Judicial Watch, Inc. v. Dep't of Energy*, 191 F. Supp. 2d 138 (D.D.C. 2002), the District Court for the District of Columbia ordered the Commerce Department and the Transportation Department to process, respectively, 9000 and 6000 pages of material and to complete the processing within 60 days; and to provide the requester with an index detailing withholdings pursuant to *Vaughn v. Rosen*, 484 F.2d 820, 826-8 (D.C. Cir. 1973) within 72 days. *Id*. at 141. It is worth noting that the FOIA requests at issue in that case were not

claimed to be entitled to expedited processing.  Similarly, in *NRDC*, the same court ordered the Energy Department to process 7500 pages of material; to complete the processing of the "vast majority" of the material within 32 days; to complete all processing within 48 days; and to provide the requester with a *Vaughn* index within 63 days.  191 F. Supp. 2d at 43-44.  Again, the FOIA request in *NRDC*, unlike the requests at issue here, had not been granted expedited treatment.

In *ACLU v. Dep't of Defense*, a case involving an expedited request, the District Court for the Southern District of New York ordered a variety of agencies to "produce or identify all responsive documents," and to provide the requesters with a *Vaughn* index, within 30 days. 339 F. Supp. 2d at 505.  Furthermore, in *Elec. Privacy Info. Ctr. v. Dep't of Justice*, the court ordered the FBI to "complete the processing of 1500 pages every 15 calendar days, and provide the plaintiff all responsive non-exempt pages contained therein, until processing is complete," after the agency had granted a request for expedited processing but failed to produce any responsive records. Civ. No. 05-845, 2005 U.S. Dist. LEXIS 40318, at **5-6 (D.D.C. Nov. 16, 2005) ("*Elec. Privacy Info. Ctr. v. Dep't of Justice II*").  Most recently, in a case involving a request submitted by EFF, the court ordered the FBI to process 2500 pages every 30 days where the Bureau conceded that EFF was entitled to expedited processing of a request, but failed to process the responsive documents quickly. *Elec. Frontier Foundation v. Dep't of Justice*, No. 07-0656 (JDB) (Hofmann Decl. Ex. T at 5).

Recognizing the extraordinary public interest in the records at issue here, and in order to facilitate the informed participation of EFF, and the American people, in the current and ongoing debate over whether FISA should be amended and telecommunications companies should be held unaccountable for their role in the government's unlawful surveillance operations, EFF respectfully requests the Court to direct Defendants ODNI and DOJ to complete the processing of EFF's

1    requests and produce or identify all responsive records within 10 days of the issuance of its order.[8]

2

3    **IV.    CONCLUSION**

4          For the foregoing reasons, EFF's motion for a preliminary injunction should be granted.

5

6    DATED:  February 29, 2008

7                                                        /s/ Marcia Hofmann
                                                        Marcia Hofmann, Esq.
8                                                        ELECTRONIC FRONTIER FOUNDATION
                                                        454 Shotwell Street
9                                                        San Francisco, CA  94110
                                                        Telephone:  (415) 436-9333
10                                                       Facsimile:  (415) 436-9993

11                                                       David L. Sobel (*pro hac vice pending*)
                                                        ELECTRONIC FRONTIER FOUNDATION
12                                                       1875 Connecticut Ave. NW
                                                        Suite 650
13                                                       Washington, DC  20009
                                                        Telephone: (202) 797-9009 x104
14                                                       Facsimile: (202) 707-9066

15                                                       Attorneys for Plaintiff
                                                        ELECTRONIC FRONTIER FOUNDATION

16

17

18

19

20

21

22

23

24

25

26    _____

27    [8] Judicial resolution of the expedited processing issue would not resolve all issues raised in the complaint.  Once the question of processing time is resolved, the Court would retain jurisdiction to review the completeness and propriety of ODNI's substantive determination of EFF's FOIA requests.  *See Open America v. Watergate Special Prosecution Force*, 547 F. 2d 605 (D.C. Cir. 1976).

28

-25-