JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
CARL J. NICHOLS
Deputy Assistant Attorney General
JOSEPH P. RUSSONIELLO
United States Attorney
ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch
ANDREW I. WARDEN (IN Bar No. 23840-49)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7332
Washington, D.C. 20530
Telephone: (202) 616-5084
Facsimile: (202) 616-8460
Andrew.Warden@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | No. 3:08-CV-1023 JSW |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE and UNITED STATES DEPARTMENT OF JUSTICE | |
| Defendants, | |

1

## SUMMARY OF ARGUMENT

2      Plaintiff's motion for preliminary injunction should be denied.  Plaintiff's motion seeks a

3  preliminary injunction to require the defendants to complete processing of plaintiff's requests

4  under the Freedom of Information Act ("FOIA") within ten days.  The relief plaintiff seeks is

5  inconsistent with the way FOIA requests are processed generally, and is also inconsistent with

6  the plain language of the expedited processing provision of the FOIA.   Defendants have granted

7  plaintiff's request to expedite processing of the FOIA requests at issue.  In accordance with the

8  expedited processing provision of the FOIA, defendants are working diligently to release

9  responsive records to plaintiff "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii).  As

10  explained in the declarations submitted herewith, defendants have moved plaintiff's request to

11  the front of their respective processing queues and have made significant progress towards

12  releasing responsive records to plaintiff.

13      In addition to lacking success on the merits, plaintiff has failed to meet its essential

14  burden of identifying any irreparable harm that it might suffer if the requested relief is not

15  granted.  Plaintiff's claim that it will suffer irreparable harm if defendants do not complete

16  processing of the requests within 10 days is entirely speculative, particularly given the likelihood

17  that debate over amendments to the Foreign Intelligence Surveillance Act will continue for the

18  foreseeable future because of the current legislative stalemate.  Conversely, a preliminary

19  injunction ordering defendants to finish processing plaintiff's FOIA requests within 10 days

20  would impose undue burdens on defendants and injure their interests by creating a risk of

21  inadvertent disclosure of records (some of which contain classified national security

22  information) that are exempted from release under the FOIA.  The proposed preliminary

23  injunction in this case also has the potential to harm the public interest by complicating and

24  disrupting the processing of other FOIA requests.

25

26

27

28

# TABLE OF CONTENTS

I. INTRODUCTION........................................................................................................1

II. BACKGROUND

    1.      Statutory and Regulatory Framework............................................................3

    2.      Factual Background......................................................................................5

    3.      Defendants' Efforts To Process Plaintiff's FOIA Requests.........................6

III. ARGUMENT

    1.      Preliminary injunctions are generally not appropriate in FOIA cases.......11

    2.      Plaintiff has failed to demonstrate a likelihood of success
            on the merits because the FOIA's expedited processing
            provisions do not require that processing be completed
            within a time certain................................................................................13

    3.      Plaintiff has not established a significant risk of irreparable injury..........19

    4.      An order requiring defendants to accelerate processing
            of plaintiff's FOIA requests would impose undue burdens
            on defendants and not serve the public interest.........................................22

IV. CONCLUSION.......................................................................................................24

1

## TABLE OF EXHIBITS

2     1.    Declaration of GayLa Sessoms (DOJ – National Security Division)

3     2.    Declaration of Paul Colborn (DOJ – Office of Legal Counsel)

4     3.    Declaration of Melanie Pustay (DoJ – Office of Information & Privacy)

5     4.    Declaration of John Hackett (ODNI)

6     5.    *Electronic Frontier Foundation v. Dep't of Justice*, slip op., No. 06-CV-1773
            (RBW) (D.D.C. Sept. 27, 2007)
7
8     6.    *Electronic Privacy Information Center v. Dep't of Justice* slip op., No. 06-CV-
            0096 (HHK) (D.D.C. Mar. 24, 2006)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

## <u>CASES</u>

3

*Al-Fayed v. Central Intelligence Agency*,
    2000 WL 34342564 (D.D.C. Sept. 20, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . -11-, -20-

4

*Al-Fayed v. Central Intelligence Agency*,
    254 F.3d 300 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

5

*American Civil Liberties Union v. Dep't of Justice*,
    321 F. Supp. 2d 24 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

6

*American Civil Liberties Union v. Dep't of Justice*,
    2005 WL 588354 (N.D. Cal. Mar. 11, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . -3-, -13-

7

8

*American Civil Liberties Union v. Dep't of Defense*,
    339 F. Supp. 2d 501 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-, -17-

9

10

*Associated General Contractors of Calif. v. Coalition for Economic Equity*,
    950 F.2d 1401 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

11

*Assassination Archives & Research Ctr., Inc. v. Central Intelligence Agency*,
    1988 U.S. Dist. LEXIS 18606 (D.D.C., Sept. 29, 1988) . . . . . . . . . . . . . . . . . . . . . -11-

12

*Assassination Archives & Research Ctr., Inc. v. Central Intelligence Agency*,
    720 F. Supp. 217 (D.D.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

13

*Caribbean Marine Services Co., Inc. v.* Baldrige,
    844 F.2d 668 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

14

15

*Dahl v. HEM Pharmaceuticals Corp.*,
    7 F.3d 1399 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

16

*Electronic Frontier Foundation v. Dep't of Justice*,
    slip op., No. 06-1773 (D.D.C. Sept. 27, 2007) . . . . . . . . . . . . . . . . . . . . -11-, -18-, -19-

17

*Electronic Frontier Foundation v. Dep't of Justice*,
    slip op., No. 07-656 (D.D.C. June 15, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . -12-, -21-

18

19

*Electronic Frontier Foundation v. ODNI*,
    2007 WL 4208311 (N.D. Cal. Nov. 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

20

*Electronic Privacy Information Center ("EPIC") v. Dep't of Justice*,
    416 F. Supp. 2d 30 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-, -17-

21

*Electronic Privacy Info. Center v. Dep't of Justice*,
    2005 U.S. Dist. LEXIS 40318 (D.D.C., Nov. 16, 2005) . . . . . . . . . . . . . . . . . . . . . -17-

22

23

*Exner v. Federal Bureau of Investigation*,
    542 F.2d 1121 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

24

*Gerstein v. Central Intelligence Agency*,
    2006 WL 3462658 (N.D. Cal. Nov. 26, 2006) . . . . . . . . . . . . . . . . . . . . . . . . -14-, -18-

25

*Gerstein v. Central Intelligence Agency*,
    2006 WL 3462659 (N.D. Cal. Nov. 26, 2006) . . . . . . . . . . . . . . . . . . . . . . . . -18-, -21-

26

27

28

*Judicial Watch v. Dep't of Energy,*
   191 F. Supp. 2d 138 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-, -17-

*Judicial Watch v. Rossotti,*
   285 F. Supp. 2d 17 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-, -15-

*Judicial Watch v. U.S. Dep't of Homeland Sec.,*
   514 F. Supp. 2d 7 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*King v. Saddleback Junior College Dist.,*
   425 F.2d 426 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

*Leadership Conference on Civil Rights v. Gonzalez,*
   2005 WL 3360884 (D.D.C. Dec. 9, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Long. v. Department of Homeland Security,*
   436 F. Supp. 2d 38 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

*Lydo Enters. v. City of Las Vegas,*
   745 F.2d 1211 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

*Massey v. Federal Bureau of Investigation,*
   3 F.3d 620 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

*Mazurek v. Armstrong,*
   520 U.S. 968, 972 (1997) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . -10-, -16-, -21-

*Miller v. California Pacific Medical Center,*
   19 F.3d 449 (9th Cir. 1994) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*The Nation Magazine v. Dep't of State,*
   805 F. Supp. 68 (D.D.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-, -21-, -23-

*Natural Resources Defense Council v. Dep't of Energy,*
   191 F. Supp. 2d 41 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Starbuck v. City and Country of San Francisco,*
   556 F.2d 457 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Sussman v. U.S. Marshals Service,*
   494 F.3d 1106 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

*Taylor v. Westly,*
   488 F.3d 1197 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Univ. of Texas v. Camenisch,*
   451 U.S. 390 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

**STATUTES**

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

50 U.S.C. § 1801 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

50 U.S.C. §§ 403(b)(1), (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

50 U.S.C. § 403-1(i)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-

1    Federal Rule of Civil Procedure 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

2    Pub. L. No. 104-231, 110 Stat 3048 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

3    Pub. L. No. 108-458, 118 Stat. 3638 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

4    **FEDERAL REGULATIONS**

5    28 C.F.R. § 16.1 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

6    32 C.F.R. § 1700 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

7    **OTHER AUTHORITIES**

8    Executive Order 12958 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

9    H. R. Rep. No. 104-795 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-, -24-

10   S. Rep. 104-272 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

11   Implementation of the USA Patriot Act: Sections of the
     Act that Address the Foreign Intelligence Surveillance Act (FISA),
12   109th Cong. (April 26 & 28, 2005), Hearing Before the Subcommittee
     on Crime, Terrorism, and Homeland Security of the Committee on the
13   Judiciary of the House of Representatives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

14   Jonathan Weisman, *House Passes A Surveillance Bill Not To Bush's Liking*,
     Washington Post, March 15, 2008, at A2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-, -21-

15   Ellen Nakashima, *A Story of Surveillance*, Washington Post, Nov. 7, 2007, at D1 . . . . . . . . -19-

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

Plaintiff Electronic Frontier Foundation ("EFF" or "plaintiff") asks the Court to invoke its extraordinary powers to award temporary emergency relief by issuing a preliminary injunction to require the defendants in this case, the Office of the Director of National Intelligence ("ODNI") and the United States Department of Justice ("DOJ"), to complete processing of plaintiff's requests under the Freedom of Information Act ("FOIA") within ten days. Plaintiff's FOIA requests seek records regarding DOJ and ODNI's communications with members of Congress and telecommunications companies concerning proposed amendments to the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801 *et seq.*, as amended. Plaintiff argues it will suffer irreparable harm if defendants do not produce all records responsive to plaintiff's FOIA requests before Congress acts to amend the FISA.

Plaintiff's motion should be denied. Plaintiff's request for relief by way of a preliminary injunction – which is not preliminary in any sense but rather is an attempt to use a procedural mechanism intended to provide emergency relief as a scheduling tool – is generally inappropriate in FOIA cases. Plaintiff also offers the Court no compelling reason that justifies granting the extraordinary relief it seeks.

Indeed, the relief plaintiff seeks is inconsistent with the way FOIA requests are processed generally, and is also inconsistent with the plain language of the expedited processing provision of the FOIA. Plaintiff attempts to invent a time limit by which defendants must complete their FOIA processing by citing to the provision of the FOIA that gives agencies twenty business days to make a determination about FOIA requests in the first instance. That provision, however, does not establish a mandatory time by which the agency must release responsive documents to plaintiff. Instead, the inability to respond within the 20-day period simply means that the requester may, before a response has been made, file suit and be found to have constructively exhausted administrative remedies.

In any event, defendants have already granted plaintiff's request to expedite processing of the FOIA requests at issue. Consistent with the expedited processing provision of the FOIA, defendants are working diligently to release responsive records to plaintiff "as soon as

1  practicable." 5 U.S.C. § 552(a)(6)(E)(iii).  As explained in the attached declarations of ODNI

2  and DOJ FOIA officials, defendants have moved plaintiff's request to the front of their

3  respective processing queues ahead of many non-expedited requests.  Further, the declarations

4  establish that plaintiff's demand that processing be completed within ten days is not practicable.

5      Plaintiff's motion simply misunderstands the purpose and implications of FOIA's

6  expedited processing provisions.  A determination that a request warrants expedited processing

7  means only that the request should be processed ahead of other requests that have not been

8  granted expedited treatment.  A grant of expedited processing by an agency does not mean that

9  the request can or should be processed within a specified time frame or on a schedule dictated by

10  the individual or organization who made the FOIA request.  Instead, the FOIA provides that

11  requests, which are granted expedition by an agency, should be processed "as soon as

12  practicable," with due regard for the agency's processing capacity and current workload and the

13  need to ensure that requests are processed properly.  Defendants, having granted plaintiff's

14  request for expedited treatment, are working to complete the processing of plaintiff's requests as

15  soon as practicable and, as explained in detail in the attached declarations, have taken

16  appropriate steps to that end.

17      In addition to lacking success on the merits, plaintiff has failed to meet its essential

18  burden of identifying any irreparable harm that it might suffer if the requested relief is not

19  granted.  Plaintiff's claim that it will suffer irreparable harm if defendants do not complete

20  processing of the requests according to plaintiff's proposed 10 day schedule is entirely

21  speculative, particularly given the likelihood that debate over the FISA amendments will

22  continue for the foreseeable future because of the current legislative stalemate.  Plaintiff

23  inappropriately seeks to use the preliminary injunction provisions of Federal Rule of Civil

24  Procedure 65, which are intended to provide a shield against imminent and irreparable injury

25  while a court considers the merits of a dispute, to accelerate artificially the merits proceedings in

26  this case.  The injunction proposed by plaintiff does not seek to maintain the status quo; rather

27  plaintiff's proposed injunction seeks a version of ultimate relief – the immediate disclosure of

28  non-exempt, responsive documents.  Awarding plaintiff the ultimate relief it seeks by way of a

1    preliminary injunction at this early stage of these proceedings, before defendant is even required
2    to answer plaintiff's complaint, is without an appropriate basis in law.

3    For these reasons, as discussed further below, plaintiff's motion for preliminary
4    injunction should be denied.  In lieu of plaintiff's unreasonable production schedule, defendants
5    should be permitted to continue processing plaintiff's FOIA requests in accordance with the
6    schedules proposed in the attached declarations.  To ensure that the Court and plaintiff are
7    appropriately advised of defendants' efforts to process plaintiff's requests, defendants propose to
8    submit a status report to the Court in thirty days.

9    **BACKGROUND**

10    **1.    Statutory and Regulatory Framework**

11    Agencies ordinarily process FOIA requests for agency records on a first-in, first-out
12    basis. *See Exner v. Federal Bureau of Investigation,* 542 F.2d 1121, 1123 (9th Cir. 1976).  In
13    1996, Congress amended the FOIA to provide for "expedited processing" of certain categories of
14    requests.  *See* Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L. No.
15    104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)).  If a request for expedited processing is
16    granted, the request moves immediately to the front of the agency's processing queue, ahead of
17    previously filed requests.  *American Civil Liberties Union of Northern California v. Department*
18    *of Justice*, 2005 WL 588354 at *1 (N.D. Cal. Mar. 11, 2005).

19    As part of EFOIA, Congress directed agencies to promulgate regulations providing for
20    expedited processing of requests for records (i) "in cases in which the person requesting the
21    records demonstrates a compelling need"; 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases
22    determined by the agency."  *Id.* § 552(a)(6)(E)(i)(II).  FOIA defines "compelling need" to mean:

23    (I) that a failure to obtain requested records on an expedited basis under this
24    paragraph could reasonably be expected to pose an imminent threat to the life or
       physical safety of an individual; or

25    (II) with respect to a request made by a person primarily engaged in
26    disseminating information, urgency to inform the public concerning actual or
       alleged Federal Government activity."

27

28

5 U.S.C. § 552(a)(6)(E)(v).[1]  The requester bears the burden of showing that expedition is appropriate.  *See Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 305 n.4 (D.C. Cir. 2001).  FOIA provides that "[a]n agency shall process as soon as practicable any request for records to which the agency has granted expedition."  5 U.S.C. § 552(a)(6)(E)(iii).

Both ODNI[2] and DOJ have issued regulations addressing their FOIA administration and compliance with EFOIA.  *See* 32 C.F.R. § 1700.1 *et seq.* (ODNI regulations); 28 C.F.R. § 16.1 *et seq.* (DOJ regulations).  ODNI's regulations provide that "[a]ll requests will be handled in the order received on a strictly 'first-in, first-out' basis."  *See* 32 C.F.R. § 1700.12(a).  The regulations also include a provision addressing expedited processing, which allows requests to "be taken out of order and given expedited processing treatment whenever it is determined that they involve:"

> (1) Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or
>
> (2) An urgency to inform the public concerning an actual or alleged Federal Government activity, if made by a person primarily engaged in disseminating information.

32 C.F.R. § 1700.12 (c).  If a request for expedition is granted by ODNI, "the request shall be given priority and shall be processed as soon as practicable"  32 C.F.R. § 1700.12(b).

Similarly, DOJ's regulations provide that FOIA requests shall be handled "according to their order of receipt."  28 C.F.R. § 16.5(a).  In the event a FOIA request satisfies the criteria for

---

[1]  Both Congress and the D.C. Circuit have recognized that the expedition categories are to be "narrowly applied" because, "[g]iven the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requesters who do not qualify for its treatment."  *Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795, *reprinted at* 1996 U.S.C.A.A.N. 3448, 3469 (Sept. 17, 1996)).

[2]  The position of Director of National Intelligence was created by Congress in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004).  The DNI serves as the head of the United States Intelligence Community and as the principal advisor to the President, the National Security Council, and the Homeland Security Council, for intelligence-related matters related to national security.  *See* 50 U.S.C. §§ 403(b)(1), (2).

1    expedited processing,[3] the request "will be taken out of order and given expedited treatment."

2    *See* 28 C.F.R. § 16.5(d)(1).  Further, the DOJ regulations specify that a granted request for

3    expedition "shall be given priority and shall be processed as soon as practicable."  28 C.F.R. §

4    16.5(d)(4).

5        **2.    Factual Background.**

6        By letters dated December 21, 2007, plaintiff submitted nearly identical FOIA requests to

7    ODNI and five DOJ components:  Office of the Attorney General ("OAG"), Office of Legal

8    Policy ("OLP"), Office of Legislative Affairs ("OLA"), Office of Legal Counsel ("OLC"), and

9    National Security Division ("NSD").[4]  *See* Plaintiff's Memorandum, Exhibits K-N.  Plaintiff's

10   letters requested:

11           all agency records from September 1, 2007 to the present concerning briefings,
             discussions, or other exchanges that [ODNI] Director McConnell or other ODNI
12           officials [or in the case of the DOJ requests "Justice Department officials"] have
             had with 1) members of the Senate or House of Representatives and 2)
13           representatives or agents of telecommunications companies concerning
             amendments to FISA, including any discussion of immunizing
14           telecommunications companies or holding them otherwise unaccountable for their
             role in government surveillance activities. This request includes, but is not limited
15           to, all email, appointment calendars, telephone message slips, or other records
             indicating that such briefings, discussions, or other exchanges took place.
16
     *See id.*  Plaintiff also sought expedited processing of their FOIA requests pursuant to the
17
     governing ODNI and DOJ FOIA regulations, 28 C.F.R. § 16.5(d); 32 C.F.R. § 1700.12, asserting
18
     that the public has a significant interest in the government's efforts to amend the FISA.  *See*
19
     Plaintiff's Memorandum, Exhibits K-N.
20
         In response, ODNI and all five DOJ components granted plaintiff's request for expedited
21
     processing.  In December and January 2008, ODNI and the DOJ components sent plaintiff letters
22
     acknowledging receipt of the FOIA requests and informing plaintiff that the requests would be
23
     processed on an expedited basis.  *See* Plaintiff's Memorandum, Exhibits O-S.
24
         Plaintiff filed its complaint in this action under the FOIA on February 20, 2008, seeking
25

26
         [3] These factors are similar to the ODNI criteria discussed above.  *See* 28 C.F.R. §
27   16.5(d)(1)(i-iv).

28       [4] DOJ handles its FOIA requests on a component-by-component basis (*e.g.*, FBI, DEA,
     ATF), *see* 28 C.F.R. § 16.3(a), whereas ODNI processes its request on an agency-wide basis.

1  expedited processing and release of the records described above. *See* Complaint For Injunctive

2  Relief (dkt. no. 1).  On February 29, 2008, plaintiff filed a motion for preliminary injunction

3  (dkt. no. 6), requesting that the Court order defendants to complete processing of plaintiff's

4  FOIA requests and to release all responsive records within ten days.

5       **3.    Defendants' Efforts To Process Plaintiff's FOIA Requests.**

6       As explained more fully in the declarations submitted herewith, ODNI and the five DOJ

7  components have been working diligently to process plaintiff's FOIA requests as soon as

8  practicable.

9       ***DOJ – National Security Division.***  After granting plaintiff's request for expedited

10 processing, NSD immediately moved plaintiff's request ahead of fourteen other pending FOIA

11 requests received prior to plaintiff's request.  *See* Declaration of GayLa Sessoms ¶ 5 (attached as

12 Exhibit 1) ("Sessoms Decl.").  A search for responsive documents was then initiated within the

13 NSD offices reasonably likely to maintain records responsive to plaintiff's request.  *Id.* ¶ 6.

14 Notifications and follow up reminders were sent to all NSD employees (approx. 50 people)

15 reasonably likely to maintain documents responsive to plaintiff's requests instructing them to

16 search their files for responsive records.  *Id.*  Because NSD's employees work on significant

17 mission-related matters pertaining to the national security of the United States, these officials

18 and employees were required to stop this critical work in order to perform the necessary searches

19 and each of them did so as soon as was practicable.  *Id.*  Searches were conducted by employees

20 in multiple offices within the NSD as well as by NSD's FOIA Program Analyst, FOIA

21 Coordinator and Records Officer.  *Id.* ¶¶ 7-9.  NSD completed its search for responsive records

22 during the week of March 10 and identified roughly two boxes of material that may be

23 responsive to plaintiff's request.  *Id.* ¶ 10.  NSD's FOIA staff is currently reviewing this material

24 to 1) ensure that it is responsive to plaintiff's request; 2) eliminate any duplicates; 3) identify all

25 third agency documents that require referral and/or consult; and 4) identify all classified records.

26 *Id.*  NSD anticipates completing its review this week and will notify plaintiff of the exact volume

27 of responsive records no later than Friday, March 21, 2008.  *Id.*  Once the universe of responsive

28 documents is determined, NSD will immediately begin the review of this material for the

1   application of any FOIA exemptions.  *Id.*  This review will initially focus on unclassified records

2   that do not require consultation or referral to other agencies.  *Id.* ¶ 12.  NSD will complete its

3   review of this category of records and provide an interim release of records to plaintiff no later

4   than April 11, 2008.  *Id.*  With respect to responsive records that require referral and consult with

5   other agencies as well as any classified records, the NSD is not in a position at this time to

6   provide an estimated date of production given the numerous considerations and additional

7   burdens that must be taken into account before releasing such records.  *Id.* ¶¶ 11-13.  NSD is

8   committed to processing these records as soon as practicable and is willing to provide the Court

9   with a status report every 30 days to update the Court on the NSD's progress.  *Id.* ¶ 13.

10          ***DOJ – Office of Legal Counsel.***  As soon as OLC made the decision to expedite

11   plaintiff's request, it was given priority status and moved to the front of the OLC request queue.

12   *See* Declaration of Paul Colborn ¶ 4 (attached as exhibit 2) ("Colborn Decl.").  Plaintiff's request

13   is one of two expedited requests currently in the queue, and it has priority over the other

14   expedited request.  *Id.*  As such, it is being processed ahead of one expedited and nineteen

15   non-expedited FOIA requests currently pending.  *Id.*

16          OLC initiated a search for records responsive by performing keyword search of the

17   electronic files of all OLC attorneys most likely to have responsive records.  *Id.* ¶ 5. This search

18   protocol is a time-intensive process that requires information technology personnel to copy all

19   electronic files into a searchable format.  *Id.*  The keyword searches inevitably result in more

20   documents than are actually responsive to plaintiff's FOIA request.  *Id.*  Accordingly, the small

21   OLC staff and its attorneys must review these documents for duplicate and non-responsive

22   material while balancing their other competing work assignments, including urgent requests for

23   legal advice from Executive Branch agencies.  *Id.* ¶ 6.  The review of material in this case was

24   made more difficult by a litigation-related deadline in another FOIA case that required OLC to

25   devote the entire month of February toward review of over 15,000 pages of material.  *Id.* ¶ 7

26   Notwithstanding these obstacles, OLC worked diligently over the last few weeks on plaintiff's

27   request and has now completed its search for responsive documents.  *Id.* ¶ 8.  OLC has identified

28   more than 5,000 documents totaling more than 10,000 pages of potentially responsive material.

1   *Id.* ¶¶ 8-9.  OLC has culled this initial group to approximately 2,000 pages of material and is in

2   the process of reviewing this material more closely to determine responsiveness, to eliminate

3   duplicates, to assess which, if any, FOIA exemptions may apply, and to identify which

4   documents, if any, should be referred to other agencies for consultations.  *Id.* ¶ 9.  OLC

5   anticipates completing this review and issuing at least an interim response to plaintiff by no later

6   than March 25, 2008*. Id.*  Based on a preliminary assessment of the documents, the interim

7   response will likely address many materials responsive to plaintiff's request.  *Id.*  OLC has,

8   however, identified a number of documents requiring consultations with other agencies;

9   consequently, a final OLC response will take more time.  *Id.*  Additionally, OLC has identified a

10  small number of classified documents for potential responsiveness.  *Id.*  The potential existence

11  of responsive classified material could contribute significantly to the time required complexities

12  attendant to processing plaintiff's request.  *Id.*  Allowing enough time for the agencies to review

13  and provide OLC their views, as well as to conduct any necessary review of any classified

14  information, OLC anticipates issuing a final response to plaintiff's request by April 22, 2008.  *Id.*

15           ***DOJ – Offices of Legislative Affairs, Legal Policy, and Attorney General.***   FOIA

16  requests submitted to the senior leadership offices of the Department of Justice, including OLA,

17  OLP, and OAG, are handled by the Department's Office of Information and Privacy ("OIP").

18  *See* Declaration of Melanie Pustay ¶ 1 (attached as Exhibit 3) ("Pustay Decl.).  As soon as

19  plaintiff's request was approved for expedited processing, it was moved ahead of other FOIA

20  requests received at an earlier date in OIP's FOIA queue.  *Id.* ¶ 5.  Immediately thereafter, record

21  searches were initiated in OLA, OLC, and OAG by informing individual staff members to search

22  all appropriate electronic and paper files for records responsive to plaintiff's request.  *Id.* ¶ 6.

23  The officials in these offices typically conduct the searches themselves by hand searching large

24  paper files as well as electronic searches of a vast number of e-mail files.  *Id.*  While the officials

25  in these offices make every effort to respond to FOIA requests in a timely fashion, it is not

26  always possible for senior DOJ officials to stop their pressing day-to-day duties in order to

27  immediately perform a search for records responsive to a FOIA request.  *Id.*  These officials

28  performed the necessary searches as soon as it was practicable to do so.  *Id.*

1      All three offices have completed exhaustive searches for records responsive to plaintiff's

2  request. *See id.* ¶¶ 7-22 (describing steps taken to search for records).  OLA located

3  approximately 1,500 pages of material, OLP located 233 pages of material, and OAG located

4  913 pages of material. *Id.* ¶ 23.  OIP is currently reviewing these documents and it is anticipated

5  that adjustments to these page counts will be made as duplicate and non-responsive material is

6  identified. *Id.*  The records located all require further review, including consultations with

7  multiple DOJ components and other Executive Branch agencies, before a response can be

8  provided. *Id.* ¶ 24.  Such consultations are required by Department of Justice regulation 28

9  C.F.R. § 16.4(c)(1), and are appropriate because other components within the Department and

10  other Executive Branch agencies have an interest in the documents. *Id.*  Further, because none

11  of the documents originated with OIP, disclosure determinations necessarily must be made in

12  consultation with the originating offices. *Id.*  Many of these consultations will need to be

13  conducted in stages, as certain offices need to know the views of other offices in order to make

14  their disclosure determinations. *Id.*  Until these steps are completed, OIP cannot complete the

15  processing of the documents and make a final response to plaintiff. *Id.*  Additionally, OIP has

16  located classified material, which adds significantly to the complexities attendant to processing

17  plaintiff's FOIA request. *Id.* ¶ 25.

18      OIP is making every effort to process plaintiff's requests as soon as practicable. *Id.* ¶ 26.

19  OIP anticipates providing plaintiff with an interim response of records by April 14, 2008. *Id.*

20  ¶ 27.  Further, OIP anticipates providing a final response on May 23, 2007, assuming

21  consultations have been finalized. *Id.* ¶ 29.  In the meantime, OIP is willing to provide the court

22  with status reports every thirty days regarding its progress. *Id.* ¶ 26.

23      ***ODNI.***  Once ODNI approved plaintiff's request for expedited processing, plaintiff's

24  FOIA request was given priority status and moved to the front of ODNI's FOIA queue. *See*

25  Declaration of John Hackett ¶ 5 (attached as Exhibit 4) ("Hackett Decl.").  Plaintiff's request is

26  currently being processed ahead of 49 pending FOIA requests. *Id.*  Further, ODNI performed

27  searches in a variety of offices reasonably likely to have responsive material. *Id.* ¶ 6.  The ODNI

28  employees who were asked to search for responsive records work on important matters related to

1   the national security of the United States and they were required to stop this critical work in

2   order to perform the necessary searches. *Id.* ¶ 7. As records were located, ODNI conducted a

3   continual analysis and review of the documents. *Id.* This process included the identification of

4   duplicative and non-responsive material, creation of "working" copies of the documents,

5   document indexes as needed, and an assessment of necessary consultations and/or referrals with

6   those entities maintaining equity in the documents, and the application of any FOIA exemptions

7   to the material. *Id.*

8       ODNI has completed all necessary searches for records responsive to plaintiff's request.

9   *Id.* ¶ 7. ODNI has identified approximately 185 pages of unclassified material and

10  approximately 80 pages of classified material responsive to plaintiff's request. *Id.* ¶ 8. Some of

11  the records that ODNI has identified contain information that is so highly classified that it is in a

12  classification compartment that is extremely sensitive. *Id.* ¶ 11. Only a small number of ODNI

13  officials are able to access this material and it must be handled under special security procedures.

14  *Id.* ODNI is actively working through these issues but the existence of these classified records

15  contributes to the complexity of processing plaintiff's FOIA request. *Id.* Further, approximately

16  255 pages of responsive material has been forwarded to other government agencies for

17  consultation and response back to ODNI regarding the applicability of any FOIA exemptions.

18  *Id.* ¶ 9. These agencies have been advised of this litigation and have informed ODNI that

19  consultations are expected to be completed in three weeks. *Id.* ¶ 12. ODNI anticipates being

20  able to complete the processing of all the responsive records in this case and provide a final

21  response to plaintiff within three weeks of receiving the other agencies responses to its

22  consultations. *Id.* ODNI is also willing to provide the court with a status report in thirty days to

23  update its progress. *Id.*

24  ## ARGUMENT

25      "A preliminary injunction is an extraordinary and drastic remedy, one that should not be

26  granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v.*

27  *Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M.

28  Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed.1995)). In determining

1    whether to grant a preliminary injunction, courts in the Ninth Circuit traditionally consider

2    "(1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable

3    injury to the moving party if the relief is not granted; (3) the extent to which the balance of

4    hardships favors the respective parties; and (4) in certain cases, whether the public interest will

5    be advanced by granting the preliminary relief." *Miller v. California Pacific Medical Center*, 19

6    F.3d 449, 456 (9th Cir. 1994) (en banc).  The moving party must demonstrate either "(1) a

7    combination of probable success on the merits and the possibility of irreparable harm, or (2) the

8    existence of serious questions going to the merits, the balance of hardships tipping sharply in its

9    favor, and at least a fair chance of success on the merits." *Id.* (internal quotation omitted); *see*

10   *also Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007).  "Under either formulation of the

11   test, the party seeking the injunction must demonstrate that it will be exposed to some significant

12   risk of irreparable injury." *Associated General Contractors of Calif. v. Coalition for Economic*

13   *Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).

14        **1.    Preliminary injunctions are generally not appropriate in FOIA cases.**

15        Plaintiff's request for a preliminary injunction here is even more extraordinary than in the

16   usual case because plaintiff seeks such relief based on claims made under the FOIA where, for a

17   variety of reasons, such motions are generally inappropriate.  A number of courts have denied

18   requests for preliminary injunctive relief for claims brought under the FOIA, including a recent

19   motion filed by plaintiff in a separate FOIA case seeking similar relief against the Department of

20   Justice.  *See Electronic Frontier Foundation v. Dep't of Justice*, slip op. at 10, 06-CV-1773

21   (RBW) (Sept. 27, 2007) (attached as Exhibit 5) ("[T]he Court agrees with the defendant's

22   position that EFF misconstrues the purpose and implications of the FOIA's expedited processing

23   provisions.").  *See also Judicial Watch, Inc. v. U.S. Dept. of Homeland Sec.*, 514 F. Supp. 2d 7,

24   11 (D.D.C. 2007) (denying motion for preliminary injunction to compel immediate disclosure of

25   records); *Al-Fayed v. CIA*, 2000 WL 34342564 at *6 (D.D.C. 2000) (finding that "upon

26   consideration of the parties' arguments, the statutory and regulatory context, and the applicable

27   case law," emergency relief was not warranted despite the agency's delay in responding to FOIA

28   requests); *Assassination Archives & Research Ctr., Inc. v. CIA*, No. 88-2600, 1988 U.S. Dist.

1   LEXIS 18606 at *1 (D.D.C., Sept. 29, 1988) (rejecting motion for preliminary injunction asking

2   the Court to order expedited processing of a FOIA request).  Notably, plaintiff concedes that a

3   "preliminary injunction is not the norm in FOIA cases."[5]  *See* Plaintiff's Memorandum at 13.

4        FOIA already establishes its own specialized procedural framework controlling the

5   processing of FOIA requests and procedures for FOIA litigation.  *See, e.g.*, 5 U.S.C. §

6   552(a)(3)(A) (providing that a FOIA request must reasonably describe the records sought and

7   must be filed in accordance with published rules and procedures).  Moreover, Congress has

8   specifically recognized that litigation involving FOIA claims is to be accelerated.  *See* 5 U.S.C. §

9   552(a)(4)(C) (providing that government defendants have 30 days in which to answer a FOIA

10  complaint as opposed to the ordinary 60 days provided by Fed. R. Civ. P. 12).  Plaintiff,

11  consequently, should not be permitted to circumvent this explicit statutory framework through a

12  request for preliminary relief.  *Cf. Electronic Frontier Foundation v. Department of Justice*, slip

13  op. at 3-4, 07-CV-0656 (JDB) at 3-4 (June 15, 2007) (attached as Exhibit T to Plaintiff's

14  Memorandum) (imposing an accelerated production schedule on the defendant, but noting,

15  "[c]ertainly, the vehicle of a preliminary injunction motion is an imperfect means to address

16  what is, in essence, a scheduling issue.  Moreover, the possibility of overuse, or even abuse, of

17  preliminary injunction requests in the FOIA scheduling context is obvious.").

18       The traditional purpose of a preliminary injunction is to preserve the status quo so that

19  the court can issue a meaningful decision on the merits.  *See King v. Saddleback Junior College*

20  *Dist.*, 425 F.2d 426, 427 (9th Cir. 1970).  That purpose is not served in this case because plaintiff

21  seeks "mandatory preliminary relief" – that is, an order compelling accelerated processing that

22  would not merely preserve the status quo but would force specific action by defendants to grant

23  the ultimate relief to which plaintiff thinks it is entitled.  Accordingly, the Ninth Circuit has held

24  that such relief is "subject to heightened scrutiny and should not be issued unless the facts and

25  law clearly favor the moving party."  *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403

26

27       _____

28       [5] Although preliminary injunctive relief has been granted (rarely, and arguably
    erroneously) in FOIA cases, *see, e.g., Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp.
    2d 30, 35 (D.D.C. 2006), the circumstances of this case do not warrant such relief.

1    (9th Cir. 1993).  Further, because preliminary injunctive relief is not intended to provide

2    plaintiffs with a means to bypass the litigation process and achieve rapid victory, a preliminary

3    injunction should not work to give a party essentially the full relief it seeks on the merits.  *See*

4    *Univ. of Texas v. Camenisch*, 451 U.S. 390, 397 (1981) ("[I]t is generally inappropriate for a

5    federal court at the preliminary injunction stage to give a final judgment on the merits.").

6        For these reasons, plaintiff has not met the exacting standard required for the relief it

7    seeks, and plaintiff's motion should be denied because it is inappropriate for FOIA claims.

8        **2.    Plaintiff has failed to demonstrate a likelihood of success on the merits
     because the FOIA's expedited processing provisions do not require that
9            processing be completed within a time certain.**

10       Plaintiff's allegation that defendants have violated the FOIA is predicated on the

11   mistaken assumption that the expedited processing provision of the FOIA requires an agency to

12   complete its processing within a specific period of time.  The statute, however, does not require

13   agencies to process expedited requests within a specific time limit.  Instead, the statute explicitly

14   directs agencies to "process *as soon as practicable* any request for records to which [they have]

15   granted expedited processing."  5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added); *see also* 32

16   C.F.R. § 1700.12(b); 28 C.F.R. § 16.5(d)(4) (stating that ODNI and DOJ expedited FOIA

17   requests "shall be processed as soon as practicable.").  As the Senate Report accompanying the

18   FOIA amendments that inserted the expedited processing procedures explains, the intent of the

19   expedited processing provision was to give certain requests priority, not to require that such

20   requests be processed within ten days or any other specific period of time:

21         [Once] the request for expedited processing is granted, the agency must then
           proceed to process the request "as soon as practicable."  No specific number of
22         days for compliance is imposed by the bill since depending on the complexity of
           the request, the time needed for compliance may vary.  The goal is not to get the
23         request processed within a specific time period, but to give the request priority in
           processing more quickly than would otherwise occur.
24
     S. Rep. 104-272, 1996 WL 262861, *17 (May 15, 1996); *see also* H. R. Rep. No. 104-795,
25
     *reprinted at* 1996 U.S.C.A.A.N. 3448, 3461 (Sept. 17, 1996) ("certain categories of requesters
26
     would receive priority treatment of their requests . . . .").  Thus, FOIA's expedited processing
27
     provision is an ordering mechanism, allowing certain FOIA requesters to jump to the head of the
28
     line and avoid the ordinary "first in, first out" processing queue.  *See ACLU*, 2005 WL 588354 at

*1 ("If a request for expedited processing is granted, the request moves to the front of the processing queue, ahead of previously filed requests.").  Once a request is at the front of the line, however, "practicability" is the standard that governs how quickly any particular request can be processed.  *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 38 (D.D.C. 2004) (reversing agency's denial of expedited processing and ordering the agency to "process plaintiffs' request . . . consistent with 5 U.S.C. § 552(a)(6)(E)(iii) and 28 C.F.R. § 16.5(d)(1)(4) ('as soon as practicable')").

Plaintiff's motion ignores the plain language of the statute and Congress's clear legislative intent.  Instead, plaintiff attempts to invent a time limit applicable to expedited requests by citing 5 U.S.C. § 552(a)(6)(A)(i), which it characterizes as the "20-working-day deadline imposed by the FOIA for processing a nonexpedited request."  *See* Plaintiff's Memorandum at 15.  That provision, however, has no bearing on when expedited processing must be completed.  *See American Civil Liberties Union v. DOD*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004) ("While it would appear that expedited processing would necessarily require compliance in fewer than 20 days, Congress provided that the executive was to 'process as soon as practicable' any expedited request.").  An agency's inability to respond to a FOIA request within the 20-day period simply means that the requester may, before a response has been made, file suit and be found to have constructively exhausted administrative remedies.  *See The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 72 (D.D.C. 1992).  The provision does not, in any event, purport to establish an "outside" time limit on what is "practicable" in responding to an expedited request, nor does it mandate that an agency fully process all requests within 20 days. *See, e.g.*, *Gerstein v. C.I.A.*, 2006 WL 3462658 *8 (N.D. Cal. Nov. 29, 2006) ("FOIA does not set forth a specific deadline by which expedited processing must be concluded.").  Indeed, even when expedited processing has been granted, courts have recognized that FOIA processing can take longer than 20 days.  *See Leadership Conference on Civil Rights v. Gonzalez*, 2005 WL 3360884 at *11 (D.D.C. Dec. 9, 2005) (ordering government to "expedite processing plaintiff's FOIA requests and produce the requested records to plaintiffs as soon as practicable, but no later than September 28, 2006, two years from the date on which the complaint was initially filed");

1   *see also Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Certainly, it took

2   longer than twenty days to respond to Judicial Watch's FOIA requests, but that is explained by

3   the nature of these requests, the many offices to which they were directed, the number of FOIA

4   requests [the agencies] regularly receive, and the treatment of FOIA requests on a first in/first

5   out basis.").  As such, the 20-day requirement can hardly be found to establish a mandatory

6   deadline as to the "practicability" of responding to expedited requests.

7        The practicability standard makes logical sense in the FOIA context because the time

8   required to process a FOIA request varies according to a number factors, including the requests's

9   size, scope, detail, the number of offices with responsive documents, other agencies or

10  components that must be consulted or to which documents might have to be referred for

11  additional review, and FOIA exemption issues.  *See generally* Sessoms Decl.; Colborn Decl.;

12  Pustay Decl.; Hackett Decl.  *See also* 28 C.F.R. § 16.4 (describing FOIA consultation and

13  referral procedures); 28 C.F.R. § 16.7 (describing FOIA classified information review

14  procedures). Further, the existence of classified materials, which are present in this case,

15  contributes significantly to the complexities attendant to processing a FOIA request.  *See*

16  Sessoms Decl. ¶ 11; Colborn Decl. 9; Pustay Decl. ¶ 25; Hackett Decl. ¶ 10.  Responsive

17  documents that may contain classified information must undergo an additional, and

18  time-sensitive, review to ensure that all documents are appropriately classified in accordance

19  with Executive Order 12958, as amended.  *See id.*  Such review also includes a page-by-page and

20  line-by-line review of the documents to determine which, if any, FOIA exemptions may apply.

21  *See id.*  In light of the sensitive nature of classified information, potentially responsive material

22  must then be reviewed by any appropriate entities with equities in the documents to ensure that

23  no processing errors have been made and that no improper disclosures are made.  *See id.*  As

24  Congress has recognized, review of classified national security information may require

25  additional time.  *See* H. R. Rep. No. 104-795, 1996 U.S.C.A.A.N. at 3466 ("In underscoring the

26  requirement that agencies respond to requests in a timely manner, the Committee does not intend

27  to weaken the interests protected by the FOIA exemptions.  Agencies processing some requests

28  may need additional time to adequately review requested material to protect these exemption

interests. For example, processing some requests may require additional time to properly screen material against the inadvertent disclosure of material covered by the national security exemption").

Moreover, documents subject to other exemptions, *see generally* 5 U.S.C. § 552(b), must similarly be identified and, where necessary, redacted, and documents generated by other agencies or authorities must be referred for review back to those same agencies or authorities. *See* Sessoms Decl. ¶ 10-13; Colborn Decl. ¶ 8-9; Pustay Decl. ¶ 23-30; Hackett Decl. ¶ 9-13. The attached declarations establish that defendants have made significant progress on these complex tasks. Plaintiff offers no reason to believe that the agency is not performing these tasks as soon as practicable, and thus fails to meet its burden of demonstrating, "by a clear showing," *Mazurek*, 520 U.S. at 972, that a preliminary injunction is warranted at this juncture.

The obstacles that make it impracticable to process plaintiff's requests on its desired schedule relate to the amount and intensity of work that FOIA processing entails and the limitations of and burdens on defendants's processing capacity—not to any failure with respect to the grant of expedited treatment. As discussed above, defendants have appropriately implemented the grant of expedited treatment by moving plaintiff's requests to the front of their respective FOIA queues ahead of other FOIA requests. *See* Sessoms Decl. ¶ 5; Colborn Decl. ¶ 4; Pustay Decl. ¶ 5; Hackett Decl. ¶ 5. However, a grant of expedited treatment does not eliminate any of the time-consuming and labor-intensive steps required to complete processing: the review of potentially responsive documents to isolate the documents falling within the scope of the plaintiff's FOIA requests; the review of documents for classified information; the review to determine whether documents are exempt from disclosure; and appropriate conferral with entities that have equities in the documents. As detailed more fully in the declarations, defendants have already made considerable progress on plaintiff's requests with several components anticipating an interim release of records within the next several weeks.

In addition to the factual basis supporting the denial of relief, the cases that plaintiff cites in support of its claim that "courts have imposed specific processing deadlines on agencies, requiring the prompt delivery of non-exempt records to FOIA requesters," *see* Plaintiff's

1   Memorandum at 23, are inapposite.  Many of the cases cited by plaintiff allowed the government

2   far more time to complete processing the FOIA requests at issue than plaintiff demands in this

3   case.  *See, e.g., Judicial Watch v. Dept. of Energy*, 191 F. Supp. 2d 138 (D.D.C. 2002) (ordering

4   that responsive non-exempt documents be produced within approximately a year of filing of the

5   complaint), *Natural Resources Defense Council v. DOE*, 191 F. Supp. 2d 41 (D.D.C. 2002)

6   (ordering responsive non-exempt documents to be filed within approximately one year of the

7   date the FOIA request was made to agency and within approximately 4 months of filing

8   complaint); *American Civil Liberties Union*, 339 F. Supp. 2d at 505 (ordering the identification

9   or production of responsive documents within approximately one year of submitting FOIA

10  request and three months of filing of complaint); *Electronic Privacy Info. Center v. DOJ*, Civ.

11  No. 05-845, 2005 U.S. Dist. LEXIS 40318, at * 5-6 (D.D.C., Nov. 16, 2005) (ordering

12  processing and release of documents on a rolling basis until processing complete).  These cases

13  are thus wholly unlike this one, where plaintiff seeks "preliminary" relief demanding processing

14  at an artificial pace despite the fact that defendants are not even required at this time to answer

15  plaintiff's complaint.

16      Although plaintiff relies heavily upon the decision in *Electronic Privacy Information*

17  *Center ("EPIC") v. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006), in which a preliminary

18  injunction was granted in the FOIA expedited processing context requiring the agency to

19  produce or identify all responsive documents within 20 days, as discussed above, *EPIC* is in

20  tension with the FOIA statutory and regulatory framework and the general principles governing

21  issuance of preliminary relief.  Moreover, plaintiff fails to note that the preliminary injunction

22  entered in that case was later modified upon reconsideration, following a factual submission by

23  the government regarding its processing capacity.  *See EPIC*, slip op., No. 06-0096 (D.D.C. Mar.

24  24, 2006) (Kennedy, J.) (attached as Exhibit 6) (granting in part the government's expedited

25  motion for relief from the February 16, 2006 Order, extending the deadline for several DOJ

26  components to process plaintiff's FOIA request by 60 days or 120 days, respectively).

27  Defendants respectfully submit that the *EPIC* decision was incorrectly decided and contend that

28  the FOIA's 20 day administrative exhaustion requirement has no bearing on the date by which

1    an agency must produce records responsive to an expedited request.[6]  In any event, even

2    assuming this Court adopts the *EPIC* framework, the *EPIC* court's decision was greatly

3    influenced by its view that the agency did not "present[] evidence that processing EPIC's FOIA

4    requests within the next twenty days would be impracticable." *Id.* at 39-40.  Indeed, the *EPIC*

5    court emphasized that "[t]he presumption of agency delay raised by failing to respond to an

6    expedited request within twenty days is certainly rebuttable if the agency presents credible

7    evidence that disclosure within such time period is truly not practicable." *Id.* at 39.  In this case

8    defendants have overcome the presumption of agency delay with detailed declarations

9    explaining their efforts to process plaintiff's FOIA requests and the reasons why plaintiff's

10   request for immediate relief is unreasonable and not practicable.

11       For similar reasons, plaintiff's reliance on *Gerstein v. C.I.A.*, 2006 WL 3462658 (N.D.

12   Cal. Nov. 29, 2006), is misplaced.  In that case, the court granted the FOIA plaintiff's motion for

13   expedited processing after the agency denied the plaintiff's request at the administrative level.

14   After analyzing and reversing the agency's decision, the court went on to discuss the time line

15   for processing responsive documents, noting that "FOIA does not set forth a specific deadline by

16   which expedited processing must be concluded." *Id.* at *8.  The court, however, granted

17   plaintiff's request to produce responsive documents within 30 days of the court's ruling because

18   the defendant did "not respond to this request and, in particular, [did] not contend that it is not

19   'practicable' for them to process [plaintiff's] FOIA request within 30 days." *Id.  Gerstein* is

20   distinguishable for several reasons.  First, the FOIA request in *Gerstein* had been pending "for

21   more than eight months" without production of any responsive documents whereas the requests

22   in this case have been pending roughly three months.  *Id.*  Second, unlike the defendant in

23   *Gerstein*, defendants have produced detailed declarations explaining that they are working

24   diligently to process plaintiff's requests as soon as practicable.[7]  *See Electronic Frontier*

---

[6]  This Court, of course, is not required to adopt the *EPIC* analysis.  *See Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) (one district court judge is not required to follow the decision of another).

[7]  In the interest of simplicity and clarity, defendants note that the arguments above apply equally to the court's second decision in *Gerstein.  See Gerstein v. C.I.A.*, 2006 WL 3462659

1 | *Foundation v. Dep't of Justice*, slip op., 06-CV-1773 (RBW) (attached as Exhibit 3) at 5

2 | (denying motion for preliminary injunction seeking expedited processing in FOIA case based on,

3 | *inter alia*, the fact that "defendant has demonstrated that it is processing plaintiff's FOIA request

4 | as soon as practicable.").

5 |      The court's decision in *Electronic Frontier Foundation v. ODNI*, 2007 WL 4208311

6 | (N.D. Cal. Nov. 27, 2007), is also distinguishable from the present context. That court's

7 | decision to grant in part plaintiff's preliminary injunction motion was predicated in part on the

8 | fact that congressional legislation was set to expire in several weeks. *Id.* at *7. Here, plaintiff

9 | has not identified a similar event that would turn a purported delay in processing plaintiff's

10 | FOIA request into an irreparable injury. As noted above, it appears the legislative and public

11 | debate regarding the FISA – a debate that has been ongoing for several years – will continue for

12 | the foreseeable future. Moreover, even applying the *Electronic Frontier Foundation* court's

13 | analytical framework to this case,[8] the central question identified by that court was: "Whether

14 | defendant is actually processing the [FOIA] request 'as soon as practicable.'" *Id.* at *4. The

15 | attached declarations establish that defendants are, in fact, processing plaintiff's FOIA request as

16 | soon as practicable.

17 |      For the reasons explained above, there is no appropriate legal or factual basis for the

18 | Court to order defendants to meet plaintiff's proposed processing schedule, particularly where no

19 | such requirement is found in the FOIA statute and, indeed, such a requirement is at odds with the

20 | statute.

21 |      **3.**     **Plaintiff has not established a significant risk of irreparable injury.**

22 |      In addition to failing to demonstrate a likelihood of success on the merits, plaintiff also

23 | has not established that the preliminary injunction it requests is necessary to prevent irreparable

24 | harm. The focus of the harm inquiry in this case is whether plaintiff will suffer irreparable injury

25 |

26 | (N.D. Cal. Nov. 29, 2006). Although both *Gerstein* decisions contained substantially similar analysis of the legal issues discussed above, they arise in slightly different procedural contexts,

27 | which explain the court's separate opinions.

28 |     [8] *ODNI* relied largely upon the analysis in *EPIC*. As explained above, defendants contend that the *EPIC* analysis is inconsistent with the terms of the FOIA.

1    if its FOIA requests are not processed on the schedule that plaintiff requests but instead are

2    processed according to the time frame that Congress has established, "as soon as practicable."

3    Plaintiff speculates that the denial of emergency relief in this case could impose irreparable harm

4    because the records plaintiff seeks from defendants are only of value now – that is, before

5    Congress votes on permanent amendments to the FISA – but the records will be useless if it is

6    produced after Congress amends the FISA.  Plaintiff's argument is pure speculation, and it is not

7    sufficient to support issuance of a preliminary injunction.  *See Caribbean Marine Services Co.,*

8    *Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute

9    irreparable injury sufficient to warrant granting a preliminary injunction.").

10          As an initial matter, plaintiff's delay in bringing this matter to the court's attention belies

11   their claim of emergency.  Plaintiff does not explain why it waited nearly two months to file the

12   preliminary injunction motion.  According to plaintiff's legal theory, which defendants dispute

13   for the reasons stated above, the agencies should have finished processing the FOIA requests

14   within 20 working days of receipt.  Accordingly, plaintiff could have filed the preliminary

15   injunction motion two months ago in early January 2008.  "By sleeping on its rights a plaintiff

16   demonstrates the lack of need for speedy action." *See Lydo Enters. v. City of Las Vegas*, 745

17   F.2d 1211, 1213-14 (9th Cir. 1984) ("We would be loath to withhold relief solely on that ground,

18   but we do give that fact consideration in measuring the claim of urgency.").

19          In any event, plaintiff has not established that release of agency records according to a

20   schedule guided by the "as soon as practicable" standard will diminish their value to the public,

21   let alone impose irreparable injury to plaintiff.  *See Al-Fayed v. C.I.A.*, 2000 WL 34342564 at *5

22   (D.D.C. Sept. 20, 2000) (denying preliminary injunction for expedited processing based in part

23   on plaintiff's failure to explain why "information will not retain its value if procured through the

24   normal FOIA channels.").  The public and legislative debate regarding proposed amendments to

25   the FISA has been ongoing for nearly three years, *see, e.g.*, Implementation of the USA Patriot

26   Act: Sections of the Act that Address the Foreign Intelligence Surveillance Act (FISA), 109th

27   Cong. (April 26 & 28, 2005), Hearing Before the Subcommittee on Crime, Terrorism, and

28   Homeland Security of the Committee on the Judiciary of the House of Representatives.  More

1    recent media reports indicate that the "gulf between the administration and House Democratic

2    leaders is now so wide" on the FISA amendments "that the issue may not be resolved until a new

3    president takes office next year."  *See* Jonathan Weisman, *House Passes A Surveillance Bill Not*

4    *To Bush's Liking*, Washington Post, March 15, 2008, at A2.  Thus, contrary to plaintiff's claim

5    that time is of the essence, there appears to be no concrete event on the horizon that would

6    suddenly diminish the value of the records plaintiff seeks or cause the public interest in the FISA

7    debate to evaporate.  Even assuming that congressional debates over national issues "cannot be

8    restarted or wound back," *see* Gerstein, 2007 WL 3462659 at *4, it appears quite likely that the

9    FISA debate will continue for the foreseeable future.  Given this state of affairs, plaintiff will not

10   suffer any irreparable harm if defendants process the FOIA requests according to the schedules

11   proposed in the attached declarations.

12        There is also no appropriate legal or factual basis to tether release of agency records in a

13   FOIA case to Congress's legislative calendar, particularly given that the FOIA provides that

14   expedited processing shall proceed "as soon as practicable."  Indeed, courts have denied similar

15   requests to condition FOIA processing deadlines upon upcoming national presidential elections.

16   *See The Nation Magazine*, 805 F. Supp. at 73-74 (denying motion for temporary restraining

17   order in FOIA case seeking release of records about presidential candidate prior to 1992

18   election); *Assassination Archives and Research Center, Inc. v. C.I.A.*, 720 F. Supp. 217, 218-19

19   (D.D.C. 1988) (refusing to order CIA to expedite a FOIA request for documents about George

20   Bush even though the 1988 presidential election was imminent and the plaintiff argued that the

21   information should be disseminated to the public before voters cast their ballots).  A contrary

22   decision would improperly convert any request for records relating to pending legislation into an

23   emergency requiring immediate release of documents prior to a vote on the legislation, without

24   any consideration of the equities and burdens on the government agency processing the

25   documents and in direct contravention of the terms of the FOIA statue.  Further, such a holding

26   would likely lead to exactly the type of "overuse, or even abuse" of the preliminary injunction

27   mechanism in the FOIA context identified by the Court in *Electronic Frontier Foundation v.*

28   *Department of Justice*, slip op. at 3-4, 07-CV-0656 (JDB) at 3-4 (June 15, 2007) (attached as

1  Exhibit T to Plaintiff's Memorandum).  A preliminary injunction, which the Supreme Court has

2  described as an "extraordinary and drastic remedy," *Mazurek*, 520 U.S. at 972, should not be

3  issued routinely in the common situation in which a government agency grants a request for

4  expedited FOIA processing and Congress is considering legislation about the subject of the

5  FOIA request.  If this view prevailed, anyone who sought to have their FOIA request processed

6  on an expedited basis would automatically have a claim of irreparable injury regardless of

7  whether any real harm existed.  This is not the proper standard to be applied in the issuance of a

8  preliminary injunction, and it is not the result contemplated by Congress when it authorized a

9  limited exception for expedited processing.  Instead, Congress deferred to the necessity for

10 ensuring adequate time for appropriate agency processing, and mandated only that expedited

11 requests be processed "as soon as practicable."  Thus, while the purported urgency of plaintiff's

12 request may be a factor in determining whether a request for expedited treatment will be granted

13 by the agency, *see* 5 U.S.C. § 552(a)(6)(E)(v)(ii), it is not a factor in determining the speed by

14 which an agency is required to complete processing of the request, nor does it mean that plaintiff

15 will suffer any irreparable harm by adhering to the terms of the FOIA statute.

16     **4.**    **An order requiring defendants to accelerate processing of plaintiff's FOIA**
17              **requests would impose undue burdens on defendants and not serve the**
             **public interest.**

18     In contrast to plaintiff's speculative claims of harm, a preliminary injunction ordering

19 defendants to finish processing plaintiff's FOIA requests within ten days would impose undue

20 burdens on defendants and injure their interests.  Indeed, the balance of harms tips decidedly in

21 favor of denying plaintiff's motion for preliminary injunction.  As explained in the attached

22 declarations, imposing a 10 day production deadline on defendants is simply not practicable.  *See*

23 Sessoms Decl. ¶ 12; Colborn Decl. ¶ 10; Pustay Decl. ¶ 30; Hackett Decl. ¶ 13.  Any such

24 requirement would harm defendants by not allowing them sufficient time to finish consultations

25 with other agencies that have equities in the records subject to plaintiff's request.  *See Sussman*

26 *v. U.S. Marshals Service*, 494 F.3d 1106, 1118 (D.C. Cir. 2007) ("FOIA explicitly permits

27 consultation with another agency having a substantial interest in the determination of the

28 request.") (internal quotations and ellipses omitted).  Further, an unreasonably accelerated

1  production deadline increases the risk of inadvertent disclosure of records that are exempted

2  from release under the FOIA.  Given the presence of classified national security information in

3  these records, defendants stand to suffer significant harm if such records are disclosed before

4  defendants conduct an appropriate review of these records.

5      The proposed preliminary injunction in this case also has the potential to harm the public

6  interest by complicating and disrupting the processing of other FOIA requests.[9]  *See The Nation*

7  *Magazine*, 805 F. Supp. at 74 (finding that a temporary restraining order would likely harm third

8  parties in light of the defendants' limited FOIA processing resources and the court's load of

9  cases seeking judicial review of FOIA activities).  Expedition already disadvantages normal

10 FOIA requesters by placing them farther back in an agency's processing queue.  Imposing

11 artificial deadlines beyond an agency's capabilities through the use of preliminary injunctions

12 would only hinder the average FOIA requestor even further by favoring the most litigious FOIA

13 requesters.  *See Long v. Department of Homeland Security*, 436 F. Supp. 2d 38, 45 (D.D.C.

14 2006) (placing plaintiffs' request ahead of others that are awaiting responses to their requests

15 would injure others who made their requests before the plaintiff or who have presented more

16 meritorious applications for expedited processing).  The public interest, therefore, is not well

17 served by permitting FOIA requesters to avoid the plain terms of the FOIA, nor is it served by

18 forcing government agencies to accelerate FOIA processing based on nothing more than

19 speculative claims that the requested information is time sensitive and potentially perishable due

20 to pending legislation in Congress.

21      Plaintiff's motion ignores these realities, and, as a result, threatens to compromise the

22 delicate balancing of the public interest that Congress undertook in enacting FOIA between the

23

24 ─────────────────

25 [9] Plaintiff' own interest in its FOIA request to further its private lobbying efforts in support of collateral litigation should not be equated with the public interest.  *See* Ellen

26 Nakashima, *A Story of Surveillance*, Washington Post, Nov. 7, 2007, at D1 ("lawyers for the Electronic Frontier Foundation, which filed [a class action lawsuit against various

27 telecommunications companies] . . . are urging key U.S. senators to oppose a pending White House-endorsed immunity provision that would effectively wipe out the lawsuits.").  *See also*

28 *Massey v. FBI*, 3 F.3d 620, 625 (2d Cir. 1993) ("[T]he mere possibility that information may aid an individual in the pursuit of litigation does not give rise to a public interest.").

1  general interest in disclosure of government information and the necessity of ensuring that

2  certain types of documents, the disclosure of which would cause harm, were not to be disclosed.

3  *See* 5 U.S.C. §522(b).  Congress specifically noted that even with respect to expedited requests,

4  in certain cases, depending on the subject matter of the request, additional time would be

5  required to ensure that the public's interest in preventing the public disclosure of these exempted

6  documents was not compromised.  *See* H. R. Rep. No. 104-795, 1996 U.S.C.A.A.N. at 3466,

7  *quoted supra*.  As Congress acknowledged, those concerns are only heightened in a case such as

8  this one, where the request involves classified information, and defendants have independent

9  obligations under federal statutes, regulations, and Executive Orders to ensure that no

10  unwarranted disclosure occurs.  *See, e.g.*, 50 U.S.C. § 403-1(i)(1) (requiring the Director of

11  National Intelligence to "protect intelligence sources and methods from unauthorized

12  disclosure").  Ordering defendants to disclose records according plaintiff's unreasonable time

13  frame and other than "as soon as practicable," as dictated by the FOIA, causes significant harm

14  to this predetermined balancing of competing public interests.

## **CONCLUSION**

16  For the foregoing reasons, plaintiff's motion for preliminary injunction should be denied.

17  A proposed order is attached hereto.

19  Dated: March 18, 2008                        Respectfully submitted,

20                                                JEFFREY S. BUCHOLTZ
                                                  Acting Assistant Attorney General
21
22                                                CARL J. NICHOLS
                                                  Deputy Assistant Attorney General

23                                                JOSEPH P. RUSSONIELLO
                                                  United States Attorney
24
25                                                ELIZABETH J. SHAPIRO
                                                  Assistant Director, Federal Programs Branch
26
                                                  */S/ Andrew I. Warden*
                                                  ANDREW I. WARDEN (IN Bar No. 23840-49)
27                                                Trial Attorney, U.S. Department of Justice
                                                  Civil Division, Federal Programs Branch
28                                                20 Massachusetts Ave., N.W., Room 7332
                                                  Washington, D.C. 20530

1

Telephone: (202) 616-5084
Facsimile: (202) 616-8460
E-mail: Andrew.Warden@usdoj.gov

2

3

*Attorneys for Defendants*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) | |
| Plaintiff, | ) ) | Civil Action No. 08-1023 |
| v. | ) ) | |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE | ) ) ) | |
| and | ) ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF GAYLA D. SESSOMS

I, GayLa D. Sessoms, do hereby state and declare as follows:

1.      I am the Freedom of Information Act (FOIA) Coordinator for the National

Security Division (NSD), of the United States Department of Justice (DOJ). In that capacity, I

manage day-to-day FOIA operations including the receipt, review, search, and records processing

in connection with all incoming access requests.

2.      I make the statements herein on the basis of personal knowledge, as well as on

information acquired by me in the course of performing my official duties.

3.      The National Security Division's core mission is to coordinate the Department's

efforts to combat terrorism and protect national security. The NSD is responsible for assisting the

Attorney General and other senior Department and Executive Branch officials in ensuring that the

national security-related activities of the U.S. are consistent with relevant law; overseeing terrorism

investigations and prosecutions; handling counterespionage cases and matters; obtaining court

authorization for the collection of foreign intelligence under the Foreign Intelligence Surveillance

Act (FISA); and conducting oversight of intelligence agency compliance with certain national

security legal requirements.  The NSD, which consolidates the Department's primary national

security elements within a single Division, currently consists of the Office of Intelligence Policy and

Review (OIPR) ; the Counterterrorism (CTS) and Counterespionage (CES) Sections, formerly part

of the Criminal Division; and a new Law and Policy Office (LPO).

### ELECTRONIC FRONTIER FOUNDATION'S FOIA REQUEST

4.      By letter dated December 21, 2007, the Electronic Frontier Foundation ("EFF")

submitted a request under the Freedom of Information Act ("FOIA") for "all agency records from

September 1, 2007 to the present concerning briefings, discussions, or other exchanges that

Justice Department officials have had with 1) members of the Senate or House of

Representatives and 2) representatives or agents of telecommunications companies concerning

amendments to FISA, including any discussions or immunizing telecommunications companies

or holding them otherwise unaccountable for their role in government surveillance activities."  A

copy of EFF's FOIA request is attached hereto as Exhibit A.  The NSD received EFF's request

on December 27, 2007 and acknowledged receipt on the same day.  See Exhibit B.  EFF also

requested expedited processing of its FOIA request, and by letter dated January 29, 2008, the

NSD notified EFF that its request had been granted for expedited treatment.  See Exhibit C.

5.      NSD routinely processes its FOIA requests on a first-in, first-out basis.  However,

upon granting expedited processing, EFF's request was immediately moved ahead of fourteen

FOIA requests in the NSD FOIA queue that were received prior to plaintiff's request.

Accordingly, EFF's FOIA request is currently under review and with the exception of "quick

hits," the processing of most other pending requests has been minimal.[1]

## RECORDS SEARCHES

6.    After granting expedited processing, NSD immediately began to coordinate a strategy for searching for records responsive to EFF's requests that included identifying available personnel resources to conduct the searches.  A search for responsive records was initiated within the National Security Division offices reasonably likely to maintain records responsive to plaintiff's request: the Office of Intelligence Policy and Review (OIPR) , the Law and Policy Office (LPO) and the "Front Office."  In accordance with standard operating procedures, an electronic communication (e-mail) regarding search requirements was initially transmitted to approximate fifty staff members within these offices upon receipt of plaintiff's request.  Follow-up reminders were transmitted after expedited processing was granted and again when plaintiff filed its Complaint.   The individuals asked to search for records responsive to this FOIA request also work on significant mission-related matters pertaining to the national security of the United States.  These officials and employees are required to stop this critical work in order to perform the necessary searches for this case and each of them did so as soon as was practicable.

7.    **OIPR** maintains three general categories of records: operations records relating to proceedings before the Foreign Intelligence Surveillance Court (FISC) under the Foreign Intelligence Surveillance Act ("FISA"), including applications for authority to conduct electronic surveillance, physical searches, other authorities under FISA as referenced above, and other operational matters; litigation records; and policy records including congressional inquiries,

---

[1] FOIA requests that can be processed and closed within five days are considered "quick hits," and the NSD has a total of thirty-three pending FOIA requests (including the fourteen requests received prior to plaintiff's).

reports and correspondence. In response to plaintiff's request, a search was conducted of OIPR's policy records because we could reasonably expect to locate responsive records within these files rather than the litigation and FISA files. This search was performed by the sole Program Analyst assigned to FOIA operations. In addition, all senior staff, as well as attorneys with responsibilities for matters related to plaintiff's request were asked to query their electronic communications (e-mail) and office files for responsive documents. The Program Analyst performed the searches for those attorneys unable to do so because of the priorities imposed by mission-related tasks. All electronic communications (e-mail) were queried as well as office (paper) files identified by the attorneys as potentially responsive. Responsive records (including classified) have been identified within OIPR.

8.    **LPO** maintains its records within the individual offices of the counsels for Law and Policy, rather than a central repository. Accordingly, both the electronic communications (e-mail) and office files of both LPO attorneys were searched. One attorney performed his own queries and I conducted queries for the other attorney that included all of his electronic communications (e-mail) as well as office (paper) files identified by the attorney as potentially responsive. Responsive records (including classified) have been identified within LPO.

9.    **The Front Office** maintains its records within the individual offices of the Assistant Attorney General for National Security, the various Deputies, Senior Counsels and Counsels, rather than a central repository. Accordingly, both the electronic communications (e-mail) and office files of all Front Office attorneys were searched. To the extent that attorneys within the Front Office were unable to search their files because of the priorities imposed by mission-related tasks, the Program Analyst, Records Officer and I conducted these queries. We

queried all electronic communications (e-mail) as well as the office (paper) files identified by the attorneys as potentially responsive.   Electronic communications (e-mail) identified during an initial search of the files of the Assistant Attorney General for National Security were subsequently reviewed by Front Office personnel and determined to be outside the scope of plaintiff's request.  Other responsive records (including classified) have been identified within the Front Office.

10.     The NSD completed its queries for responsive records last week and identified roughly two boxes of material that may be responsive to plaintiff's request.   The Program Analyst and I are currently reviewing this material to 1) ensure that it is responsive to plaintiff's request; 2) eliminate any duplicates; 3) identify all third agency documents that require referral and/or consult; and 4) identify all classified records.  Because the NSD's queries were conducted within three different offices, it is anticipated that multiple copies of the same document will be located.  Once the universe of responsive documents is determined, the Program Analyst and I will immediately begin the review of this material for the application of any FOIA exemptions. The NSD will notify plaintiff of the exact volume of responsive records no later than Friday, March 21, 2008.

11.     The existence of classified material contributes significantly to the complexities attendant to processing a FOIA request.  Responsive documents that contain classified information must undergo an additional, and time-sensitive, review to ensure that national security interests are properly balanced against the public's access rights.  Such review also includes a page-by-page and line-by-line review of the documents to determine which, if any, FOIA exemptions may apply.  In light of the sensitive nature of classified information in general,

and records related to FISA amendments in particular, potentially responsive material must be reviewed by appropriate entities with equities in the documents to ensure that legitimate national security interests are fully protected.

12.     Plaintiff's request that the NSD complete processing its FOIA request within ten days is simply not practicable. The NSD is devoting appropriate resources and effort to processing plaintiff's FOIA request as soon as practicable. Plaintiff's request for release of records within ten days is not practicable because the NSD has identified both third agency records that require referral and consult with other agencies as well as classified records that require a declassification and FOIA review. In addition, although plaintiff's request has been granted expedited treatment and is being processed accordingly, the NSD has a statutory obligation to process its current workload of thirty-three pending FOIA requests. The NSD cannot simply abandon its work on its other FOIA requests. Moreover, a ten day deadline would increase the chances of an inadvertent disclosure of records (some of which contain classified national security information) that are exempted from release under the FOIA. For these reasons, the NSD proposes to focus initially on the review of unclassified records as well as records that do not contain third agency equities. The Program Analyst and I will complete the review of this category of records and provide an interim response to plaintiff no later than April 11, 2008.

13.     With respect to responsive records that require referral and consult with other agencies as well as any classified records, the NSD is not in a position to provide an estimated date of production given numerous considerations and additional burdens that must be taken into account before releasing such records. NSD is committed to processing these records as soon as practicable and is willing to provide the Court with a status report every thirty days to update the

Court on the NSD's progress.

      14.     I declare under penalty of perjury that the foregoing is true and correct.


                    GayLa D. Sessoms
                    FOIA Coordinator
                    National Security Division


Executed on this   18th  day of March, 2008.

# EXHIBIT A

 **Electronic Frontier Foundation**

454 Shotwell Street
San Francisco, CA 94110
+1 415 436 9333 (tel)
+1 415 436 9993 (fax)

FAX COVER SHEET

**DATE:**        December 21, 2007

**TO:**          GayLa Sessoms, FOIA Coordinator, National Security
                 Division

**Fax Number:**  (202) 305-4211

**FROM:**        Marcia Hofmann, Electronic Frontier Foundation

**RE:**          Freedom of Information Act Request and Request for
                 Expedited Processing

**Pages sent:**  26 including cover page

**COMMENTS:**

NOTICE This fax is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure. If you are not the intended recipient or his or her agent, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and asked to please notify us immediately by telephone. Thank you.

PLEASE CALL IF THERE IS A PROBLEM

**EXHIBIT A**

 **Electronic Frontier Foundation**

December 21, 2007

VIA FACSIMILE — (202) 305-4211

GayLa D. Sessoms, FOIA Coordinator
National Security Division
Department of Justice
Room 6150, 950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

RE: **Freedom of Information Act Request and Request for Expedited Processing**

Dear Ms. Sessoms:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Justice National Security Division on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On August 5, 2007, President Bush signed into law the Protect America Act, legislation which amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power to intercept communications without warrants, as well as shield telecommunications companies from future liability for their role in such activity.

Since the passage of this law, the Administration has tried to convince Congress to amend FISA to make it impossible for courts to impose liability on telecommunications companies for participating in a massive and illegal warrantless spying operation conducted by the National Security Agency. *See Signing Statement, President Bush Commends Congress on Passage of Intelligence Legislation,* Aug. 6, 2007; James Risen, Bush Signs Law to Widen Reach for Wiretapping, *NY Times,* Aug, 6, 2007; Mark Hosenball and Michael Isikoff, Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About, *Newsweek,* updated Sept. 26, 2007, *available at* http://www.newsweek.com/id/41142; Eric Lichtblau, James Risen and Scott Shane, Wider Spying Fuels Aid Plan for Telecom Industry, *NY Times,* Dec. 16, 2007.

We are seeking all agency records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications companies[1] concerning amendments to FISA, including any discussion of immunizing

---

[1] The phrase "representatives or agents of telecommunications companies" is intended to include lobbyists and lawyers acting on behalf of such companies. According to Newsweek, these individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and

**454 Shotwell Street, San Francisco, CA 94110 USA**
**+1 415 436 9333 (v) +1 415 436 9993 (f) www.eff.org**

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 2

telecommunications companies or holding them otherwise unaccountable for their role in
government surveillance activities. This request includes, but is not limited to, all e-mail,
appointment calendars, telephone message slips, or other records indicating that such briefings,
discussions, or other exchanges took place.

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information about which there
is "[a]n urgency to inform the public about an actual or alleged federal government activity," and
it is "made by a person primarily engaged in disseminating information." 28 C.F.R. §
16.5(d)(1)(ii). The information we request easily satisfies this standard.

As an initial matter, it is worth noting that OLA recently granted expedited processing for two
FOIA requests nearly identical to this one (see EFF request letters seeking expedited processing
and OLA letter granting expedited processing attached hereto).

The federal government activity at issue here — DOJ efforts to secure immunity for telecoms
engaged in illegal surveillance — raises serious questions about the DOJ's interests in revision of
the FISA. Moreover, the Protect America Act includes a sunset provision requiring Congress to
decide within weeks whether to reauthorize the legislation. This decisionmaking process has
involved, and will continue to involve, congressional debate about whether to expand the law
further, and if so, how much. Because Congress will imminently consider modifying FISA again,
there is an urgency to inform the public about the lobbying forces pushing for reform of the law.
The information we have requested will help the public and Congress fully participate in the
current and ongoing debate over whether the government's authority to conduct electronic
surveillance should be further expanded and facilitated by telecommunications companies.

The purpose of this request is to obtain information directly relevant to the DOJ's
communications with members of Congress and telecommunications carriers about updating
FISA to grant the companies retroactive immunity for illegal activities. There is an urgency to
inform the public about the information we seek. Therefore, this request clearly meets the
standard for expedited processing set forth in DOJ regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is
"primarily engaged in disseminating information."

---

U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing
Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom
Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law
firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under
President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff,
Case Dismissed?, *Newsweek*, updated Sept. 26, 2007.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 3

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a "representative of the news media" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(6). In requesting this classification, we note that the Department of Homeland Security and Department of State have recognized that EFF qualifies as a "news media" requester based upon the publication activities set forth below (see DHS stipulation and State Department letter attached hereto). In addition, the National Security Agency has previously determined that EFF is not only a "news media requester," but also "primarily engaged in disseminating information" for purposes of expedited processing (see attached EFF FOIA request and NSA response, in which EFF requested expedited processing because it sought information "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity," and NSA granted the request). We further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[2] One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[3] To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received 46,682,194 hits in July 2007 — an average of 62,744 per hour. The web site reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet. DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 510,633 hits in July 2007.[4]

---

[2] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/pqShowGsReport.do?npoId=561625 (last visited Dec. 18, 2007).
[3] *Id.*
[4] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 4

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/ cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 2,600 times from EFF's in July 2007.

Due to these extensive publication activities, EFF is a "representative of the news media" under the FOIA and agency regulations.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k). To determine whether a request meets this standard, Department of Justice components determine whether "[d]isclosure of the requested information is likely to contribute significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. §§ 16.11(k)(i), (ii). This request clearly satisfies these criteria.

First, the DOJ's relationship with telecommunications companies concerns "the operations or activities of the government." 28 C.F.R. § 16.11(k)(2)(i). Furthermore, the DOJ's push to amend FISA unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities," 28 C.F.R. § 16.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on how and why the DOJ is lobbying to immunize telecommunications companies from liability for their role in conducting

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 5

illegal surveillance.

Third, the requested material will "contribute to public understanding" of the DOJ's efforts to modify FISA. 28 C.F.R. § 16.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of the reasons why and manner in which the DOJ is lobbying for legal reform, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of the DOJ's push to amend FISA to protect telecommunications companies. 28 C.F.R. § 16.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested information will help inform the public about the Justice Department's efforts to reform the law and the interests behind them, as well as contribute to the public debate about whether FISA should be further modified.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 28 C.F.R. § 16.11(k)(3). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Thank you for your consideration of this request. As applicable Department regulations provide, we will anticipate your determination within ten (10) calendar days. 28 C.F.R. § 16.5(d)(1). Please be advised that, given the urgency of this matter, EFF intends to seek immediate judicial relief if a response to this request for expedition is not issued in a timely manner.

Sincerely,

Marcia Hofmann
Staff Attorney

Enclosures



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                     *Washington, D.C. 20530*

AUG 2 7 2007

Ms. Marcia Hofmann
Electronic Frontier Foundation
Suite 650                             Re:    OLA/07-R0909
1875 Connecticut Avenue, NW                   OLA/07-R0910
Washington, DC 20009                          MLF:JNJ

Dear Ms. Hofmann:

This is to acknowledge receipt of your two letters dated August 16, 2007, which were received in this Office on August 17, 2007, in which you requested all records of communications between the Department of Justice and Congress and between Justice and telecommunications companies from December 2005 to the present concerning amendments to the Foreign Intelligence Surveillance Act. This response is made on behalf of the Office of Legislative Affairs.

I have determined that for purposes of these requests, it is appropriate to afford them expedited processing. At this time, your requests have been assigned to a FOIA Specialist in this Office and a records search has been initiated in the Office of Legislative Affairs.

We have not yet made a decision on your requests for fee waivers. We will do so after we determine whether fees will be assessed for these requests.

If you have any questions or wish to discuss the processing of your requests, you may contact Julie N. Johns, the analyst processing your requests, by telephone at the above number or you may write to her at the above address.

Sincerely,

Carmen L. Mallon
Chief of Staff

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
DIRECTOR OF THE INTELLIGENCE STAFF

Mr. John F. Hackett
Chief, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 600
Washington, DC 20009

Reference:  DF-2007-00079

Dear Ms. Hofmann:

   On 4 September 2007 the Office of the Director of National Intelligence received your facsimile dated 31 August 2007, wherein you requested under the Freedom of Information Act (FOIA) records concerning:

   "... ODNI's communications with telecommunications companies about updating FISA to provide them retroactive legal immunity for illegal activities."

We accept your request and have assigned it the reference number above.  Please use this number when corresponding with us so that we can identify it easily.  In addition, your request for expedited processing is granted and your request will be processed as soon as practicable.
   If you have any questions you may contact the FOIA Requester Service Center at 571-204-4774.

                                    Sincerely,

                                    John F. Hackett

                                    John F. Hackett
                          Director, Information Management Office

IMS/IRRG/PIPD/carey/.../6 September 2007

Distribution:
Orig - Adse
1 - PIPD/DF-2007-00079 ACC

FOIA\RFC 00079 DNI Hofmann ACC.doc

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
DIRECTOR OF THE INTELLIGENCE STAFF

Mr. John F. Hackett
Chief, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 600
Washington, DC 20009

Reference: DF-2007-00080

Dear Ms. Hofmann:

On 4 September 2007 the Office of the Director of National Intelligence received your facsimile dated 31 August 2007, wherein you requested under the Freedom of Information Act (FOIA) records concerning:

**". . .exchanges that Director McConnell or other ODNI officials have had with members of the Senate or House of Representatives concerning amendments to FISA . . ."**

We accept your request and have assigned it the reference number above. Please use this number when corresponding with us so that we can identify it easily. In addition, your request for expedited processing is granted and your request will be processed as soon as practicable.

If you have any questions you may contact the FOIA Requester Service Center at 571-204-4774.

Sincerely,

John F. Hackett
Director, Information Management Office

SEP-10-2007 11:24 From:                    7034822144         To:2027979066        P.5/5

IMS/IRRG/PIPD/carey/.../6 September 2007

Distribution:
    Orig - Adse
      1 - PIPD/DF-2007-00080 ACC

**FOIA\RFC 00080 DNI Hofmann ACC.doc**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER )
FOUNDATION )
)
Plaintiff, )
)
v. )   Civil Action No. 06-1988 (ESH)
)
DEPARTMENT OF HOMELAND )
SECURITY, )
)
Defendant. )

### STIPULATED DISMISSAL OF PLAINTIFF'S SECOND CAUSE OF ACTION

Plaintiff Electronic Frontier Foundation (EFF) and Defendant Department of Homeland

Security (DHS), by counsel, hereby stipulate and agree as follows:

1.      Defendant DHS has granted news media status to Plaintiff EFF based on the

representations contained in EFF's FOIA requests, which demonstrate that EFF is an "entity that

is organized and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6).

Defendant DHS will continue to regard Plaintiff EFF as a "representative of the news media"

absent a change in circumstances that indicates that EFF is no longer an "entity that is organized

and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6).

2.      Accordingly, the parties herewith agree to the dismissal of Plaintiff EFF's Second

Cause of Action, related to EFF's status as a "representative of the news media."

3.      The parties further agree that each will pay its own fees and costs for work on the

dismissed claim.

SO STIPULATED AND AGREED this 27th day of February, 2007.

_/s/ David L. Sobel_
DAVID L. SOBEL
D.C. Bar 360418

MARCIA HOFMANN
D.C. Bar 484136

ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Avenue, N.W.
Suite 650
Washington, D.C. 20009
(202) 797-9009

*Counsel for Plaintiff*

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
D.C. Bar 418925
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

_/s/ John R. Coleman_
JOHN R. COLEMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW; Room 6118
Washington, D.C. 20530
(202) 514-4505

*Counsel for Defendant*

-2-



**United States Department of State**

*Washington, D.C. 20520*

May 1, 2007
Case Number: 200701765

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W., Suite 650
Washington, DC 20009

Dear Ms. Hofmann:

This is in response to your Freedom of Information Act (FOIA) request, dated March 19, 2007 for copies of documents concerning copyright matters between the U.S. and Canada.

We will begin the processing of your request based upon the information provided in your communication. We will notify you as soon as responsive material has been retrieved and reviewed.

We wish to advise you that the cut-off date for retrieving records is either the date you have given the Department by specifying a particular time frame or the date the search is initiated.

<u>Fees:</u> The Freedom of Information Act requires agencies to assess fees to recover the direct costs of processing requests, unless a fee waiver has been granted.

By making a FOIA request, you have agreed to pay all applicable fees up to $25.00 unless a fee waiver has been granted. You may

---

Office of Information Programs and Services
U.S. Department of State · SA-2
Washington, DC 20522-8100
Web site: foia.state.gov

Inquiries:
Phone: 1-202-261-8484
FAX: 1-202-261-8579
email: FOIAStatus@state.gov

-2-

specify a willingness to pay a greater or lesser amount. If the estimated fees exceed this limit, you will be notified.

Based upon the information that you have provided, we have placed you in the "news media" requester category. This category requires us to assess:

- duplication costs after first 100 pages.(see 22 CFR 171, enclosed)

Therefore, without an agreement to pay fees please be advised that your request will be processed without cost up to the required duplication of the first 100 pages.

Please let us know if you are willing to pay the fees that will incurred in the processing of your request. You may set a limit of the maximum amount that you wish to pay.

Based upon the information provided in your letter, your request for a fee waiver has been denied. If you wish to appeal this decision, you may write to the Chief, Requester Liaison Division, at the address given on the bottom of this page. Your appeal should address the points listed in the enclosed sheet entitled "Requests for Fee Waivers." Your appeal must be sent to us within 30 days from the date that you receive this letter.

While we will make every effort to meet the time limits cited in the Freedom of Information Act (5 USC § 552), unusual circumstances

Office of Information Programs and Services
U.S. Department of State SA-2
Washington, DC 20522-8100
    Web site: foia.state.gov

Inquiries:
Phone: 1-202-261-8484
FAX: 1-202-261-8579
email: FOIAStatus@state.gov

-3-

may arise for extending the time limit (see enclosure). We appreciate your patience in this matter.

If you have any questions, please do not hesitate to contact us. We can provide faster service if you include the case number of your request in your communications with us.

We are pleased to be of service to you.

Sincerely,

Katrina M. Wood
Requester Communications Branch

Enclosure: As stated.

Office of Information Programs and Services
U.S. Department of State SA-2
Washington, DC 20522-8100
Web site: foia.state.gov

Inquiries: 202-261-8484
FAX: 1-202-261-8579
email: FOIAStatus@state.gov

**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

January 23, 2007

**BY FACSIMILE — (301) 688-4762**

National Security Agency
ATTN: FOIA Office (DC34)
9800 Savage Road STE 6248
Ft. George G. Meade, MD 20755-6248

       RE:    <u>Freedom of Information Act Request and</u>
                <u>Request for Expedited Processing</u>

Dear Sir or Madam:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the National Security Agency on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On January 9, 2007, the Washington Post reported:

> When Microsoft introduces its long-awaited Windows Vista operating system this month, it will have an unlikely partner to thank for making its flagship product safe and secure for millions of computer users across the world: the National Security Agency.

> For the first time, the giant software maker is acknowledging the help of the secretive agency, better known for eavesdropping on foreign officials and, more recently, U.S. citizens as part of the Bush administration's effort to combat terrorism. The agency said it has helped in the development of the security of Microsoft's new operating system -- the brains of a computer — to protect it from worms, Trojan horses and other insidious computer attackers.

Alec Klein and Ellen Nakashima, "For Windows Vista Security, Microsoft Called in Pros," *Washington Post*, Jan. 9, 2007, at D01 (attached hereto).

We are seeking all agency records (including, but not limited to, electronic records) related to the NSA's review of and input on the configuration of the Microsoft Windows Vista operating system ("Vista").

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information that "is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 32 CFR § 286.4(d)(3)(ii). According to DOD regulations, information is "urgently needed" when it "has a particular value that will be lost if not disseminated quickly. Ordinarily this means a breaking news story of general public interest." 32 CFR § 286.4(d)(3)(ii)(A). The information we request easily satisfies this standard.

The government activity at issue here — the NSA's involvement in the configuration of Microsoft's latest operating system — raises serious questions about the Department of Defense's interest in Vista's development. Indeed, the NSA's involvement in the system's configuration has already attracted substantial media interest since the publication of the *Washington Post* story. Specifically, a Google News search for "Vista and 'National Security Agency'" returned 67 results from news outlets throughout the world since January 9, 2007 (see first page of Google News search results attached hereto).

Furthermore, the *Washington Post* reported that Microsoft plans to make Vista available to consumers on January 30, 2007, and the system will likely be used by more than 600 million computer users by 2010. Thus, the information we request is unquestionably the subject of a breaking news story of general public interest particularly in the days leading to the product launch.

The purpose of this request is to obtain information directly relevant to the NSA's involvement in Vista's development, which has attracted considerable interest from the press and public in the past several days. The information we request is the subject of a breaking news story of general public interest, and therefore clearly meets the standard for expedited processing set forth in DOD regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information."

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a "representative of the news media" pursuant to the FOIA and 32 C.F.R. § 286.28(e)(7). In requesting this classification, we note that the Department of Homeland Security has recognized that EFF qualifies as a "news media" requester, based upon the publication activities set forth below (see DHS letter, attached hereto). We further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).



NATIONAL SECURITY AGENCY
CENTRAL SECURITY SERVICE
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FOIA Case:  52276
6 February 2007

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, NW
Suite 650
Washington, DC  20009

Dear Ms. Hofmann:

This is an initial response to your Freedom of Information Act (FOIA)
request submitted via facsimile on 23 January 2007, which was received by
this office on 24 January 2007, for all agency records (including, but not
limited to, electronic records) related to the NSA's review of and input on the
configuration of the Microsoft Windows Vista operating system ("Vista").  Your
request has been assigned Case Number 52276.

As we began to process your request, we realized that the first page of the
actual request was missing from your 18-page facsimile package.  On
1 February 2007, a member of my staff contacted you to advise you of this fact.
As a result, you submitted another facsimile of your original five-page request,
which we received and have begun to process.  There is certain information
relating to this processing about which the FOIA and applicable Department of
Defense (DoD) and NSA/CSS regulations require we inform you.

For purposes of this request and based on the information you provided
in your letter, you are considered a representative of the media.  Unless you
qualify for a fee waiver or reduction, you must pay for duplication in excess of
the first 100 pages.  Your request for a fee waiver has been granted.  In
addition, please be advised your request for expedited treatment has been
accepted.  We are currently in the process of searching for responsive
documents and will notify you of the status of your request as soon as that
search has been completed.

Correspondence related to your request should include the case number
assigned to your request, which is included in the first paragraph of this letter.
Your letter should be addressed to National Security Agency, FOIA Office

FOIA Case: 52276

(DC34), 9800 Savage Road STE 6248, Ft. George G. Meade, MD 20755-6248
or may be sent by facsimile to 443-479-3612. If sent by fax, it should be
marked for the attention of the FOIA office. The telephone number of the FOIA
office is 301-688-6527.

Sincerely,

*Marianne Stupar*
*for*

PAMELA N. PHILLIPS
Chief
FOIA/PA Office

# EXHIBIT B

 

**U.S. Department of Justice**

National Security Division

_Washington, D.C. 20530_

DEC 27 2007

Marcia Hofmann
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110

Re: FOIA/PA # 08-060

Dear Ms. Hofmann:

This is to acknowledge receipt of your letter dated December 21, 2007, requesting access to ""all records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications companies concerning amendments to FISA," et al. Your Freedom of Information Act request was received by this office on December 27, 2007.

Our policy is to process FOIA requests on a first-in, first-out basis. However, you requested expedited processing of your FOIA request and you will be notified once a determination is made. If you have any questions concerning your request, feel free to contact me on (202) 353-3092. Thank you in advance for your continuing patience.

Sincerely,

_Theresa Crosland_

Theresa Crosland
FOIA Public Liaison

**EXHIBIT B**

# EXHIBIT C

 

U.S. Department of Justice

National Security Division

_Washington, D.C. 20530_

JAN 29 2008

Marcia Hofmann
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110

Re: FOIA/PA # 08-060

Dear Ms. Hofmann:

　　This is in further reference to your Freedom of Information Act request for access to "all records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications companies concerning amendments to FISA," et al. You also requested expedited processing of your request, and it has been granted. We have initiated a search for responsive records within all components of the National Security Division, and will notify you once our search is completed. If you have any questions concerning your request, feel free to contact me on (202) 353-3092. Thank you in advance for your continuing patience.

Sincerely,

Theresa Crosland
FOIA Public Liaison

**EXHIBIT C**

# EXHIBIT 2

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

ELECTRONIC FRONTIER FOUNDATION, )
)
)
Plaintiff, )
)
v. )          Civil Action No. C 08-1023 JSW
)
OFFICE OF THE DIRECTOR OF NATIONAL )
INTELLIGENCE and UNITED STATES )
DEPARTMENT OF JUSTICE, )
)
)
Defendants. )
_____ )

### DECLARATION OF PAUL P. COLBORN

I, Paul P. Colborn, declare the following:

1. I am a Special Counsel in the Office of Legal Counsel ("OLC" or the "Office"),
a component of the United States Department of Justice. I joined OLC in 1986 and have had
the responsibility since 1987 of supervising OLC's responses to requests under the Freedom
of Information Act ("FOIA"). In connection with that responsibility, I am supervising OLC's
response to the FOIA request submitted to OLC by the plaintiff in the above-captioned action.
This declaration is based on personal knowledge and information disclosed to me in my official
capacity.

2. On December 21, 2007, OLC received a FOIA request from plaintiff seeking
"all agency records from September 1, 2007 to the present concerning briefings, discussions,
or other exchanges that the Justice Department officials have had with 1) members of the Senate
or House of Representatives and 2) representatives or agents of telecommunications companies

concerning amendments to [the Foreign Intelligence Surveillance Act], including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government activities." (A copy of plaintiff's request is attached as Exhibit A.) Plaintiff also asked that OLC process the request on an expedited basis pursuant to 28 C.F.R. § 16.5(d)(1)(ii).

3. On January 8, 2008, the Office began searching for documents responsive to plaintiff's FOIA request both by conducting a keyword search of the central computer database that contains all formal OLC opinions since 1945 and by directly asking attorneys to identify any documents in their files that might be responsive to their request. One day later, on January 9, 2008, OLC issued a letter acknowledging plaintiff's request and formally granting expedited processing. (A copy of OLC's January 9 response is attached as Exhibit B.)

4. As soon as the decision was made to expedite plaintiff's request, it was given priority status and moved to the front of the OLC request queue. Plaintiff's request is one of two expedited requests currently in the queue, and it has priority over the other expedited request. As such, it is being processed ahead of one expedited and nineteen non-expedited FOIA requests currently pending.

5. Shortly thereafter, a paralegal in the Office initiated keyword searches of the WordPerfect, Microsoft Word, and Microsoft Outlook files of attorneys in the Office who were identified as most likely to have responsive documents. Conducting these keyword searches is a time-intensive process. To perform the searches, OLC must request that the Department's computer support department—the Justice Consolidated Office Network ("J-CON")—copy attorneys' electronic files either to a shared computer drive accessible to OLC personnel or to an individual computer used by an OLC paralegal. Once J-CON copies the relevant files, an

2

OLC paralegal runs keywords searches of the electronic documents using the "find" or "search" function that is part of WordPerfect, Word, and Outlook. Inevitably, the keyword searches identify more documents than are actually responsive to a FOIA request. To sort responsive and nonresponsive documents, paralegals must open and review each document that contains a search term. If after reviewing a document on their computer screen, the paralegal cannot say with certainty that the document is nonresponsive, the document (and any relevant attachments) is printed for further review by an OLC attorney.

6.    OLC is a fairly small office. Currently, the entire Office consists of a chief of staff, three administrative support personnel, four paralegals, and fewer than twenty-five attorneys (including the head of the Office and his deputies). No single person works exclusively on FOIA matters, and those attorneys and paralegals who process FOIA requests for the Office must balance other competing work assignments, including urgent requests for legal advice from other components of the Department and other Executive Branch agencies.

7.    Regrettably, before we could complete the processing of plaintiff's request, the Office had to shift all of its available FOIA resources to completing another, very expansive FOIA request that was already in litigation and subject to a processing deadline of the end of February. Processing this request consumed nearly all of the Office's available FOIA resources during February 2008. Three paralegals and one attorney spent nearly three weeks collecting, reviewing, and processing more than 15,000 pages of hard-copy and electronic documents that were identified as potentially responsive to that request. As a result, the Office was forced to set aside other FOIA work, including plaintiff's request.

8.    After we finished processing this other FOIA request on February 29, 2008, we immediately returned to plaintiff's request and devoted appropriate resources to process the

3

request as soon as practicable. During the first two weeks of March, three paralegals devoted the majority of their time to the matter; as a result, we have made significant progress toward completing processing of plaintiff's request. OLC attorneys have completed searches of their files for potentially responsive documents, and we have completed all keyword searches of the computer database containing the Office's official opinions and the WordPerfect, Microsoft Word, and Microsoft Outlook files of attorneys believed to have potentially responsive documents.

9.    To date, we have reviewed more than 5,000 documents (totaling more than 10,000 pages) that were identified (either through electronic keyword searches or by an OLC attorney) as potentially responsive. We have culled this initial group of documents to approximately 2,000 pages, and we are now in the process of reviewing the subgroup of documents more closely—to determine responsiveness, to eliminate duplicates, to assess which, if any, FOIA exemptions may apply, and to identify which documents, if any, should be referred to other agencies for consultations. We anticipate completing this review and issuing at least an interim response by no later than March 25, 2008. Based on a preliminary assessment of the documents, we believe that the interim response will likely address many materials responsive to plaintiff's request. We have, however, already identified a number of documents requiring consultations with other agencies; consequently, a final OLC response will take more time. Additionally, we are currently reviewing a small number of classified documents for potential responsiveness. The potential existence of responsive classified material could contribute significantly to the complexities attendant to processing plaintiff's request. Responsive documents that contain classified information must undergo an additional time-intensive review to ensure that all documents are appropriately classified in accordance with Executive Order 12958, as amended.

4

Allowing enough time for the agencies to review and provide us their views, as well as to

conduct any necessary review of any classified information, OLC anticipates that we could issue

a final response to plaintiff's request by April 22, 2008.

10. For the reason's set forth above, plaintiff's request that OLC complete processing its

FOIA request within ten days from today's date is not practicable, particularly given the need to

consult with other Department components and agencies. OLC is devoting appropriate resources

and effort to processing plaintiff's FOIA request as soon as practicable. As noted above, OLC

anticipates providing plaintiff with an interim response no later than March 25, 2008, and a final

response by April 22, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 18, 2008.

_____

Paul P. Colborn

5

# EXHIBIT A

 **Electronic Frontier Foundation**

**454 Shotwell Street**
**San Francisco, CA 94110**
**+1 415 436 9333 (tel)**
**+1 415 436 9993 (fax)**

## FAX COVER SHEET

**DATE:**          December 21, 2007

**TO:**            Bette Farris, OLC

**Fax Number:**    (202) 514-0563

**FROM:**          Marcia Hofmann, Electronic Frontier Foundation

**RE:**            Freedom of Information Act Request and Request for
                   Expedited Processing

**Pages sent:**    20 including cover page

**COMMENTS:**

NOTICE This fax is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure. If you are not the intended recipient or his or her agent, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and asked to please notify us immediately by telephone. Thank you.

PLEASE CALL IF THERE IS A PROBLEM

 **Electronic Frontier Foundation**

December 21, 2007

**VIA FACSIMILE** — (202) 514-0563

Bette Farris, Supervisory Paralegal
Office of Legal Counsel
Department of Justice
Room 5515
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

### RE:    Freedom of Information Act Request and Request for Expedited Processing

Dear Ms. Farris:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552, and is submitted to the Department of Justice Office of Legal Counsel on behalf of
the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA
Litigation for Accountable Government ("FLAG") Project, which works to obtain government
documents and make them widely available to the public.

On August 5, 2007, President Bush signed into law the Protect America Act, legislation which
amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power
to intercept communications without warrants, as well as shield telecommunications companies
from future liability for their role in such activity.

Since the passage of this law, the Administration has tried to convince Congress to amend FISA
to make it impossible for courts to impose liability on telecommunications companies for
participating in a massive and illegal warrantless spying operation conducted by the National
Security Agency. *See* Signing Statement, *President Bush Commends Congress on Passage of
Intelligence Legislation*, Aug. 6, 2007; James Risen, Bush Signs Law to Widen Reach for
Wiretapping, *NY Times*, Aug, 6, 2007; Mark Hosenball and Michael Isikoff, Case Dismissed?:
The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About,
*Newsweek*, updated Sept. 26, 2007, *available at* http://www.newsweek.com/id/41142; Eric
Lichtblau, James Risen and Scott Shane, Wider Spying Fuels Aid Plan for Telecom Industry, *NY
Times*, Dec. 16, 2007.

We are seeking all agency records from September 1, 2007 to the present concerning briefings,
discussions, or other exchanges that Justice Department officials have had with 1) members of
the Senate or House of Representatives and 2) representatives or agents of telecommunications
companies[1] concerning amendments to FISA, including any discussion of immunizing

---

[1] The phrase "representatives or agents of telecommunications companies" is intended to include
lobbyists and lawyers acting on behalf of such companies. According to Newsweek, these

454 Shotwell Street, San Francisco, CA 94110 USA
+1 415 436 9333 (v) +1 415 436 9993 (f) www.eff.org

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 2

telecommunications companies or holding them otherwise unaccountable for their role in
government surveillance activities. This request includes, but is not limited to, all e-mail,
appointment calendars, telephone message slips, or other records indicating that such briefings,
discussions, or other exchanges took place.

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information about which there
is "[a]n urgency to inform the public about an actual or alleged federal government activity," and
it is "made by a person primarily engaged in disseminating information." 28 C.F.R. §
16.5(d)(1)(ii). The information we request easily satisfies this standard.

As an initial matter, it is worth noting that OLA recently granted expedited processing for two
FOIA requests nearly identical to this one (see EFF request letters seeking expedited processing
and OLA letter granting expedited processing attached hereto).

The federal government activity at issue here — DOJ efforts to secure immunity for telecoms
engaged in illegal surveillance — raises serious questions about the DOJ's interests in revision of
the FISA. Moreover, the Protect America Act includes a sunset provision requiring Congress to
decide within weeks whether to reauthorize the legislation. This decisionmaking process has
involved, and will continue to involve, congressional debate about whether to expand the law
further, and if so, how much. Because Congress will imminently consider modifying FISA again,
there is an urgency to inform the public about the lobbying forces pushing for reform of the law.
The information we have requested will help the public and Congress fully participate in the
current and ongoing debate over whether the government's authority to conduct electronic
surveillance should be further expanded and facilitated by telecommunications companies.

The purpose of this request is to obtain information directly relevant to the DOJ's
communications with members of Congress and telecommunications carriers about updating
FISA to grant the companies retroactive immunity for illegal activities. There is an urgency to
inform the public about the information we seek. Therefore, this request clearly meets the
standard for expedited processing set forth in DOJ regulations.

---

individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black
and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and
U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing
Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom
Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law
firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under
President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff,
Case Dismissed?, *Newsweek*, updated Sept. 26, 2007.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 3

Further, as I explain below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information."

### Request for News Media Fee Status

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a "representative of the news media" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(6). In requesting this classification, we note that the Department of Homeland Security and Department of State have recognized that EFF qualifies as a "news media" requester based upon the publication activities set forth below (see DHS stipulation and State Department letter attached hereto). In addition, the National Security Agency has previously determined that EFF is not only a "news media requester," but also "primarily engaged in disseminating information" for purposes of expedited processing (see attached EFF FOIA request and NSA response, in which EFF requested expedited processing because it sought information "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity," and NSA granted the request). We further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[2] One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[3] To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received 46,682,194 hits in July 2007 — an average of 62,744 per hour. The web site reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet. DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in

---

[2] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/
pqShowGsReport.do?npoId=561625 (last visited Dec. 18, 2007).
[3] *Id.*

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 4

technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 510,633 hits in July 2007.[4]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 2,600 times from EFF's in July 2007.

Due to these extensive publication activities, EFF is a "representative of the news media" under the FOIA and agency regulations.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k). To determine whether a request meets this standard, Department of Justice components determine whether "[d]isclosure of the requested information is likely to contribute significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. §§ 16.11(k)(i), (ii). This request clearly satisfies these criteria.

First, the DOJ's relationship with telecommunications companies concerns "the operations or activities of the government." 28 C.F.R. § 16.11(k)(2)(i). Furthermore, the DOJ's push to amend

---

[4] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 5

FISA unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on how and why the DOJ is lobbying to immunize telecommunications companies from liability for their role in conducting illegal surveillance.

Third, the requested material will "contribute to public understanding" of the DOJ's efforts to modify FISA. 28 C.F.R. § 16.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of the reasons why and manner in which the DOJ is lobbying for legal reform, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of the DOJ's push to amend FISA to protect telecommunications companies. 28 C.F.R. § 16.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested information will help inform the public about the Justice Department's efforts to reform the law and the interests behind them, as well as contribute to the public debate about whether FISA should be further modified.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 28 C.F.R. § 16.11(k)(3). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Thank you for your consideration of this request. As applicable Department regulations provide, we will anticipate your determination within ten (10) calendar days. 28 C.F.R. § 16.5(d)(1). Please be advised that, given the urgency of this matter, EFF intends to seek immediate judicial relief if a response to this request for expedition is not issued in a timely manner.

Sincerely,

Marcia Hofmann
Staff Attorney

Enclosures



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

                                                        AUG 2 7 2007

Ms. Marcia Hofmann
Electronic Frontier Foundation
Suite 650                                        Re:    OLA/07-R0909
1875 Connecticut Avenue, NW                             OLA/07-R0910
Washington, DC 20009                                    MLF:JNJ

Dear Ms. Hofmann:

   This is to acknowledge receipt of your two letters dated August 16, 2007, which were
received in this Office on August 17, 2007, in which you requested all records of
communications between the Department of Justice and Congress and between Justice and
telecommunications companies from December 2005 to the present concerning amendments to
the Foreign Intelligence Surveillance Act. This response is made on behalf of the Office of
Legislative Affairs.

   I have determined that for purposes of these requests, it is appropriate to afford them
expedited processing. At this time, your requests have been assigned to a FOIA Specialist in this
Office and a records search has been initiated in the Office of Legislative Affairs.

   We have not yet made a decision on your requests for fee waivers. We will do so after
we determine whether fees will be assessed for these requests.

   If you have any questions or wish to discuss the processing of your requests, you may
contact Julie N. Johns, the analyst processing your requests, by telephone at the above number or
you may write to her at the above address.

                                        Sincerely,

                                        Carmen L. Mallon
                                        Chief of Staff

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
DIRECTOR OF THE INTELLIGENCE STAFF

Mr. John F. Hackett
Chief, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 600
Washington, DC 20009

Reference: DF-2007-00079

Dear Ms. Hofmann:

On 4 September 2007 the Office of the Director of National Intelligence received
your facsimile dated 31 August 2007, wherein you requested under the Freedom of
Information Act (FOIA) records concerning:

> "... ODNI's communications with telecommunications
> companies about updating FISA to provide them retroactive
> legal immunity for illegal activities."

We accept your request and have assigned it the reference number above. Please use this
number when corresponding with us so that we can identify it easily. In addition, your
request for expedited processing is granted and your request will be processed as soon as
practicable.

If you have any questions you may contact the FOIA Requester Service Center at
571-204-4774.

Sincerely,

John F. Hackett
Director, Information Management Office

SEP-10-2007 11:24 From:                    7034822144            To:2027979066          P.3/5

IMS/IRRG/PIPD/carey/.../6 September 2007

Distribution:
    Orig - Adse
        1 - PIPD/DF-2007-00079 ACC

FOIA\RFC 00079 DNI Hofmann ACC.doc

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
DIRECTOR OF THE INTELLIGENCE STAFF

Mr. John F. Hackett
Chief, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 600
Washington, DC 20009

Reference: DF-2007-00080

Dear Ms. Hofmann:

On 4 September 2007 the Office of the Director of National Intelligence received your facsimile dated 31 August 2007, wherein you requested under the Freedom of Information Act (FOIA) records concerning:

> ". . .exchanges that Director McConnell or other ODNI
> officials have had with members of the Senate or House of
> Representatives concerning amendments to FISA . . ."

We accept your request and have assigned it the reference number above. Please use this number when corresponding with us so that we can identify it easily. In addition, your request for expedited processing is granted and your request will be processed as soon as practicable.

If you have any questions you may contact the FOIA Requester Service Center at 571-204-4774.

Sincerely,

John F. Hackett
Director, Information Management Office

SEP-10-2007 11:24 From:                    7034822144            To:2027979066              P.5/5

IMS/IRRG/PIPD/carey/.../6 September 2007

Distribution:
    Orig - Adse
      1 - PIPD/DF-2007-00080 ACC

**FOIA\RFC 00080 DNI Hofmann ACC.doc**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1988 (ESH) |
| | ) | |
| DEPARTMENT OF HOMELAND SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### STIPULATED DISMISSAL OF PLAINTIFF'S SECOND CAUSE OF ACTION

Plaintiff Electronic Frontier Foundation (EFF) and Defendant Department of Homeland Security (DHS), by counsel, hereby stipulate and agree as follows:

1.    Defendant DHS has granted news media status to Plaintiff EFF based on the representations contained in EFF's FOIA requests, which demonstrate that EFF is an "entity that is organized and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6). Defendant DHS will continue to regard Plaintiff EFF as a "representative of the news media" absent a change in circumstances that indicates that EFF is no longer an "entity that is organized and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6).

2.    Accordingly, the parties herewith agree to the dismissal of Plaintiff EFF's Second Cause of Action, related to EFF's status as a "representative of the news media."

3.    The parties further agree that each will pay its own fees and costs for work on the dismissed claim.

SO STIPULATED AND AGREED this 27th day of February, 2007.

_/s/ David L. Sobel_
DAVID L. SOBEL
D.C. Bar 360418

MARCIA HOFMANN
D.C. Bar 484136

ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Avenue, N.W.
Suite 650
Washington, D.C. 20009
(202) 797-9009

_Counsel for Plaintiff_

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
D.C. Bar 418925
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

_/s/ John R. Coleman_
JOHN R. COLEMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Room 6118
Washington, D.C. 20530
(202) 514-4505

_Counsel for Defendant_



**United States Department of State**

*Washington, D.C. 20520*

May 1, 2007
Case Number: 200701765

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W., Suite 650
Washington, DC 20009

Dear Ms. Hofmann:

This is in response to your Freedom of Information Act (FOIA)
request, dated March 19, 2007 for copies of documents concerning
copyright matters between the U.S. and Canada.

We will begin the processing of your request based upon the
information provided in your communication. We will notify you
as soon as responsive material has been retrieved and reviewed.

We wish to advise you that the cut-off date for retrieving records is
either the date you have given the Department by specifying a
particular time frame or the date the search is initiated.

**Fees:** The Freedom of Information Act requires agencies to assess
fees to recover the direct costs of processing requests, unless a fee
waiver has been granted.

By making a FOIA request, you have agreed to pay all applicable
fees up to $25.00 unless a fee waiver has been granted. You may

Office of Information Programs and Services
U.S. Department of State SA-2
Washington, DC 20522-8100
Web site: foia.state.gov

Inquiries: 202- 261- 8484
FAX: 1- 202- 261- 8579
email: FOIAStatus@state.gov

-2-

specify a willingness to pay a greater or lesser amount. If the estimated fees exceed this limit, you will be notified.

Based upon the information that you have provided, we have placed you in the "news media" requester category. This category requires us to assess:

- duplication costs after first 100 pages.(see 22 CFR 171, enclosed)

Therefore, without an agreement to pay fees please be advised that your request will be processed without cost up to the required duplication of the first 100 pages.

Please let us know if you are willing to pay the fees that will incurred in the processing of your request. You may set a limit of the maximum amount that you wish to pay.

Based upon the information provided in your letter, your request for a fee waiver has been denied. If you wish to appeal this decision, you may write to the Chief, Requester Liaison Division, at the address given on the bottom of this page. Your appeal should address the points listed in the enclosed sheet entitled "Requests for Fee Waivers." Your appeal must be sent to us within 30 days from the date that you receive this letter.

While we will make every effort to meet the time limits cited in the Freedom of Information Act (5 USC § 552), unusual circumstances

Office of Information Programs and Services
U.S. Department of State
Washington, DC 20522-8100
Web site: foia.state.gov

Inquiries: 202-261-8484
FAX: 1-202-261-8579
email: FOIAStatus@state.gov

-3-

may arise for extending the time limit (see enclosure). We appreciate your patience in this matter.

If you have any questions, please do not hesitate to contact us. We can provide faster service if you include the case number of your request in your communications with us.

We are pleased to be of service to you.

Sincerely,

Katrina M. Wood
Requester Communications Branch

Enclosure: As stated.

Office of Information Programs and Services
U.S. Department of State SA-2
Washington, DC 20522-8100
Web site: foia.state.gov

Inquiries: 202- 261- 8484
Phone: 1- 202- 261- 8484
FAX: 1- 202- 261- 8579
email: FOIAStatus@state.gov

 **Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

January 23, 2007

**BY FACSIMILE — (301) 688-4762**

National Security Agency
ATTN: FOIA Office (DC34)
9800 Savage Road STE 6248
Ft. George G. Meade, MD 20755-6248

      RE:    Freedom of Information Act Request and
               Request for Expedited Processing

Dear Sir or Madam:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the National Security Agency on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On January 9, 2007, the Washington Post reported:

> When Microsoft introduces its long-awaited Windows Vista operating system this month, it will have an unlikely partner to thank for making its flagship product safe and secure for millions of computer users across the world: the National Security Agency.

> For the first time, the giant software maker is acknowledging the help of the secretive agency, better known for eavesdropping on foreign officials and, more recently, U.S. citizens as part of the Bush administration's effort to combat terrorism. The agency said it has helped in the development of the security of Microsoft's new operating system -- the brains of a computer -- to protect it from worms, Trojan horses and other insidious computer attackers.

Alec Klein and Ellen Nakashima, "For Windows Vista Security, Microsoft Called in Pros," *Washington Post*, Jan. 9, 2007, at D01 (attached hereto).

We are seeking all agency records (including, but not limited to, electronic records) related to the NSA's review of and input on the configuration of the Microsoft Windows Vista operating system ("Vista").

1875 Connecticut Ave., NW · Suite 650 · Washington, DC 20009
📞 202 797 9009     📠 202 797 9066     🌐 www.eff.org     ✉ information@eff.org

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information that "is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 32 CFR § 286.4(d)(3)(ii). According to DOD regulations, information is "urgently needed" when it "has a particular value that will be lost if not disseminated quickly. Ordinarily this means a breaking news story of general public interest." 32 CFR § 286.4(d)(3)(ii)(A). The information we request easily satisfies this standard.

The government activity at issue here — the NSA's involvement in the configuration of Microsoft's latest operating system — raises serious questions about the Department of Defense's interest in Vista's development. Indeed, the NSA's involvement in the system's configuration has already attracted substantial media interest since the publication of the *Washington Post* story. Specifically, a Google News search for "Vista and 'National Security Agency'" returned 67 results from news outlets throughout the world since January 9, 2007 (see first page of Google News search results attached hereto).

Furthermore, the *Washington Post* reported that Microsoft plans to make Vista available to consumers on January 30, 2007, and the system will likely be used by more than 600 million computer users by 2010. Thus, the information we request is unquestionably the subject of a breaking news story of general public interest particularly in the days leading to the product launch.

The purpose of this request is to obtain information directly relevant to the NSA's involvement in Vista's development, which has attracted considerable interest from the press and public in the past several days. The information we request is the subject of a breaking news story of general public interest, and therefore clearly meets the standard for expedited processing set forth in DOD regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information."

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a "representative of the news media" pursuant to the FOIA and 32 C.F.R. § 286.28(e)(7). In requesting this classification, we note that the Department of Homeland Security has recognized that EFF qualifies as a "news media" requester, based upon the publication activities set forth below (see DHS letter, attached hereto). We further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

2



**NATIONAL SECURITY AGENCY**
**CENTRAL SECURITY SERVICE**
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FOIA Case: 52276
6 February 2007

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, NW
Suite 650
Washington, DC 20009

Dear Ms. Hofmann:

This is an initial response to your Freedom of Information Act (FOIA) request submitted via facsimile on 23 January 2007, which was received by this office on 24 January 2007, for all agency records (including, but not limited to, electronic records) related to the NSA's review of and input on the configuration of the Microsoft Windows Vista operating system ("Vista"). Your request has been assigned Case Number 52276.

As we began to process your request, we realized that the first page of the actual request was missing from your 18-page facsimile package. On 1 February 2007, a member of my staff contacted you to advise you of this fact. As a result, you submitted another facsimile of your original five-page request, which we received and have begun to process. There is certain information relating to this processing about which the FOIA and applicable Department of Defense (DoD) and NSA/CSS regulations require we inform you.

For purposes of this request and based on the information you provided in your letter, you are considered a representative of the media. Unless you qualify for a fee waiver or reduction, you must pay for duplication in excess of the first 100 pages. Your request for a fee waiver has been granted. In addition, please be advised your request for expedited treatment has been accepted. We are currently in the process of searching for responsive documents and will notify you of the status of your request as soon as that search has been completed.

Correspondence related to your request should include the case number assigned to your request, which is included in the first paragraph of this letter. Your letter should be addressed to National Security Agency, FOIA Office

FOIA Case:  52276

(DC34), 9800 Savage Road STE 6248, Ft. George G. Meade, MD  20755-6248
or may be sent by facsimile to 443-479-3612.  If sent by fax, it should be
marked for the attention of the FOIA office.  The telephone number of the FOIA
office is 301-688-6527.

Sincerely,

*Marianne Stepan*

PAMELA N. PHILLIPS
Chief
FOIA/PA Office

# EXHIBIT B



**U.S. Department of Justice**

Office of Legal Counsel

*Washington, D.C. 20530*

January 9, 2008

Marcia Hofmann
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110

Dear Ms. Hofmann:

This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated December 21, 2007.

You have requested expedited processing of your request pursuant to the Department's standards permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." *See* 28 C.F.R. § 16.5(d)(1)(ii). Based on the information you have provided, I have determined that your request for expedited processing under these standards should be granted. Your request has been assigned to a FOIA Specialist and searches have been initiated.

In an effort to speed up our searches, you may wish to narrow the scope of your request to limit the number of potentially responsive records. If you have any questions or wish to discuss the processing of your request, you may contact Bette Farris at 202-514-2038.

Sincerely,

Bradley T. Smith
Attorney-Adviser

# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |  |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 08-1023 (JSW) |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE | ) ) ) ) | |
| and | ) ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendants. | ) ) ) | |

DECLARATION OF MELANIE ANN PUSTAY

I, Melanie Ann Pustay, declare the following to be true and correct:

1) I am the Director of the Office of Information and Privacy (OIP), United States Department of Justice. In this capacity, I am responsible for overseeing the actions of the Initial Request (IR) Staff. The IR Staff is responsible for searching for and reviewing records of the Senior Leadership Offices of the Department of Justice, including the Offices of the Attorney General, Legal Policy, and Legislative Affairs, in response to requests made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. IV 2004). The IR Staff determines whether records responsive to access requests exist and, if so, whether they can be released in

-1-

accordance with the FOIA. In processing such requests, the IR Staff consults with personnel in the senior leadership offices and, when appropriate, with other components within the Department of Justice, as well as with other Executive Branch agencies.

2) I make the statements herein on this basis of my personal knowledge, as well as on information that I acquired while performing my official duties.

<div align="center">OIP's Processing of Plaintiff's Requests</div>

3) By letters dated December 21, 2007, Marcia Hofmann, on behalf of plaintiff Electronic Frontier Foundation, submitted three FOIA requests to OIP for records from the Offices of the Attorney General, Legal Policy, and Legislative Affairs dated "from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications companies concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities" (footnote omitted). Plaintiff also requested expedited processing and a fee waiver. OIP received the request on December 27, 2007. (Copies of plaintiff's three initial request letters are attached hereto as Exhibit A.)

4) By letter dated December 28, 2007, OIP acknowledged receipt of plaintiff's FOIA requests and granted plaintiff's request for expedited processing. Plaintiff was advised that searches had been initiated in the Offices of the Attorney General, Legal Policy, and Legislative Affairs. OIP also advised plaintiff that we were deferring a decision on its fee waiver request until we determined whether any fees would be incurred in the processing of plaintiff's requests. (A copy of OIP's December 28, 2007 letter is attached hereto as Exhibit B.)

5) As soon as plaintiff's requests were granted expedited processing, each request was given priority at OIP and moved ahead of requests received at an earlier date in OIP's regular queue. Pursuant to Department of Justice regulation 28 C.F.R. § 16.5(d)(4) (2007) these requests are being processed as soon as practicable.

6) By memoranda dated December 28, 2007, records searches were initiated in the Offices of the Attorney General, Legal Policy, and Legislative Affairs. These Offices were advised that the requests had been granted expedited processing. The practice for these three Offices is to notify each individual staff member in that Office of the receipt of OIP's memoranda requesting that a search be conducted, and each staff member's files, both paper and electronic, are then searched as necessary for records responsive to the request. A search of this nature typically involves hand searches of large paper files, as well as a vast number of e-mail files. Furthermore, because the files at issue are current, they were physically located in the individual offices of senior Department officials. Most of these officials personally conducted the search for any responsive records that they might possess. While the officials in these Offices make every effort to respond to our search memoranda in a timely fashion, it is not always possible for senior Department officials to stop their pressing day-to-day duties in order to immediately perform a search for records responsive to a FOIA request. These officials and employees performed the necessary searches as soon as it was practicable to do so.

### Office of Legislative Affairs

7) By memorandum dated January 29, 2008, the Office of Legislative Affairs (OLA) informed OIP that it had identified both classified and unclassified records potentially responsive to plaintiff's request to OLA, including potentially responsive electronic mail (e-mail) messages of one

-3-

record custodian, that needed to be searched.

8) On February 1, 2008, after the FOIA Specialist assigned to plaintiff's requests left the Department, OIP reassigned plaintiff's requests to a Senior FOIA Specialist.

9) During the week of February 25, 2008, a FOIA Specialist contacted a staff member in OLA to arrange a time for OIP to retrieve the potentially responsive material OLA identified.

10) On March 7, 2008, a FOIA Specialist retrieved the unclassified potentially responsive records from OLA. On March 11, 2008, a FOIA Specialist retrieved the one classified potentially responsive record from OLA.

11) On March 11, 2008, the Senior FOIA Specialist assigned to plaintiff's request completed an initial review of the potentially responsive documents retrieved from OLA.

12) On March 11, 2008, a Senior Attorney at OIP contacted the Justice Management Division requesting a remote access point in the Justice Consolidated Office Network that allows OIP to search e-mail messages of certain record custodians in the Senior Leadership Offices. This was done in order to most efficiently search the e-mail records of the custodian in OLA who had indicated he had responsive e-mail.

13) On March 12 through 14, 2008, OIP conducted an e-mail search in the Enterprise Vault of the OLA custodian who indicated that there may be responsive e-mail records. Those e-mail messages that appeared responsive to plaintiff's request were printed for further processing and review by OIP's IR Staff.

14) On March 17, 2008, the Senior FOIA Specialist assigned to plaintiff's requests completed an initial review of the potentially responsive e-mail messages located in OLA.

### Office of Legal Policy

15) By memorandum dated February 27, 2008, the Office of Legal Policy (OLP) advised OIP that its search was complete. OLP forwarded to OIP records potentially responsive to plaintiff's request to OLP.

16) On February 29, 2008, a FOIA Specialist conducted an initial review of the potentially responsive documents forwarded to OIP by OLP.

### Office of the Attorney General

17) On February 28, 2008, an Attorney-Advisor at OIP contacted the Office of the Attorney General regarding the status of that Office's search.

18) On March 4, 2008, a staff member in the Office of the Attorney General contacted the Senior FOIA Specialist assigned to plaintiff's request. She advised him that at least one staff member in the Office of the Attorney General had identified records that were potentially responsive to plaintiff's request and that other staff members were still searching.

19) On March 4, 2008, the Senior FOIA Specialist assigned to plaintiff's request retrieved potentially responsive records from the Office of the Attorney General files that had been identified as of that date.

20) On March 11, 2008, OIP searched the electronic database of the Departmental Executive Secretariat, which uses a central database to control and track certain incoming and outgoing correspondence for the Office of the Attorney General and for certain records of OLA. Those documents that appeared responsive to plaintiff's request were retrieved for further processing and review by OIP's IR Staff.

21) On March 13, 2008, a senior official in the Office of the Attorney General advised me that the search in that Office was complete. On March 14, 2008, potentially responsive records from the Office of the Attorney General were forwarded to OIP for further review.

22) On March 17, 2008, the Senior FOIA Specialist assigned to plaintiff's request completed an initial review of the potentially responsive records forwarded by the Office of the Attorney General to OIP.

### Current Status Of Plaintiff's FOIA Requests

23) All searches for responsive records have now been completed. In the Office of Legislative Affairs, 147 documents, totaling 1552 pages, were located. Also, nine documents, totaling 233 pages, of responsive material were located in the Office of Legal Policy. Lastly, 355 documents, totaling 913 pages, of responsive material were located in the Office of the Attorney General. OIP is in the process of further review of these documents. During that process it is likely that adjustments to these page counts will be made as duplicate and non-responsive material is identified and culled from the other documents.

24) The records located all require further review, including consultations with multiple Department components and other Executive Branch agencies, before a response can be provided. Such consultations are required by Department of Justice regulation 28 C.F.R. § 16.4(c)(1), and are appropriate because other components within the Department and other Executive Branch agencies have an interest in the documents. In fact, none of the documents originate with OIP and so disclosure determinations necessarily must be made in consultation with the originating offices. Many of these consultations will need to be conducted in stages, as certain offices need to know the views of other offices in order to make their disclosure determinations. Until these steps are

completed, OIP cannot complete the processing of the documents and make a final response to plaintiff.

25) Additionally, OIP has located the existence of classified material, which adds significantly to the complexities attendant to processing a FOIA request. The responsive document that contains classified information must undergo an additional time-intensive review to ensure that the document is appropriately classified in accordance with Executive Order 12958, as amended. Such review also includes a page-by-page and line-by-line review of the document to determine which, if any, FOIA exemptions may apply. In light of the sensitive nature of classified information, potentially responsive material must also be reviewed by offices and agencies with equities in the document to ensure that no improper disclosures are made.

26) OIP will make every effort to process these requests as soon as practicable and is willing to provide the court with status reports every thirty days regarding its progress. I anticipate that OIP's first round of consultations will be sent to other Department components and other Executive Branch agencies that have an interest in the documents by March 28, 2008.

27) By April 14, 2008, OIP anticipates being able to provide plaintiff with an interim response concerning those documents which do not require further consultations.

28) I anticipate that OIP's second round of consultations will be sent to the remaining Department components and other Executive Branch agencies that have an interest in the documents by April 30, 2008.

29) By May 23, 2008, assuming all consultation responses have been returned, OIP anticipates being able to provide plaintiff with a final response addressing the remaining documents.

30) Plaintiff's request that OIP complete the processing of its three FOIA requests within ten days is simply not practicable. OIP is devoting appropriate resources and effort to processing

-7-

plaintiff's FOIA requests as soon as practicable. Plaintiff's request for release of records within ten

days is not practicable because OIP has identified records that require consultations with other

agencies, as well as a classified record that requires multiple layers of review. Imposing a ten-day

deadline would increase the chances of an inadvertent disclosure of classified national security

information, as well as information otherwise protected from release under FOIA. In addition,

although plaintiff's requests have been granted expedited treatment and are being processed

accordingly, due to the many consultations that must be conducted with other offices, and due to the

pressing concerns those other offices face on a daily basis, the proposed response time is

practicable.

I declare under penalty of perjury that the foregoing is true and correct.


MELANIE ANN PUSTAY


Executed this **18** day of March, 2008.

# EXHIBIT

# A

DEC 27 2007

# RECEIVED

**EFF** **Electronic Frontier Foundation**

**454 Shotwell Street**
**San Francisco, CA 94110**
**+1 415 436 9333 (tel)**
**+1 415 436 9993 (fax)**

## FAX COVER SHEET

**DATE:** December 21, 2007

**TO:** Carmen L. Mallon, OIP, DOJ

**Fax Number:** (202) 514-1009

**FROM:** Marcia Hofmann, Electronic Frontier Foundation

**RE:** **Freedom of Information Act Requests and Requests for Expedited Processing**

**Pages sent:** 30 including cover page

**COMMENTS:**

Dear Ms. Mallon,

Following please find three separate FOIA requests and requests for expedited processing, along with the supporting enclosures referenced by all three. If you have any questions or concerns, please call at (415) 436-9333 x. 116.

Thank you,

*Marcia*

NOTICE This fax is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure. If you are not the intended recipient or his or her agent, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and asked to please notify us immediately by telephone. Thank you.

PLEASE CALL IF THERE IS A PROBLEM





December 21, 2007

**VIA FACSIMILE** — (202) 514-1009

Carmen L. Mallon
Chief of Staff
Office of Information and Privacy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, DC 20530-0001

RE:   **Freedom of Information Act Request and Request for Expedited Processing**

Dear Ms. Mallon:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Justice Office of the Attorney General on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On August 5, 2007, President Bush signed into law the Protect America Act, legislation which amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power to intercept communications without warrants, as well as shield telecommunications companies from future liability for their role in such activity.

Since the passage of this law, the Administration has tried to convince Congress to amend FISA to make it impossible for courts to impose liability on telecommunications companies for participating in a massive and illegal warrantless spying operation conducted by the National Security Agency. *See* Signing Statement, *President Bush Commends Congress on Passage of Intelligence Legislation*, Aug. 6, 2007; James Risen, Bush Signs Law to Widen Reach for Wiretapping, *NY Times*, Aug, 6, 2007; Mark Hosenball and Michael Isikoff, Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About, *Newsweek*, updated Sept. 26, 2007, *available at* http://www.newsweek.com/id/41142; Eric Lichtblau, James Risen and Scott Shane, Wider Spying Fuels Aid Plan for Telecom Industry, *NY Times*, Dec. 16, 2007.

We are seeking all agency records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications

**454 Shotwell Street, San Francisco, CA 94110 USA**
**+1 415 436 9333 (v) +1 415 436 9993 (f) www.eff.org**

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 2

companies[1] concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities. This request includes, but is not limited to, all e-mail, appointment calendars, telephone message slips, or other records indicating that such briefings, discussions, or other exchanges took place.

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information about which there is "[a]n urgency to inform the public about an actual or alleged federal government activity," and it is "made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii). The information we request easily satisfies this standard.

As an initial matter, it is worth noting that the DOJ and Office of the Director of National Intelligence recently granted expedited processing for FOIA requests nearly identical to this one (see DOJ and ODNI letters granting expedited processing attached hereto).

The federal government activity at issue here — DOJ efforts to secure immunity for telecoms engaged in illegal surveillance — raises serious questions about the DOJ's interests in revision of the FISA. Moreover, the Protect America Act includes a sunset provision requiring Congress to decide within weeks whether to reauthorize the legislation. This decisionmaking process has involved, and will continue to involve, congressional debate about whether to expand the law further, and if so, how much. Because Congress will imminently consider modifying FISA again, there is an urgency to inform the public about the lobbying forces pushing for reform of the law. The information we have requested will help the public and Congress fully participate in the current and ongoing debate over whether the government's authority to conduct electronic surveillance should be further expanded and facilitated by telecommunications companies.

The purpose of this request is to obtain information directly relevant to the DOJ's communications with members of Congress and telecommunications carriers about updating FISA to grant the companies retroactive immunity for illegal activities. There is an urgency to inform the public about the information we seek. Therefore, this request clearly meets the

---

[1] The phrase "representatives or agents of telecommunications companies" is intended to include lobbyists and lawyers acting on behalf of such companies. According to Newsweek, these individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff, Case Dismissed?, *Newsweek*, updated Sept. 26, 2007.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 3

standard for expedited processing set forth in DOJ regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information."

## Request for News Media Fee Status

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a "representative of the news media" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(6). In requesting this classification, we note that the Department of Homeland Security and Department of State have recognized that EFF qualifies as a "news media" requester based upon the publication activities set forth below (see DHS stipulation and State Department letter attached hereto). In addition, the National Security Agency has previously determined that EFF is not only a "news media requester," but also "primarily engaged in disseminating information" for purposes of expedited processing (see attached EFF FOIA request and NSA response, in which EFF requested expedited processing because it sought information "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity," and NSA granted the request). We further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[2]  One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[3]  To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received 46,682,194 hits in July 2007 — an average of 62,744 per hour.  The web site reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990.  The EFFector currently has more than 77,000 subscribers.  A complete archive of past EFFectors is available at http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet. DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in

---

[2] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/
pqShowGsReport.do?npoId=561625 (last visited Dec. 18, 2007).
[3] *Id.*

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 4

technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 510,633 hits in July 2007.[4]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 2,600 times from EFF's in July 2007.

Due to these extensive publication activities, EFF is a "representative of the news media" under the FOIA and agency regulations.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k). To determine whether a request meets this standard, Department of Justice components determine whether "[d]isclosure of the requested information is likely to contribute significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. §§ 16.11(k)(i), (ii). This request clearly satisfies these criteria.

First, the DOJ's relationship with telecommunications companies concerns "the operations or activities of the government." 28 C.F.R. § 16.11(k)(2)(i). Furthermore, the DOJ's push to amend

---

[4] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 5

FISA unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of
government operations or activities." 28 C.F.R. § 16.11(k)(2)(ii) (internal quotation marks
omitted). EFF has requested information that will shed light on how and why the DOJ is
lobbying to immunize telecommunications companies from liability for their role in conducting
illegal surveillance.

Third, the requested material will "contribute to public understanding" of the DOJ's efforts to
modify FISA. 28 C.F.R. § 16.11(k)(2)(iii) (internal quotation marks omitted). This information
will contribute not only to EFF's understanding of the reasons why and manner in which the
DOJ is lobbying for legal reform, but to the understanding of a reasonably broad audience of
persons interested in the subject. EFF will make the information it obtains under the FOIA
available to the public and the media through its web site and newsletter, which highlight
developments concerning privacy and civil liberties issues, and/or other channels discussed more
fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and
understanding of the DOJ's push to amend FISA to protect telecommunications companies. 28
C.F.R. § 16.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested
information will help inform the public about the Justice Department's efforts to reform the law
and the interests behind them, as well as contribute to the public debate about whether FISA
should be further modified.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the
disclosure of the requested records. 28 C.F.R. § 16.11(k)(3). EFF is a 501(c)(3) nonprofit
organization, and will derive no commercial benefit from the information at issue here.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my
knowledge.

Thank you for your consideration of this request. As applicable Department regulations provide,
we will anticipate your determination within ten (10) calendar days. 28 C.F.R. § 16.5(d)(1).
Please be advised that, given the urgency of this matter, EFF intends to seek immediate judicial
relief if a response to this request for expedition is not issued in a timely manner.

Sincerely,

Marcia Hofmann
Staff Attorney

Enclosures

OLA/08-R0184
JNJ

 **Electronic Frontier Foundation**

December 21, 2007

**VIA FACSIMILE** — (202) 514-1009

Carmen L. Mallon
Chief of Staff
Office of Information and Privacy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, DC 20530-0001

    **RE:**    <u>Freedom of Information Act Request and Request for Expedited Processing</u>

Dear Ms. Mallon:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Justice Office of Legislative Affairs on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On August 5, 2007, President Bush signed into law the Protect America Act, legislation which amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power to intercept communications without warrants, as well as shield telecommunications companies from future liability for their role in such activity.

Since the passage of this law, the Administration has tried to convince Congress to amend FISA to make it impossible for courts to impose liability on telecommunications companies for participating in a massive and illegal warrantless spying operation conducted by the National Security Agency. *See Signing Statement, President Bush Commends Congress on Passage of Intelligence Legislation,* Aug. 6, 2007; James Risen, Bush Signs Law to Widen Reach for Wiretapping, *NY Times,* Aug, 6, 2007; Mark Hosenball and Michael Isikoff, Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About, *Newsweek,* updated Sept. 26, 2007, *available at* http://www.newsweek.com/id/41142; Eric Lichtblau, James Risen and Scott Shane, Wider Spying Fuels Aid Plan for Telecom Industry, *NY Times,* Dec. 16, 2007.

We are seeking all agency records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications

**454 Shotwell Street, San Francisco, CA  94110 USA**
**+1 415 436 9333 (v) +1 415 436 9993 (f) www.eff.org**

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 2

companies[1] concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities. This request includes, but is not limited to, all e-mail, appointment calendars, telephone message slips, or other records indicating that such briefings, discussions, or other exchanges took place.

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information about which there is "[a]n urgency to inform the public about an actual or alleged federal government activity," and it is "made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii). The information we request easily satisfies this standard.

As an initial matter, it is worth noting that OLA recently granted expedited processing for two FOIA requests nearly identical to this one (see EFF request letters seeking expedited processing and OLA letter granting expedited processing attached hereto).

The federal government activity at issue here — DOJ efforts to secure immunity for telecoms engaged in illegal surveillance — raises serious questions about the DOJ's interests in revision of the FISA. Moreover, the Protect America Act includes a sunset provision requiring Congress to decide within weeks whether to reauthorize the legislation. This decisionmaking process has involved, and will continue to involve, congressional debate about whether to expand the law further, and if so, how much. Because Congress will imminently consider modifying FISA again, there is an urgency to inform the public about the lobbying forces pushing for reform of the law. The information we have requested will help the public and Congress fully participate in the current and ongoing debate over whether the government's authority to conduct electronic surveillance should be further expanded and facilitated by telecommunications companies.

The purpose of this request is to obtain information directly relevant to the DOJ's communications with members of Congress and telecommunications carriers about updating FISA to grant the companies retroactive immunity for illegal activities. There is an urgency to inform the public about the information we seek. Therefore, this request clearly meets the

---

[1] The phrase "representatives or agents of telecommunications companies" is intended to include lobbyists and lawyers acting on behalf of such companies. According to Newsweek, these individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff, Case Dismissed?, *Newsweek*, updated Sept. 26, 2007.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 3

standard for expedited processing set forth in DOJ regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is
"primarily engaged in disseminating information."

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a
"representative of the news media" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(6). In
requesting this classification, we note that the Department of Homeland Security and Department
of State have recognized that EFF qualifies as a "news media" requester based upon the
publication activities set forth below (see DHS stipulation and State Department letter attached
hereto). In addition, the National Security Agency has previously determined that EFF is not
only a "news media requester," but also "primarily engaged in disseminating information" for
purposes of expedited processing (see attached EFF FOIA request and NSA response, in which
EFF requested expedited processing because it sought information "urgently needed by an
individual primarily engaged in disseminating information in order to inform the public
concerning actual or alleged Federal Government activity," and NSA granted the request). We
further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different
agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d
300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280,
1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil
liberties in the digital age."[2] One of EFF's primary objectives is "to educate the press,
policymakers and the general public about online civil liberties."[3] To accomplish this goal, EFF
routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received
46,682,194 hits in July 2007 — an average of 62,744 per hour. The web site reports the latest
developments and contains in-depth information about a variety of civil liberties and intellectual
property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector
currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at
http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet.
DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in

---

[2] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/
pqShowGsReport.do?npoId=561625 (last visited Dec. 18, 2007).
[3] *Id.*

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 4

technology. It also provides miniLinks, which direct readers to other news articles and
commentary on these issues. DeepLinks had 510,633 hits in July 2007.[4]

In addition to reporting hi-tech developments, EFF staff members have presented research and
in-depth analysis on technology issues in no fewer than eighteen white papers published since
2002. These papers, available at http://www.eff.org/wp/, provide information and commentary
on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties
issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The
Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still
sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself
Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge
1998), a "comprehensive guide to self-protection in the electronic frontier," which can be
purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of
Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details
on encryption security to the public. The book is available online at http://cryptome.org/
cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside
experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation,
and technology-related issues. A listing of *Line Noise* podcasts is available at
feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These
podcasts were downloaded more than 2,600 times from EFF's in July 2007.

Due to these extensive publication activities, EFF is a "representative of the news media" under
the FOIA and agency regulations.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is
in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k).
To determine whether a request meets this standard, Department of Justice components
determine whether "[d]isclosure of the requested information is likely to contribute significantly
to public understanding of the operations or activities of the government," and whether such
disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. §§ 16.11(k)(i),
(ii). This request clearly satisfies these criteria.

First, the DOJ's relationship with telecommunications companies concerns "the operations or
activities of the government." 28 C.F.R. § 16.11(k)(2)(i). Furthermore, the DOJ's push to amend

---

[4] These figures include hits from RSS feeds through which subscribers can easily track updates
to DeepLinks and miniLinks.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 5

FISA unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on how and why the DOJ is lobbying to immunize telecommunications companies from liability for their role in conducting illegal surveillance.

Third, the requested material will "contribute to public understanding" of the DOJ's efforts to modify FISA. 28 C.F.R. § 16.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of the reasons why and manner in which the DOJ is lobbying for legal reform, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of the DOJ's push to amend FISA to protect telecommunications companies. 28 C.F.R. § 16.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested information will help inform the public about the Justice Department's efforts to reform the law and the interests behind them, as well as contribute to the public debate about whether FISA should be further modified.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 28 C.F.R. § 16.11(k)(3). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Thank you for your consideration of this request. As applicable Department regulations provide, we will anticipate your determination within ten (10) calendar days. 28 C.F.R. § 16.5(d)(1). Please be advised that, given the urgency of this matter, EFF intends to seek immediate judicial relief if a response to this request for expedition is not issued in a timely manner.

Sincerely,

Marcia Hofmann
Staff Attorney

Enclosures



 **Electronic Frontier Foundation**

December 21, 2007

**VIA FACSIMILE — (202) 514-1009**

Carmen L. Mallon
Chief of Staff
Office of Information and Privacy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, DC 20530-0001

    **RE:**   <u>**Freedom of Information Act Request and Request for Expedited Processing**</u>

Dear Ms. Mallon:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Justice Office of Legal Policy on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On August 5, 2007, President Bush signed into law the Protect America Act, legislation which amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power to intercept communications without warrants, as well as shield telecommunications companies from future liability for their role in such activity.

Since the passage of this law, the Administration has tried to convince Congress to amend FISA to make it impossible for courts to impose liability on telecommunications companies for participating in a massive and illegal warrantless spying operation conducted by the National Security Agency. *See* Signing Statement, *President Bush Commends Congress on Passage of Intelligence Legislation*, Aug. 6, 2007; James Risen, Bush Signs Law to Widen Reach for Wiretapping, *NY Times*, Aug, 6, 2007; Mark Hosenball and Michael Isikoff, Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About, *Newsweek*, updated Sept. 26, 2007, *available at* http://www.newsweek.com/id/41142; Eric Lichtblau, James Risen and Scott Shane, Wider Spying Fuels Aid Plan for Telecom Industry, *NY Times*, Dec. 16, 2007.

We are seeking all agency records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications

**454 Shotwell Street, San Francisco, CA 94110 USA**
**+1 415 436 9333 (v) +1 415 436 9993 (f) www.eff.org**

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 2

companies[1] concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities. This request includes, but is not limited to, all e-mail, appointment calendars, telephone message slips, or other records indicating that such briefings, discussions, or other exchanges took place.

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information about which there is "[a]n urgency to inform the public about an actual or alleged federal government activity," and it is "made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii). The information we request easily satisfies this standard.

As an initial matter, it is worth noting that the DOJ and Office of the Director of National Intelligence recently granted expedited processing for FOIA requests nearly identical to this one (see DOJ and ODNI letters granting expedited processing attached hereto).

The federal government activity at issue here — DOJ efforts to secure immunity for telecoms engaged in illegal surveillance — raises serious questions about the DOJ's interests in revision of the FISA. Moreover, the Protect America Act includes a sunset provision requiring Congress to decide within weeks whether to reauthorize the legislation. This decisionmaking process has involved, and will continue to involve, congressional debate about whether to expand the law further, and if so, how much. Because Congress will imminently consider modifying FISA again, there is an urgency to inform the public about the lobbying forces pushing for reform of the law. The information we have requested will help the public and Congress fully participate in the current and ongoing debate over whether the government's authority to conduct electronic surveillance should be further expanded and facilitated by telecommunications companies.

The purpose of this request is to obtain information directly relevant to the DOJ's communications with members of Congress and telecommunications carriers about updating FISA to grant the companies retroactive immunity for illegal activities. There is an urgency to inform the public about the information we seek. Therefore, this request clearly meets the

---

[1] The phrase "representatives or agents of telecommunications companies" is intended to include lobbyists and lawyers acting on behalf of such companies. According to Newsweek, these individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff, *Case Dismissed?*, *Newsweek*, updated Sept. 26, 2007.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 3

standard for expedited processing set forth in DOJ regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is
"primarily engaged in disseminating information."

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a
"representative of the news media" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(6). In
requesting this classification, we note that the Department of Homeland Security and Department
of State have recognized that EFF qualifies as a "news media" requester based upon the
publication activities set forth below (see DHS stipulation and State Department letter attached
hereto). In addition, the National Security Agency has previously determined that EFF is not
only a "news media requester," but also "primarily engaged in disseminating information" for
purposes of expedited processing (see attached EFF FOIA request and NSA response, in which
EFF requested expedited processing because it sought information "urgently needed by an
individual primarily engaged in disseminating information in order to inform the public
concerning actual or alleged Federal Government activity," and NSA granted the request). We
further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different
agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d
300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280,
1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil
liberties in the digital age."[2] One of EFF's primary objectives is "to educate the press,
policymakers and the general public about online civil liberties."[3] To accomplish this goal, EFF
routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received
46,682,194 hits in July 2007 — an average of 62,744 per hour. The web site reports the latest
developments and contains in-depth information about a variety of civil liberties and intellectual
property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector
currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at
http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet.
DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in

---

[2] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/
pqShowGsReport.do?npoId=561625 (last visited Dec. 18, 2007).
[3] *Id.*

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 4

technology. It also provides miniLinks, which direct readers to other news articles and
commentary on these issues. DeepLinks had 510,633 hits in July 2007.[4]

In addition to reporting hi-tech developments, EFF staff members have presented research and
in-depth analysis on technology issues in no fewer than eighteen white papers published since
2002. These papers, available at http://www.eff.org/wp/, provide information and commentary
on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties
issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The
Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still
sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself
Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge
1998), a "comprehensive guide to self-protection in the electronic frontier," which can be
purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of
Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details
on encryption security to the public. The book is available online at http://cryptome.org/
cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside
experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation,
and technology-related issues. A listing of *Line Noise* podcasts is available at
feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These
podcasts were downloaded more than 2,600 times from EFF's in July 2007.

Due to these extensive publication activities, EFF is a "representative of the news media" under
the FOIA and agency regulations.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is
in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k).
To determine whether a request meets this standard, Department of Justice components
determine whether "[d]isclosure of the requested information is likely to contribute significantly
to public understanding of the operations or activities of the government," and whether such
disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. §§ 16.11(k)(i),
(ii). This request clearly satisfies these criteria.

First, the DOJ's relationship with telecommunications companies concerns "the operations or
activities of the government." 28 C.F.R. § 16.11(k)(2)(i). Furthermore, the DOJ's push to amend

---

[4] These figures include hits from RSS feeds through which subscribers can easily track updates
to DeepLinks and miniLinks.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 5

FISA unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on how and why the DOJ is lobbying to immunize telecommunications companies from liability for their role in conducting illegal surveillance.

Third, the requested material will "contribute to public understanding" of the DOJ's efforts to modify FISA. 28 C.F.R. § 16.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of the reasons why and manner in which the DOJ is lobbying for legal reform, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of the DOJ's push to amend FISA to protect telecommunications companies. 28 C.F.R. § 16.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested information will help inform the public about the Justice Department's efforts to reform the law and the interests behind them, as well as contribute to the public debate about whether FISA should be further modified.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 28 C.F.R. § 16.11(k)(3). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Thank you for your consideration of this request. As applicable Department regulations provide, we will anticipate your determination within ten (10) calendar days. 28 C.F.R. § 16.5(d)(1). Please be advised that, given the urgency of this matter, EFF intends to seek immediate judicial relief if a response to this request for expedition is not issued in a timely manner.

Sincerely,

Marcia Hofmann
Staff Attorney

Enclosures



**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

AUG 27 2007

Ms. Marcia Hofmann
Electronic Frontier Foundation
Suite 650                            Re:     OLA/07-R0909
1875 Connecticut Avenue, NW                  OLA/07-R0910
Washington, DC 20009                         MLF:JNJ

Dear Ms. Hofmann:

    This is to acknowledge receipt of your two letters dated August 16, 2007, which were received in this Office on August 17, 2007, in which you requested all records of communications between the Department of Justice and Congress and between Justice and telecommunications companies from December 2005 to the present concerning amendments to the Foreign Intelligence Surveillance Act. This response is made on behalf of the Office of Legislative Affairs.

    I have determined that for purposes of these requests, it is appropriate to afford them expedited processing. At this time, your requests have been assigned to a FOIA Specialist in this Office and a records search has been initiated in the Office of Legislative Affairs.

    We have not yet made a decision on your requests for fee waivers. We will do so after we determine whether fees will be assessed for these requests.

    If you have any questions or wish to discuss the processing of your requests, you may contact Julie N. Johns, the analyst processing your requests, by telephone at the above number or you may write to her at the above address.

Sincerely,

Carmen L. Mallon
Chief of Staff

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
DIRECTOR OF THE INTELLIGENCE STAFF

Mr. John F. Hackett
Chief, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 600
Washington, DC 20009

Reference:  DF-2007-00079

Dear Ms. Hofmann:

On 4 September 2007 the Office of the Director of National Intelligence received your facsimile dated 31 August 2007, wherein you requested under the Freedom of Information Act (FOIA) records concerning:

> "... ODNI's communications with telecommunications companies about updating FISA to provide them retroactive legal immunity for illegal activities."

We accept your request and have assigned it the reference number above.  Please use this number when corresponding with us so that we can identify it easily.  In addition, your request for expedited processing is granted and your request will be processed as soon as practicable.

If you have any questions you may contact the FOIA Requester Service Center at 571-204-4774.

Sincerely,

*[signature]*

John F. Hackett
Director, Information Management Office

SEP-10-2007 11:24 From:                 7034822144          To:2027979066           P.3/5

IMS/IRRG/PIPD/carey/.../6 September 2007

Distribution:
    Orig - Adse
        1 - PIPD/DF-2007-00079 ACC

**FOIA\RFC 00079 DNI Hofmann ACC.doc**

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
DIRECTOR OF THE INTELLIGENCE STAFF


Mr. John F. Hackett
Chief, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 600
Washington, DC 20009

Reference: DF-2007-00080

Dear Ms. Hofmann:

On 4 September 2007 the Office of the Director of National Intelligence received
your facsimile dated 31 August 2007, wherein you requested under the Freedom of
Information Act (FOIA) records concerning:

> **". . .exchanges that Director McConnell or other ODNI
> officials have had with members of the Senate or House of
> Representatives concerning amendments to FISA . . ."**

We accept your request and have assigned it the reference number above. Please use this
number when corresponding with us so that we can identify it easily. In addition, your
request for expedited processing is granted and your request will be processed as soon as
practicable.

If you have any questions you may contact the FOIA Requester Service Center at
571-204-4774.

Sincerely,

John F. Hackett
Director, Information Management Office

SEP-10-2007 11:24 From:                7034822144          To:2027979066              P.5/5

IMS/IRRG/PIPD/carey/.../6 September 2007

Distribution:
    Orig - Adse
        1 - PIPD/DP-2007-00080 ACC

**FOIA\RFC 00080 DNI Hofmann ACC.doc**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC FRONTIER<br>FOUNDATION<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HOMELAND<br>SECURITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)    Civil Action No. 06-1988 (ESH)<br>)<br>)<br>)<br>)<br>)<br>) |

## STIPULATED DISMISSAL OF PLAINTIFF'S SECOND CAUSE OF ACTION

Plaintiff Electronic Frontier Foundation (EFF) and Defendant Department of Homeland

Security (DHS), by counsel, hereby stipulate and agree as follows:

1.    Defendant DHS has granted news media status to Plaintiff EFF based on the

representations contained in EFF's FOIA requests, which demonstrate that EFF is an "entity that

is organized and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6).

Defendant DHS will continue to regard Plaintiff EFF as a "representative of the news media"

absent a change in circumstances that indicates that EFF is no longer an "entity that is organized

and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6).

2.    Accordingly, the parties herewith agree to the dismissal of Plaintiff EFF's Second

Cause of Action, related to EFF's status as a "representative of the news media."

3.    The parties further agree that each will pay its own fees and costs for work on the

dismissed claim.

SO STIPULATED AND AGREED this 27th day of February, 2007.

/s/ David L. Sobel
DAVID L. SOBEL
D.C. Bar 360418

MARCIA HOFMANN
D.C. Bar 484136

ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Avenue, N.W.
Suite 650
Washington, D.C. 20009
(202) 797-9009

*Counsel for Plaintiff*

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
D.C. Bar 418925
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

/s/ John R. Coleman
JOHN R. COLEMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Room 6118
Washington, D.C. 20530
(202) 514-4505

*Counsel for Defendant*

-2-



**United States Department of State**

*Washington, D.C. 20520*

May 1, 2007
Case Number: 200701765

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W., Suite 650
Washington, DC 20009

Dear Ms. Hofmann:

This is in response to your Freedom of Information Act (FOIA) request, dated March 19, 2007 for copies of documents concerning copyright matters between the U.S. and Canada.

We will begin the processing of your request based upon the information provided in your communication. We will notify you as soon as responsive material has been retrieved and reviewed.

We wish to advise you that the cut-off date for retrieving records is either the date you have given the Department by specifying a particular time frame or the date the search is initiated.

**Fees:** The Freedom of Information Act requires agencies to assess fees to recover the direct costs of processing requests, unless a fee waiver has been granted.

By making a FOIA request, you have agreed to pay all applicable fees up to $25.00 unless a fee waiver has been granted. You may

Office of Information Programs and Services
U.S. Department of State SA-2 and Services
Washington, DC 20522-8100
Web site: foia.state.gov

Inquiries:
Phone: 1-202-261-8484
FAX: 1-202-261-8579
email: FOIAStatus@state.gov

-2-

specify a willingness to pay a greater or lesser amount. If the estimated fees exceed this limit, you will be notified.

Based upon the information that you have provided, we have placed you in the "news media" requester category. This category requires us to assess:

- duplication costs after first 100 pages.(see 22 CFR 171, enclosed)

Therefore, without an agreement to pay fees please be advised that your request will be processed without cost up to the required duplication of the first 100 pages.

Please let us know if you are willing to pay the fees that will incurred in the processing of your request. You may set a limit of the maximum amount that you wish to pay.

Based upon the information provided in your letter, your request for a fee waiver has been denied. If you wish to appeal this decision, you may write to the Chief, Requester Liaison Division, at the address given on the bottom of this page. Your appeal should address the points listed in the enclosed sheet entitled "Requests for Fee Waivers." Your appeal must be sent to us within 30 days from the date that you receive this letter.

While we will make every effort to meet the time limits cited in the Freedom of Information Act (5 USC § 552), unusual circumstances

Office of Information Programs and Services
U.S. Department of State SA-2
Washington, DC 20522-8100
    Web site: foia.state.gov

Inquiries:
Phone: 1-202-261-8484
FAX: 1-202-261-8579
email: FOIAStatus@state.gov

-3-

may arise for extending the time limit (see enclosure).  We appreciate your patience in this matter.

If you have any questions, please do not hesitate to contact us.  We can provide faster service if you include the case number of your request in your communications with us.

We are pleased to be of service to you.

Sincerely,

*Katrina M. Wood*

Katrina M. Wood
Requester Communications Branch

Enclosure: As stated.

Office of Information Programs and Services
U.S. Department of State SA-2
Washington, DC 20522-8100
Web site: foia.state.gov

Inquiries:
Phone: 1-202-261-8484
FAX: 1-202-261-8579
email: FOIAStatus@state.gov



**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

January 23, 2007

**BY FACSIMILE — (301) 688-4762**

National Security Agency
ATTN: FOIA Office (DC34)
9800 Savage Road STE 6248
Ft. George G. Meade, MD 20755-6248

RE:    Freedom of Information Act Request and
       Request for Expedited Processing

Dear Sir or Madam:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the National Security Agency on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On January 9, 2007, the Washington Post reported:

> When Microsoft introduces its long-awaited Windows Vista operating system this month, it will have an unlikely partner to thank for making its flagship product safe and secure for millions of computer users across the world: the National Security Agency.
>
> For the first time, the giant software maker is acknowledging the help of the secretive agency, better known for eavesdropping on foreign officials and, more recently, U.S. citizens as part of the Bush administration's effort to combat terrorism. The agency said it has helped in the development of the security of Microsoft's new operating system -- the brains of a computer -- to protect it from worms, Trojan horses and other insidious computer attackers.

Alec Klein and Ellen Nakashima, "For Windows Vista Security, Microsoft Called in Pros," *Washington Post*, Jan. 9, 2007, at D01 (attached hereto).

We are seeking all agency records (including, but not limited to, electronic records) related to the NSA's review of and input on the configuration of the Microsoft Windows Vista operating system ("Vista").

1875 Connecticut Ave., NW · Suite 650 · Washington, DC 20009
☎ 202 797 9009    ☏ 202 797 9066    🌐 www.eff.org    ✉ information@eff.org

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information that "is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 32 CFR § 286.4(d)(3)(ii). According to DOD regulations, information is "urgently needed" when it "has a particular value that will be lost if not disseminated quickly. Ordinarily this means a breaking news story of general public interest." 32 CFR § 286.4(d)(3)(ii)(A). The information we request easily satisfies this standard.

The government activity at issue here — the NSA's involvement in the configuration of Microsoft's latest operating system — raises serious questions about the Department of Defense's interest in Vista's development. Indeed, the NSA's involvement in the system's configuration has already attracted substantial media interest since the publication of the *Washington Post* story. Specifically, a Google News search for "Vista and 'National Security Agency'" returned 67 results from news outlets throughout the world since January 9, 2007 (see first page of Google News search results attached hereto).

Furthermore, the *Washington Post* reported that Microsoft plans to make Vista available to consumers on January 30, 2007, and the system will likely be used by more than 600 million computer users by 2010. Thus, the information we request is unquestionably the subject of a breaking news story of general public interest particularly in the days leading to the product launch.

The purpose of this request is to obtain information directly relevant to the NSA's involvement in Vista's development, which has attracted considerable interest from the press and public in the past several days. The information we request is the subject of a breaking news story of general public interest, and therefore clearly meets the standard for expedited processing set forth in DOD regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information."

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a "representative of the news media" pursuant to the FOIA and 32 C.F.R. § 286.28(e)(7). In requesting this classification, we note that the Department of Homeland Security has recognized that EFF qualifies as a "news media" requester, based upon the publication activities set forth below (see DHS letter, attached hereto). We further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

2



NATIONAL SECURITY AGENCY
CENTRAL SECURITY SERVICE
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FOIA Case: 52276
6 February 2007

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, NW
Suite 650
Washington, DC 20009

Dear Ms. Hofmann:

This is an initial response to your Freedom of Information Act (FOIA) request submitted via facsimile on 23 January 2007, which was received by this office on 24 January 2007, for all agency records (including, but not limited to, electronic records) related to the NSA's review of and input on the configuration of the Microsoft Windows Vista operating system ("Vista"). Your request has been assigned Case Number 52276.

As we began to process your request, we realized that the first page of the actual request was missing from your 18-page facsimile package. On 1 February 2007, a member of my staff contacted you to advise you of this fact. As a result, you submitted another facsimile of your original five-page request, which we received and have begun to process. There is certain information relating to this processing about which the FOIA and applicable Department of Defense (DoD) and NSA/CSS regulations require we inform you.

For purposes of this request and based on the information you provided in your letter, you are considered a representative of the media. Unless you qualify for a fee waiver or reduction, you must pay for duplication in excess of the first 100 pages. Your request for a fee waiver has been granted. In addition, please be advised your request for expedited treatment has been accepted. We are currently in the process of searching for responsive documents and will notify you of the status of your request as soon as that search has been completed.

Correspondence related to your request should include the case number assigned to your request, which is included in the first paragraph of this letter. Your letter should be addressed to National Security Agency, FOIA Office

FOIA Case: 52276

(DC34), 9800 Savage Road STE 6248, Ft. George G. Meade, MD 20755-6248 or may be sent by facsimile to 443-479-3612. If sent by fax, it should be marked for the attention of the FOIA office. The telephone number of the FOIA office is 301-688-6527.

Sincerely,

*Marianne Stigar*

for

PAMELA N. PHILLIPS
Chief
FOIA/PA Office

# EXHIBIT

# B



**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

                                               DEC 2 8 2007

Ms. Marcia Hofmann                    Re:    OAG/08-R0183
Electronic Frontier Foundation               OLA/08-R0184
454 Shotwell Street                          OLP/08-R0185
San Francisco, CA 94110                      MAP:NDD

Dear Ms. Hofmann:

    This is to acknowledge receipt of your three letters dated December 21, 2007, which were received in this Office on December 27, 2007, in which you requested all records concerning communications Department of Justice officials had with Congress and/or telecommunications companies from September 1, 2007, to the present regarding amendments to the Foreign Intelligence Surveillance Act. This response is made on behalf of the Offices of the Attorney General, Legislative Affairs and Legal Policy.

    With regard to your requests for expedited processing, I have determined that for purposes of these requests, it is appropriate to afford them expedited processing. At this time, your requests have been assigned to a FOIA Specialist in this Office and record searches have been initiated in the Offices of the Attorney General, Legislative Affairs and Legal Policy.

    We have not yet made a decision on your requests for fee waivers. We will do so after we determine whether fees will be assessed for these requests.

    If you have any questions or wish to discuss the processing of your requests, you may contact Julie N. Johns, the analyst processing your requests, by telephone at the above number or you may write to her at the above address.

                              Sincerely,

                              *Melanie Ann Pustay*

                              Melanie Ann Pustay
                              Director

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 08-1023 JSW |
| v. | ) ) ) | |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE and UNITED STATES DEPARTMENT OF JUSTICE | ) ) ) ) | |
| Defendant. | ) ) ) | |

## DECLARATION OF JOHN F. HACKETT

I, John F. Hackett, declare the following to be true and correct:

1.  I am the Director of the Information Management Office (IMO) for the Office of the Director of National Intelligence ("ODNI" or "Agency"). In this capacity I am the final decision-making authority for the IMO, which receives, processes, and responds to requests for ODNI records under the Freedom of Information Act (FOIA), 5 U.S.C. 552.

2.  I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties.

3.  By facsimile dated December 21, 2007, plaintiff Electronic Frontier Foundation submitted a FOIA request to ODNI for records concerning briefings, discussions, or other exchanges that Director McConnell or other ODNI officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications companies concerning amendments to FISA, including any discussion of immunizing such companies or holding them otherwise unaccountable for their role in government surveillance and activities. This request included all email, appointment calendars, telephone message slips, or other records indicating that such briefings, discussions, or other exchanges took place. ODNI

received the request on December 26, 2007. (A copy of plaintiff's initial request letter is attached hereto as Exhibit A.)[1]

4. In its initial FOIA request letter, plaintiff requested expedited processing based on assertions that there is "an urgency to inform the public about an actual or alleged Federal Government activity" and that the request is being "made by a person primarily engaged in disseminating information." By letter dated January 7, 2008, ODNI acknowledged receipt of plaintiff's FOIA request and granted expedited processing. (A copy of ODNI's January 7, 2008 letter is attached hereto as Exhibit B.)

<u>Processing and Current Status of Plaintiff's Request</u>

5. As soon as the decision was made to expedite plaintiff's request it was given priority status and moved to the front of the FOIA request queue. As such, this request is being processed ahead of the other 49 FOIA requests currently pending in ODNI.

6. Upon granting expedited processing, searches were initiated in the Offices of the General Counsel and Legislative Affairs, the Civil Liberties and Privacy Office, the Office of the Deputy Director of National Intelligence for Collection, the Office of the Director of the Intelligence Staff, the Office of the Deputy Director of National Intelligence for Policy, Plans, and Requirements, the Front Office for the Director of National Intelligence, as well as the ODNI Executive Secretariat, which serves as the official repository for Director and Principal Deputy Director records. Individuals in those Offices that were reasonably likely to have responsive materials were advised to search their electronic and paper files and forward any responsive records to the IMO.

---

[1] Plaintiff's request seeks information pertaining to, among other things, "any discussion of immunizing [telecommunication] companies or holding them otherwise unaccountable for their role in government surveillance activities." Nothing in this declaration should be construed to confirm or deny any role that telecommunications companies may or may not have in any government surveillance activities.

7. The individuals who were asked to search for responsive records work on some of the most significant mission-related matters relating to the national security of the United States and were required to stop this critical work in order to perform the necessary searches for this case. Despite this fact, as of today, all necessary searches for responsive material have been completed and the IMO is currently processing the records that were located. As records were located, the IMO conducted a continual analysis and review of the documents. This process included the identification of duplicative and non-responsive material, creation of "working" copies of the documents, document indexes as needed, and an assessment of necessary consultations and/or referrals with those entities maintaining equity in the documents, and the application of any FOIA exemptions to the material.

8. As a result of the IMO's comprehensive review of the documents located pursuant to its numerous records searches, approximately 185 pages of unclassified material and approximately 80 pages of classified material was determined to be responsive to plaintiff's request.

9. The ODNI is actively processing the responsive records that were located. Approximately 255 pages of both classified and unclassified records have been forwarded to other government agencies for consultation and response back to the ODNI regarding the applicability of any FOIA exemptions. These agencies have been advised of this litigation and have assured us that they will process our consultations as soon as practicable.

10. The existence of classified material contributes significantly to the complexities attendant to processing a FOIA request. Responsive documents that contain classified information must undergo an additional time-intensive review to ensure that all documents are appropriately classified in accordance with Executive Order 12958, as amended. Such review also includes a page-by-page and line-by-line review of the documents to determine which, if

3

any, FOIA exemptions may apply. In light of the sensitive nature of classified information, potentially responsive material must also be reviewed by offices and agencies with equities in the documents to ensure that no improper disclosures are made.

11. In addition, some of the responsive material is so highly classified that it is in a classification compartment that is extremely sensitive. Only a small number of ODNI officials are able to access this material and it must be handled under special security procedures. The ODNI is actively working through these issues but this also contributes to the complexity of processing this FOIA request.

12. The agencies to which consultations have been sent have advised ODNI that they anticipate completing their review in approximately three weeks. The ODNI anticipates being able to complete the processing of all the responsive records in this case, and provide a final response to plaintiffs, within three weeks of receiving the other agencies responses to our consultations. ODNI is also willing to provide the Court with a status report in 30 days to update the Court on our progress.

13. Plaintiff's request that ODNI complete processing its FOIA request within 10 days is simply not practicable because ODNI has identified records, including classified records, that require consultations with other agencies and multiple layers of review. ODNI is devoting appropriate resources and effort to processing plaintiff's FOIA request as soon as practicable. Imposing a 10-day deadline would increase the chances of an inadvertent disclosure of classified

national security information as well as information otherwise protected from release under FOIA.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 18th day of March, 2008.

John F. Hackett
Director, Information Management Office

# EXHIBIT A

 **Electronic Frontier Foundation**

December 21, 2007

**VIA FACSIMILE** — (703) 482-2144

Freedom of Information Act/Privacy Act Office
Office of the Director of National Intelligence
Washington, DC 20511

    **RE:**    <u>Freedom of Information Act Request and Request for Expedited Processing</u>

Dear Sir or Madam:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Office of the Director of National Intelligence ("ODNI") on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On August 5, 2007, President Bush signed into law the Protect America Act, legislation which amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power to intercept communications without warrants, as well as shield telecommunications companies from future liability for their role in such activity.

Since the passage of this law, the Administration has tried to convince Congress to amend FISA to make it impossible for courts to impose liability on telecommunications companies for participating in a massive and illegal warrantless spying operation conducted by the National Security Agency. *See* Signing Statement, *President Bush Commends Congress on Passage of Intelligence Legislation*, Aug. 6, 2007; James Risen, *Bush Signs Law to Widen Reach for Wiretapping*, *NY Times*, Aug, 6, 2007; Mark Hosenball and Michael Isikoff, *Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About*, *Newsweek*, updated Sept. 26, 2007, *available at* http://www.newsweek.com/id/41142; Eric Lichtblau, James Risen and Scott Shane, *Wider Spying Fuels Aid Plan for Telecom Industry*, *NY Times*, Dec. 16, 2007.

National Intelligence Director Mike McConnell has actively campaigned for telecom immunity. In one interview, he said:

> The issue that we did not address [in the Protect America Act], which has to be addressed is the liability protection for the private sector now is proscriptive, meaning going forward. We've got a retroactive problem. When I went through and briefed the various senators and congressmen, the issue was alright, look, we don't want to work that right now, it's too hard because we want to find out about some issues of the past. So what I recommended to the administration is, "Let's take that off the table for now and take it up when Congress reconvenes in September."

**454 Shotwell Street, San Francisco, CA  94110 USA**
**+1 415 436 9333 (v) +1 415 436 9993 (f) www.eff.org**

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 2

Chris Roberts, *Transcript: Debate on the Foreign Intelligence Surveillance Act*, El Paso Times,
Aug. 22, 2007.

We are seeking all agency records from September 1, 2007 to the present concerning briefings,
discussions, or other exchanges that Director McConnell or other ODNI officials have had with
1) members of the Senate or House of Representatives and 2) representatives or agents of
telecommunications companies[1] concerning amendments to FISA, including any discussion of
immunizing telecommunications companies or holding them otherwise unaccountable for their
role in government surveillance activities. This request includes, but is not limited to, all email,
appointment calendars, telephone message slips, or other records indicating that such briefings,
discussions, or other exchanges took place.

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information about which there
is "[a]n urgency to inform the public about an actual or alleged Federal Government activity,"
and it is "made by a person primarily engaged in disseminating information." 32 C.F.R. §
1700.12(c)(2). The information we request easily satisfies this standard.

As an initial matter, it is worth noting that ODNI and the Department of Justice recently granted
expedited processing for four FOIA requests nearly identical to this one (see ODNI and Justice
Department letters granting expedited processing attached hereto).

The federal government activity at issue here — ODNI efforts to secure immunity for telecoms
engaged in illegal surveillance — raises serious questions about ODNI's interests in revision of
the FISA. Moreover, the Protect America Act includes a sunset provision requiring Congress to
decide within weeks whether to reauthorize the legislation. This decisionmaking process has
involved, and will continue to involve, congressional debate about whether to expand the law
further, and if so, how much. Because Congress will imminently consider modifying FISA again,
there is an urgency to inform the public about the lobbying forces pushing for reform of the law.
The information we have requested will help the public and Congress fully participate in the

---

[1] The phrase "representatives or agents of telecommunications companies" is intended to include
lobbyists and lawyers acting on behalf of such companies. According to *Newsweek*, these
individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black
and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and
U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing
Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom
Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law
firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under
President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff,
*Case Dismissed?*, *Newsweek*, updated Sept. 26, 2007.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 3

current and ongoing debate over whether the government's authority to conduct electronic surveillance should be further expanded and facilitated by telecommunications companies.

The purpose of this request is to obtain information directly relevant to ODNI's communications with members of Congress and telecommunications carriers about updating FISA to grant companies retroactive immunity for illegal conduct. There is an urgency to inform the public about the information we seek. Therefore, this request clearly meets the standard for expedited processing set forth in ODNI regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information."

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a "representative of the news media" pursuant to the FOIA and 32 C.F.R. § 1700.2(h)(4). In requesting this classification, we note that the Department of Homeland Security and Department of State have recognized that EFF qualifies as a "news media" requester based upon the publication activities set forth below (see DHS stipulation and State Department letter attached hereto). In addition, the National Security Agency has previously determined that EFF is not only a "news media requester," but also "primarily engaged in disseminating information" for purposes of expedited processing (see attached EFF FOIA request and NSA response, in which EFF requested expedited processing because it sought information "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity," and NSA granted the request). We further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[2] One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[3] To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received 46,682,194 hits in July 2007 — an average of 62,744 per hour. The web site reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues.

---

[2] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/
pqShowGsReport.do?npoId=561625 (last visited Dec. 18, 2007).
[3] *Id.*

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 4

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector
currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at
http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet.
DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in
technology. It also provides miniLinks, which direct readers to other news articles and
commentary on these issues. DeepLinks had 510,633 hits in July 2007.[4]

In addition to reporting hi-tech developments, EFF staff members have presented research and
in-depth analysis on technology issues in no fewer than eighteen white papers published since
2002. These papers, available at http://www.eff.org/wp/, provide information and commentary
on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties
issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The
Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still
sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself
Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge
1998), a "comprehensive guide to self-protection in the electronic frontier," which can be
purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of
Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details
on encryption security to the public. The book is available online at http://cryptome.org/
cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside
experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation,
and technology-related issues. A listing of *Line Noise* podcasts is available at
feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These
podcasts were downloaded more than 2,600 times from EFF's in July 2007.

Due to these extensive publication activities, EFF is a "representative of the news media" under
the FOIA and agency regulations.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is
in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 32 C.F.R. §
1700.6(b)(2). To determine whether a request meets this standard, ODNI considers whether "[i]t

---

[4] These figures include hits from RSS feeds through which subscribers can easily track updates
to DeepLinks and miniLinks.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 5

is in the public interest to provide responsive records because the disclosure is likely to contribute significantly to the public understanding of the operations or activities of the United States Government and is not primarily in the commercial interest of the requester." *Id.* This request clearly satisfies these criteria.

First, ODNI's relationship with telecommunications companies and ODNI's push to amend FISA unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will contribute to an understanding of government operations or activities. EFF has requested information that will shed light on how and why ODNI is lobbying to immunize telecommunications companies from liability for their role in conducting illegal surveillance.

Third, the requested material will contribute to public understanding of ODNI's efforts to modify FISA. This information will contribute not only to EFF's understanding of the reasons why and manner in which ODNI is lobbying for legal reform, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will contribute significantly to the public's knowledge and understanding of ODNI's push to amend FISA to protect telecommunications companies. Disclosure of the requested information will help inform the public about the Justice Department's efforts to reform the law and the interests behind them, as well as contribute to the public debate about whether FISA should be further modified.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Thank you for your consideration of this request. As applicable ODNI regulations provide, we will anticipate your determination within ten (10) calendar days. 28 C.F.R. § 16.5(d)(1). Please be advised that, given the urgency of this matter, EFF intends to seek immediate judicial relief if a response to this request for expedition is not issued in a timely manner.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 6

Sincerely,

Marcia Hofmann
Staff Attorney

Enclosures

# EXHIBIT B

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
DIRECTOR OF THE INTELLIGENCE STAFF

Mr. John F. Hackett
Chief, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

IAN 0 7 2008

Ms. Marcia Hofmann
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110

Reference: DF-2008-00017

Dear Ms. Hofmann:

On 26 December 2007 the Office of the Director of National Intelligence received your facsimile dated 21 December 2007, wherein you requested under the Freedom of Information Act (FOIA):

"... records from September 1, 2007 to the present concerning exchanges that Director McConnell or other ODNI officials have had with 1) members of the Senate or House of Representatives and 2) representatives of telecommunications companies concerning amendments to FISA..."

We accept your request and have assigned it the reference number above. Please use this number when corresponding with us so that we can identify it easily. In addition, your request for expedited processing is granted and your request will be processed as soon as practicable.

If you have any questions you may contact the FOIA Requester Service Center at 571-204-4774.

Sincerely,

John F. Hackett
Director, Information Management Office

# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC FRONTIER, | : | |
| FOUNDATION, | : | |
| | : | Civil Action No. 06-1773 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DEPARTMENT OF JUSTICE | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

The plaintiff, Electronic Frontier Foundation ("EFF"), brings this action pursuant

to the Freedom of Information Act ("FOIA"), 5 U.S.C § 552 (2006), against the

Department of Justice ("DOJ") seeking injunctive and other appropriate relief for the

processing and release of agency records from the Federal Bureau of Investigation

("FBI"), which are contained within the FBI's Investigative Data Warehouse ("IDW").[1]

Complaint ("Compl.") at 1.  Currently before the Court is the Plaintiff's Motion for a

Preliminary Injunction ("Pl.'s Mot.") [D.E. #10] which requests that this Court issue an

Order requiring the defendant to expedite the processing of the plaintiff's FOIA request.

Pl.'s Mot. at 1.  More specifically, the plaintiff requests that the defendant "begin

disclosing non-exempt, responsive records within 20 days" from the date of the Court's

order and for the FBI "to continue disclosing such material on a monthly basis

thereafter.  Id.  The defendant filed its opposition to the motion on September 4, 2007,

---

[1] The IDW is "a database of 659 million records, including terrorist watch lists, intelligence cable and financial transactions, that is culled from more than 50 government agency sources in addition to the FBI."  Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction and Supplement to Motion for Open America Stay, ("Def.'s Mem.") Exhibit ("Ex.") 1 (Second Declaration of David M. Hardy) ("Hardy Decl.") ¶ 3.

arguing that the plaintiff's request should be denied because, <u>inter alia</u>, "the EFF has not adequately shown a likelihood of success on the merits or that a grant of preliminary relief is necessary to prevent irreparable harm. Def.'s Mem. at 2.  Because the plaintiff has not shown a likelihood of success on the merits or that it will be irreparably harmed if injunctive relief is not granted, the Court will deny its request for a preliminary injunction.

I.    Background

On August 25 and September 1, 2006, the plaintiff requested pursuant to the FOIA, agency records from the FBI contained in the IDW.  Compl. ¶¶ 11, 13.  Having received no response from the defendant, the plaintiff initiated this action on October 17, 2006.  Thereafter, the parties agreed on a briefing schedule for the filing of dispositive motions and responses thereto and submitted a status report and proposed schedule to the Court.  In that motion, the defendant indicated that it would be filing a motion to stay these proceedings pursuant to <u>Open America v. Watergate Special Prosecution</u>, 547 F.2d 605 (D.C. Cir. 1976).  <u>See</u> February 23, 2007 Status Report and Proposed Schedule.  In accordance with the parties' agreement, the Court issued a Scheduling Order on March 27, 2007.  Then, on April 2, 2007, the FBI its Motion for Open America Stay, requested a stay of the proceedings pursuant to 5 U.S.C. § 552(a)(6)(C) (2006) and the Circuit Court's decision in <u>Open America</u>, which the plaintiff opposes.[2]  Two days after the defendant filed its motion for the stay, the plaintiff

---

[2]Under Section 552(a)(6)(C)(I) of the FOIA, the government may obtain a stay of the proceedings "[i]f the Government can show [that] exceptional circumstances exist and that the agency is exercising due diligence in responding to the request."  In <u>Open America</u>, the District of Columbia Circuit addressed Section 552(a)(6)(C)(I) and found that an agency is entitled to "additional time" to respond to a FOIA request under the statute's "exceptional circumstances" provision when the agency

2

submitted a formal request pursuant to 28 C.F.R. § 16.5(d)(1)(iv) (2006),[3] to the DOJ to expedite the processing of its pending FOIA request.  Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction.  ("Pl.'s Mem.") at 2.  Initially, the DOJ, in support of its motion for the stay asserted that the plaintiff was not entitled to expedited processing with respect to the information contained in the IDW.  Id.  However, on August 3, 2007, the DOJ reversed its position with respect to the request for expedited processing of the plaintiff's FOIA requests and concluded that it satisfied the criteria for expedited processing because the IDW "is a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affects public confidence."[4] Id.  Based on the DOJ's agreement to provide expedited processing of the plaintiff's FOIA request, the plaintiff's motion for injunctive relief accuses the agency of failing to "comply with not only the FOIA's provisions for expedited processing, but also the statute's mandated time frame of 20 working days for responding to a standard, non-expedited request."  Id. at 3.  On the other hand, the defendant opposes the motion stating that "the recent decision by the [DOJ] to grant expedited treatment does not entitle EFF to an order setting a schedule for production

---

is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.

547 F.2d at 616 (quoting 5 U.S.C. § 552(a)(6)(C)).

[3] 28 C.F.R. § 16.5(d)(1)(iv) provides that a FOIA request "will be taken out of order and given expedited treatment" if the Office of Public Affairs determines that it involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect the public confidence."

[4] See supra note 3,.

3

of documents." Def.'s Mem. at 1. Moreover, the DOJ contends that "[a] preliminary injunction is not the appropriate mechanism for EFF to effectively cut off the Court's consideration of the defendant's motion for an Open America stay . . . or to otherwise sidestep the ordinary FOIA litigation process." Id. at 2.

II.     Standard of Review

        In determining whether to grant preliminary injunctive relief, "the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (citations omitted); see also Al-Fayed v. CIA, 254 F.3d 300, 303 (D.C. Cir. 2001) (citation omitted); Mova Pharm Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (citation omitted); Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977) (citation omitted). "[T]he strengths of the requesting party's arguments" with respect to each of these factors must be balanced and "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995). However, a party seeking injunctive relief must "demonstrate at least 'some injury' . . . since '[t]he basis for injunctive relief in the federal courts has always been irreparable harm.'" Id. (citations omitted).

III.    Analysis

        A.      Likelihood of Success on the Merits

The plaintiff correctly asserts that an "agency is generally required to 'determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, . . . .'" Pl.'s Mem. at 5 (quoting 5 U.S.C. § 552(a)(6)(A)(i)) (other citation omitted).  And, "[i]f an agency grants expedited treatment, it is obligated to process the request 'as soon as practicable.'" Id. (quoting 5 U.S.C. § 552(a)(6)(E)(iii); 28 C.F.R. § 16.5(d)(4)). "[A]n agency that violates the twenty-day deadline applicable to standard FOIA requests presumptively also fails to process an expedited request as soon as practicable." Elec. Privacy Info. Ctr. v. Dep't of Justice, 416 F. Supp. 2d 30, 39 (D.D.C. 2006). Accordingly, "a prima facie showing of agency delay exists when an agency fails to process an expedited FOIA request within the time limit applicable to standard FOIA requests." Id.  However, "[t]he presumption of agency delay raised by failing to respond to an expedited request within twenty days is certainly rebuttable if the agency presents credible evidence that disclosure within such time period is truly not practicable." Id.

Here, the agency has effectively rebutted the presumption of delay by providing a detailed explanation as to why the time period prescribed by the FOIA could not be met.  Specifically, the FBI explains that it has "initially identified 72,000 pages of records potentially responsive to EFF's FOIA requests . . . [and that it has] been reviewing those records to isolate the documents that are in fact responsive" to EFF's requests and eliminating those documents that are not responsive."  Def.'s Mem. at 8 (citing Ex. 1

Hardy Decl. ¶¶ 5-7 ).[5]  Of the 72,000 documents, the FBI "has reviewed approximately

21,000 pages of documents; of those, it has identified 750 pages as responsive and

eliminated the remainder as nonresponsive."  Id.  The FBI expects that "within the next

three months, it will have finished its review of the remaining 51,000 documents thereby

completing the initial step of identifying the documents that fall within the scope of

EFF's request."  Id. (citing Ex. 1, Hardy Decl. ¶ 14.).

The FBI further explains, however, that even after identifying the initial

documents that fall within the scope of EFF's request, a second intensive process

begins.  First, the "documents must be scanned into an electronic format and then

loaded into the FBI's paperless FOIPA Document Processing System."  Id. at 9 (citing

Ex. 1, Hardy Decl. ¶ 16.)  The documents must then "be reviewed by he

Record/Information Dissemination Section Classification Unit."  Id.  This review consists

of a "page by page and line by line determination of whether the documents contain

classified information[,] whether information should be declassified and properly marked

and stamped as classified information."  Id. (citing Ex. 1, Hardy Decl. ¶ 17).  This

process consists of the "redaction of any exempt material, notation of applicable

exemptions, and preparation of information sheets indicating the deletion of entire

pages."  Id.  Additionally, this review may involve consultation "with other government

agencies about the releasability of the other agencies' information contained in the FBI

records or refer[ring] non-FBI documents to the originating agencies for processing and

---

[5]David M. Hardy is the Section Chief of the Record/Information Dissemination Section, Records
Management Division, at the FBI.  Def.'s Mem., Ex. 1, Hardy Decl. ¶ 1.  In this capacity Mr. Hardy
supervises employees "whose collective mission is to effectively plan, develop, direct, and manage
responses to request for access to FBI records and information pursuant to the FOIA" and several
executive branch mandates.  Id. ¶ 2.

direct response to EFF." Id.  The final step in this process involves the review of the documents proposed for release "by the appropriate FBI Division and offices which have interests in the release or denial of the information contained in the documents." Id. (citing Ex. 1, Hardy Decl. ¶ 18).  The FBI estimated that this process would be completed as to 200 of the 750 documents already identified to date by September 28, 2007.  Id. (citing Ex. 1, Hardy Decl. ¶¶15 & n. 4).  "The portion of those documents that are not exempt from disclosure will then be released to EFF" immediately.  Def.'s Mem. at 9.  "At the same time, the FBI will process the remaining 550 pages of documents so far identified as responsive."  Id. (citing Ex. 1, Hardy Decl. ¶ 19).  The FBI represents that it "will also continue with the review and processing of the remaining 51,000 pages that have not yet been identified as either responsive or nonresponsive," id. at 9-10 (citing Ex. 1, Hardy Decl. ¶ 19), and "anticipates that the initial step of isolating responsive documents will be complete within the next three months, after which the FBI can better estimate the time it will take to review and process the documents that are identified as responsive."  Id. at 10 (citing Ex. 1, Hardy Decl. ¶ 14.).

In light of the defendant's explanation of its treatment of the plaintiff's FOIA requests, the supporting declaration of David M. Hardy, and the absence of any proof of bad faith or dilatory tactics on the part of the FBI, the Court concludes that the defendant has rebutted the presumption arising from delay that otherwise would apply. Indeed, "[t]he presumption of agency delay raised by failing to respond to an expedited request within twenty days is certainly rebuttable if the agency presents credible evidence that disclosure within such time period is truly not practicable."  Elec. Privacy Info. Ctr., 416 F. Supp. 2d at 39.  As indicated above, the defendant has demonstrated

7

that it is processing the plaintiff's FOIA request as soon as practicable.  In addition, the

defendant has indicated its willingness to continually advise the Court and the EFF at

120-day intervals of the progress it is making in responding to EFF's requests.

Moreover, the defendant has already placed the plaintiff's FOIA request ahead of other

requests, and has demonstrated that it is working diligently to provide the documents to

the plaintiff it is entitled to receive as soon as it can complete the review process

described above.  On this record, the Court concludes the plaintiff has failed to show

there is a substantial likelihood that it will prevail on the merits.

>    B.    Irreparable Harm

The District of Columbia Circuit "has set a high standard for irreparable injury."

Chaplaincy of Full Gospel Churches, 454 F.3d at 297 (citing Wisc. Gas Co. v. FERC,

758 F.2d 669, 674 (D.C. Cir.1985)).  First, the injury "must be both certain and great; it

must be actual and not theoretical."  Id.  "The moving party must show that '[t]he injury

complained of is of such imminence that there is a 'clear and present' need for

equitable relief to prevent irreparable harm.'"  Id. (citations, brackets, and internal

quotation marks omitted).  Thus, "[i]njunctive relief will not be granted against

something merely feared as liable to occur at some indefinite time . . . ."  Wisc. Gas

Co., 758 F.2d at 674 (quoting.Connecticut v. Massachusetts, 282 U.S. 660, 674

(1931)).

In the present case, the plaintiff claims that "[u]nder the statutory scheme

Congress established in the FOIA, it is clear that timing is critical and that any further

8

delay in the processing of [the] plaintiff's request will cause irreparable injury."[6]  Pl.'s

Mem. at 8.  Additionally, the plaintiff claims that "any further delay in the processing of

[the] plaintiff's FOIA request will irreparably harm [the] plaintiff's ability, and that of the

public, to obtain in a timely fashion information vital to the current and ongoing debate

surrounding the FBI's collection and use of large amounts of personal information."  Id.

     In response, the defendant argues that "EFF's claim that 'time is of the essence'

is nothing more than speculation and rhetoric."  Def.'s Mem. at 19.  The defendant

notes that "EFF has not shown that the documents it has requested contain crucial

information that will be valuable to EFF."  Id.  The defendant opines that "[p]resumably,

the very reason EFF has requested the documents is because EFF does not know what

the documents contain," and that "[e]ven assuming the documents contain valuable

information, portions of those documents could well be withheld from disclosure

pursuant to FOIA exemptions."  Id. (citing The Nation Magazine v. Dep't of State, 805 F.

Supp 68, 74 (D.D.C. 1992) (finding that the plaintiffs failed to show irreparable harm

because "[e]ven if [the] Court were to direct the speed up of the processing of their

requests, [the plaintiffs had] not shown at this time that they are entitled to release of

the documents they [sought]")).  Moreover, the defendant posits that "even if some of

---

[6]Pursuant to 5 U.S.C. § 552(a)(6)(A):

Each agency, upon any request for records made under paragraph (1), (2), or (3) of this
subsection, shall--
  (i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays)
after the receipt of any such request whether to comply with such request and shall
immediately notify the person making such request of such determination and the
reasons therefor, and of the right of such person to appeal to the head of the agency any
adverse determination . . . .

the requested documents turn out to be both valuable to EFF and subject to disclosure under [the] FOIA, EFF has not shown that delays in the processing of the FOIA requests will significantly diminish the value of the information." Id. at 20.

The Court agrees that EFF has failed to articulate a tangible injury that is either "certain and great" or irreparable. Chaplaincy of Full Gospel Churches, 454 F.3d at 297 (citing FERC, 758 F.2d at 674). As an initial matter, the Court agrees with the defendant's position that EFF misconstrues "the purpose and implications of [the] FOIA's expedited processing provisions." Def.'s Mem. at 2. The defendant explains that "[a] determination that a request warrants expedited processing means only that the request should be processed ahead of other requests that have not been granted expedited treatment." Id.; see 5 U.S.C. § 552(a)(6)(E)(i)(II); 16 C.F.R. § 16.5(d)(1)(iv). Thus, the defendant represents that "a finding that a request warrants expedited treatment does not mean that the request can or should be processed within a specified time frame or on a schedule dictated by the individual or organization who made the FOIA request." Id. Rather, the defendant contends that the "FOIA provides that expedited requests should be processed 'as soon as practicable' with due regard for the agency's processing capacity and current workload and the need to ensure that requests are processed properly." Def.'s Mem. at 2; see 5 U.S.C. § 552(a)(6)(E)(iii). Thus, according to the defendant, the plaintiff's claim of irreparable injury due to the defendant's purported failure to comply with "statutory guidelines," Pl.'s Mem. at 8, is simply inaccurate. The Court must side with the defendant.

A preliminary injunction is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion"

10

Chaplaincy of Full Gospel Churches, 454 F.3d at 297.  And, because the EFF is not aware of the precise information the documents contain, it cannot show, with certainty, that the requested documents contain crucial information that will be valuable to EFF. Moreover, the plaintiff has not shown that the time needed in the process employed by the FBI in responding to the plaintiff's FOIA requests, will significantly diminish the value of the information even if some of the requested documents turn out to be both valuable to EFF and subject to disclosure under the FOIA.  At this point, the Court would have to engage in rank speculation to conclude that the information possessed by the FBI is of value to the EFF and to assess the extent to which the plaintiff may be harmed due to the FBI's unavoidable delay in processing the plaintiff's requests.  Therefore, this Court must conclude that it cannot be said that  "[t]he injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm."  Id.  Accordingly, the plaintiff having failed to demonstrate not only that it will suffer irreparable injury but also that there is a substantial likelihood that the defendant will prevail on the merits, has not carried its burden of demonstrating that it is entitled to injunctive relief.  Accordingly, it is hereby

ORDERED that the plaintiff's request for preliminary injunction is denied.  It is further

ORDERED that the defendant will advise the Court and the EFF at 120-day intervals of the progress it is making in responding to EFF's FOIA requests.

SO ORDERED on this 27th day of September, 2007.

REGGIE B. WALTON
United States District Judge

11

# EXHIBIT 6

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** | |
| **Plaintiff,** | **Civil Action 06-00096 (HHK)** |
| **v.** | |
| **DEPARTMENT OF JUSTICE,** | |
| **Defendant.** | |

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION, et al.,** | |
| **Plaintiffs,** | **Civil Action 06-00214 (HHK)** |
| **v.** | |
| **DEPARTMENT OF JUSTICE,** | |
| **Defendant.** | |

### ORDER

It is this 24th day of March, 2006, hereby

**ORDERED** that the expedited motion, filed by the Department of Justice ("DOJ"),

seeking relief from the court's February 16, 2006 order [#13] is granted in part and denied in

part; and it is further

**ORDERED** that DOJ's Office of Intelligence and Policy Review shall have an additional

60 days to complete the processing of the plaintiff Electronic Privacy Information Center's

("EPIC's") December 16, 2005 FOIA request, as measured from March 8, 2006—the original

deadline imposed by the court's February 16, 2006 order; and it is further

**ORDERED** that DOJ's Office of Legal Counsel shall have an additional 120 days to complete the processing of EPIC's December 16, 2005 FOIA request, as measured from March 8, 2006—the original deadline imposed by the court's February 16, 2006 order; and it is further

**ORDERED** that no *Vaughn* index of any responsive classified documents or declaration supporting the withholding of either responsive classified or unclassified documents shall be required before the point at which a dispositive motion is filed; and it is further

**ORDERED** that the clerk of the court shall schedule a status hearing sixty days from the date of this order, or as soon thereafter as the business of the court permits.

Henry H. Kennedy, Jr.
United States District Judge

2