Marcia Hofmann (SBN 250087)
*marcia@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

David L. Sobel *(pro hac vice)*
*sobel@eff.org*
ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Ave. NW
Suite 650
Washington, DC  20009
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE<br><br>　and<br><br>DEPARTMENT OF JUSTICE,<br><br>　　　　　Defendants. | NO. 3:08-1023 JSW<br><br>**REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Judge:　　The Hon. Jeffrey S. White<br>Date:　　April 4, 2008<br>Time:　　9:00 a.m.<br>Courtroom:　Courtroom 2, 17th Floor |

**SUMMARY OF ARGUMENT**

Defendants' position that Plaintiff's motion for a preliminary injunction should be denied has no basis in the Freedom of Information Act or case law. First, Defendants incorrectly claim that motions for preliminary relief are generally improper in FOIA cases. In fact, federal courts — including this one — have long entertained and granted well-founded requests for preliminary relief in FOIA cases. *See, e.g., Elec. Frontier Foundation v. Office of the Director of National Intelligence,* No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585, at *11 (N.D. Cal. Nov. 27, 2007). The government also erroneously claims that the FOIA "does not require agencies to process expedited requests within a specific time limit." The statute plainly sets forth a generally applicable 20-day processing time limit in 5 U.S.C. § 552(a)(6)(A)(i), and requires that requests given expedited treatment be processed "as soon as practicable" in 5 U.S.C. § 552(a)(6)(E)(iii). The agency has simply failed to show that exceptional circumstances exist in this case to justify additional time. *See, e.g., Electronic Privacy Information Center v. Dep't of Justice*, 416 F. Supp. 2d 30, 38-39 (D.D.C. 2006). Furthermore, the government is incorrect that the ongoing congressional debate concerning federal surveillance law is an insufficient basis for establishing that irreparable harm would result from further delay. This Court and others have held repeatedly that pending legislation related to the subject of a FOIA request is sufficient to constitute irreparable injury. See, e.g., *Elec. Frontier Foundation v. Office of the Director of National Intelligence*, No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585, at **19-20; *Gerstein v. CIA*, No. C-06-4643 MMC, 2006 U.S. Dist. LEXIS 89847, at *20 (N.D. Cal. Nov. 29, 2006). Finally, the government will not be unduly burdened and the public interest will be served if EFF's motion is granted. The relief that EFF seeks here is nothing more than the FOIA clearly requires. Furthermore, the sooner the agencies process EFF's requests, the more quickly they can turn their attention to other pending requests.

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................. **v**

**INTRODUCTION** ..................................................................................................................... **1**

   I.   THE COURTS HAVE HELD TIME AND TIME AGAIN THAT PRELIMINARY INJUNCTIONS ARE APPROPRIATE IN FOIA CASES .................................................................................. 1

   II.   THE GOVERNMENT'S DELAY IN PROCESSING EFF'S "EXPEDITED" FOIA REQUESTS VIOLATES THE STATUTE ........................................................................................... 5

   III.   EFF WILL SUFFER IRREPARABLE INJURY IN THE ABSENCE OF PRELIMINARY RELIEF ........... 9

   IV.   A COURT ORDER SECURING EFF'S RIGHT TO EXPEDITION WILL NOT IMPOSE UNDUE BURDEN ON THE GOVERNMENT AND WILL SERVE THE PUBLIC INTEREST ..................... 13

**CONCLUSION** ........................................................................................................................ **13**

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501 (S.D.N.Y. 2004) ............................................. 2,3

*ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24 (D.D.C. 2004) ..................................................... 9, 12

*Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996) ....................................................................... 2, 3

*Al-Fayed v. CIA*, No. 00-2092 (CKK), 2000 U.S. Dist. LEXIS 21476 (D.D.C. Sept. 20, 2000) .. 3, 4

*Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001) ................................................................................ 4

*Assassination Archives & Research Ctr. v. CIA*, No. 88-2600, 988 U.S. Dist. LEXIS 18606 (D.D.C. Sept. 29, 1988).................................................................................................... 3, 4

*Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C. 1976) ............................................................... 1, 2, 3

*Elec. Frontier Foundation v. Dep't of Justice*, slip op., 06-CV-1773 (RBW) (D.D.C. Sept. 27, 2007) .......................................................................................................................................... 4

*Elec. Frontier Foundation v. Office of the Director of National Intelligence,* No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585 (N.D. Cal. Nov. 27, 2007) .........................................................passim

*Elec. Privacy Info. Ctr. v. Dep't of Justice ("EPIC")*, 416 F. Supp. 2d 30 (D.D.C. 2006).......passim

*Exner v. FBI*, 542 F.2d 1121 (9th Cir. 1976) ........................................................................... 5, 12

*Fiduccia v. Dep't of Justice*, 185 F.3d 1035 (9th Cir. 1999) ....................................................... 8, 12

*Gerstein v. CIA*, No. C-06-4643 MMC, 2006 U.S. Dist. LEXIS 89883 (N.D. Cal. Nov. 29, 2006) 2, 6, 9

*Gerstein v. CIA*, No. C-06-4643 MMC, 2006 U.S. Dist. LEXIS 89847 (N.D. Cal. Nov. 29, 2006) 9, 11, 12

*Gilmore v. National Sec. Agency*, No. C-92-3646 THE, 1993 U.S. Dist. LEXIS 7694 (N.D. Cal. May 3, 1993) ......................................................................................................................... 5, 8

*Judicial Watch v. Dep't of Homeland Security*, 514 F. Supp. 2d 7 (D.C.C. 2007) .......................... 4

*Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005) ......... 9, 12

*Natural Resources Defense Council v. Department of Energy*, 191 F. Supp. 2d 41 (D.D.C. 2002) 12

*Open America v. Watergate Special Prosecution Task Force*, 547 F.2d 605 (D.C. Cir. 1976)......... 5

*Payne Enterprises v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ................................................ 4

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974)................................................. 4

**Statutes**

5 U.S.C. § 552(a)(6)(A)(i) .................................................................................................... 5, 12

5 U.S.C. § 552(a)(6)(C)(i) ......................................................................................................... 5

5 U.S.C. § 552(a)(6)(E)(v)(II) ................................................................................................... 3

## INTRODUCTION

Plaintiff Electronic Frontier Foundation ("EFF") initiated this action on February 20, 2008, and moved for entry of a preliminary injunction on February 29, 2008, seeking an order requiring Defendants Office of the Director of National Intelligence ("ODNI") and Department of Justice ("DOJ") to disclose information relevant to a highly controversial, time-sensitive congressional debate within ten days.

Defendants filed an opposition to the motion on March 18, 2008. The agencies oppose the motion on the grounds that 1) a preliminary injunction is not an appropriate procedural vehicle for the relief EFF seeks; 2) the Freedom of Information Act ("FOIA") does not mandate any specific time frame for the processing of an "expedited" request; and 3) the public interest will not be served and the agencies will be unduly burdened unless they are permitted to process the documents on their own schedules, without the Court's intervention. EFF respectfully submits this reply to address those arguments.

### I. The Courts Have Held Time and Time Again That Preliminary Injunctions are Appropriate in FOIA Cases

Defendants incorrectly assert that motions for preliminary relief in FOIA cases are "generally inappropriate" and that "[a] number of courts have denied requests for preliminary injunctive relief for claims brought under the FOIA[.]" Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction ("Defs. Opp.") at 11. To the contrary, federal courts have long entertained and, when appropriate, granted requests for preliminary relief in FOIA cases. In fact, just four months ago this Court ruled that preliminary injunctions may properly be considered in FOIA cases, rejecting the argument the government makes again here. *Elec. Frontier Foundation v. Office of the Director of National Intelligence,* No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585 *11 (N.D. Cal. Nov. 27, 2007).

Other courts have consistently held likewise. In *Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C. 1976), the court issued a preliminary injunction requiring, within 21 days, the production of all

documents responsive to a FOIA request and the filing of an index detailing and justifying any withholdings. The injunction was predicated upon the court's finding of an "exceptional and urgent need" for disclosure of the requested information. *Id*. at 81-82. Similarly, in *Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996), the court granted plaintiff's motion for a preliminary injunction and ordered the agency to "comply with plaintiff's FOIA requests" and file a *Vaughn* index within 30 days. As in *Cleaver*, the injunction was based upon a finding of "exceptional and urgent need" for disclosure. *Id*. at 152.[1]

The most comprehensive consideration of preliminary relief in circumstances similar to those present here was in *Elec. Privacy Info. Ctr. v. Dep't of Justice ("EPIC")*, 416 F.Supp. 2d 30 (D.D.C. 2006), a case that Defendant cannot overcome simply by describing as "arguably erroneous[]," Defs. Opp. at 12 n.5, and "wrongly decided," *id*. at 14. Indeed, the government is attempting to relitigate the *EPIC* holding, parroting the same arguments that were considered – and rejected – by the district court in the District of Columbia less than two years ago, and by this Court recently in *Elec. Frontier Foundation v. Office of the Director of National Intelligence,* No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585.[2]

In *EPIC*, the Justice Department administratively granted a request for expedited FOIA processing upon a finding that, *inter alia*, the request satisfied the same statutory standard at issue in this case – the request concerned a matter about which there is an "urgency to inform the public about an actual or alleged Federal Government activity," and was made by "a person primarily

---

[1] Both *Cleaver* and *Aguilera* were decided before Congress enacted the 1996 FOIA amendments and created the statutory right to expedited processing at issue in this case. In *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004), decided subsequent to those amendments, the court noted that it had previously heard "argument on plaintiffs' preliminary injunction motion," rejected the government's argument that the processing issue was moot because the defendant agencies were responding "as soon as practicable," and "held that jurisdiction was proper."

[2] This Court relied upon the *EPIC* decision, and quoted it approvingly, in *Elec. Frontier Foundation v. Office of the Director of National Intelligence*, where Judge Illston granted EFF's motion for preliminary injunction and ordered that FOIA requests nearly identical to those at issue in this case be processed within 10 days. *See also Gerstein v. CIA*, No. C-06-4643 MMC, 2006 U.S. Dist. LEXIS 89883 (N.D. Cal. Nov. 29, 2006) ("*Gerstein I*") (citing *EPIC* favorably and granting a "motion to compel" the processing of a FOIA request within 30 days).

engaged in disseminating information." *EPIC,* 416 F. Supp. 2d at 34 (quoting 5 U.S.C. § 552(a)(6)(E)(v)(II)). As in this case, despite its decision to grant "expedited processing," the agency had "neither completed the processing of EPIC's FOIA requests nor informed EPIC of an anticipated date for the completion of the processing" and the requester moved for a preliminary injunction. *Id.* at 34-35. In an argument that Defendants repeat *verbatim* in this case, DOJ "question[ed] the propriety of EPIC seeking preliminary injunctive relief," and "accuse[d] EPIC of using the motion for a preliminary injunction, which according to the DOJ seeks 'a version of the ultimate relief' in the case, as a litigation tactic 'to artificially accelerate the proceedings in this case.'" *Id*. at 35; *see also* Defs. Opp. at 2 (EFF attempts "to accelerate artificially the merits proceedings in this case" and seeks "a version of ultimate relief").

Citing the same settled authority that EFF relies upon here, the court rejected the government's argument:

> DOJ's argument that EPIC acts improperly in seeking a preliminary injunction is unavailing. On numerous occasions, federal courts have entertained motions for a preliminary injunction in FOIA cases and, when appropriate, have granted such motions. *See ACLU v. Dep't of Defense*, 339 F.Supp.2d 501, 503 (S.D.N.Y. 2004) (granting preliminary injunction motion in FOIA case and requiring production within one month); *Aguilera v. FBI*, 941 F.Supp. 144, 152-53 (D.D.C. 1996) (granting preliminary injunction in FOIA case and requiring expedited processing to be completed within approximately one month); *Cleaver v. Kelley*, 427 F.Supp. 80, 81-82 (D.D.C. 1976) (granting preliminary injunction in FOIA case and requiring expedited processing to be completed within approximately twenty days); *see also Al-Fayed v. CIA*, 2000 U.S. Dist. LEXIS 21476, at *19-20 (D.D.C. Sept. 20, 2000) (denying preliminary injunction in FOIA case after conducting four-part analysis); *Assassination Archives & Research Ctr. v. CIA*, 1988 U.S. Dist. LEXIS 18606, at *1-3 (D.D.C. Sept. 29, 1988) (same).

*EPIC,* 416 F. Supp. 2d at 35 (footnote omitted).[3]

---

[3] In addition to claiming that *EPIC* was "incorrectly decided," Defendants note that "the preliminary injunction entered in that case was later modified upon reconsideration, following a submission by the government regarding its processing capacity." Defs. Opp. at 18. The modification of the injunction's dictates (*i.e.*, granting more time) in no way diminishes the fact that the court, in keeping with long-established precedent, found preliminary relief to be appropriate. Indeed, the government concedes that the modification was based upon an agency "submission . . . regarding its processing capacity" in conformance with the *EPIC* court's holding that the "presumption of agency delay raised by failing to respond to an expedited request within twenty days" can be rebutted if the agency meets its burden of presenting "credible evidence that disclosure within such time period is truly not practicable." *EPIC,* 416 F. Supp. 2d at 39 (footnote omitted). Here, as we discuss *infra*, Defendants have not even attempted to meet that burden.

Even in those cases where applications for preliminary injunctions seeking expedited processing of FOIA requests were *denied*, the courts have never suggested, as Defendants imply, that such relief is *improper*. Defendants cite several cases in which reviewing courts merely determined that the specific facts before them did not satisfy the standard for a preliminary injunction, and thus did not warrant a court order requiring expedited processing. Defs. Opp. at 11; *see, e.g., Assassination Archives and Research Ctr. v. CIA*, No. 88-2600, 1988 U.S. Dist. LEXIS 18606 (D.D.C., Sept. 29, 1988) (denying preliminary injunction motion after conducting four-part analysis); *Al-Fayed v. CIA*, No. 00-2092 (CKK), 2000 U.S. Dist. LEXIS 21476 (D.D.C. Sept. 20, 2000) (same); *Judicial Watch v. Dep't of Homeland Security*, 514 F. Supp. 2d 7 (D.C.C. 2007) (same).[4] Defendants also cite the recent decision in *Elec. Frontier Foundation v. Dep't of Justice*, slip op., 06-CV-1773 (RBW) (D.D.C. Sept. 27, 2007) (attached to Defs. Opp. as Ex. 5) in support of its suggestion that preliminary relief is somehow inappropriate in the context of expedited processing. Defs. Opp. at 11. In fact, the court followed *EPIC*, conducted a preliminary injunction analysis, and concluded that "the agency has effectively rebutted the presumption of delay by providing a detailed explanation as to why the time period prescribed by the FOIA could not be met," as required by *EPIC*. *See* slip op. at 5.

While the government suggests that the range of judicial remedies in FOIA cases is limited, there is in fact no such restriction to be found in the statute or case precedent. As the D.C. Circuit has noted, "[t]he FOIA imposes *no limits* on courts' equitable powers in enforcing its terms." *Payne Enterprises v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (emphasis added), citing *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 19-20 (1974). "[U]nreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Id.*, 837 F.2d at 494 (citation omitted). An exercise of that duty is all that EFF requests here.

---

[4] Indeed, the D.C. Circuit, in its only discussion of the FOIA expedited processing provision, itself applied the preliminary injunction standard in affirming the district court decision in the *Al-Fayed* case. *Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001) (court conducted merits review of "whether plaintiffs are entitled to a preliminary injunction").

## II. The Government's Delay in Processing EFF's "Expedited" FOIA Requests Violates the Statute

The government mistakenly asserts that the FOIA "does not require agencies to process expedited requests within a specific time limit." Defs. Opp. at 13. Such a conclusion would require the Court to ignore both the plain language of the statute and the manner in which it has been construed by the courts for more than 30 years.

Defendants read the expedited processing provision of the statute in isolation, divorcing it from the generally applicable 20-day processing time limit contained in 5 U.S.C. § 552(a)(6)(A)(i), and the plain language of 5 U.S.C. § 552(a)(6)(C)(i), which states:

> Any person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph. If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, *the court may retain jurisdiction and allow the agency additional time* to complete its review of the records.

(emphasis added). In *Open America v. Watergate Special Prosecution Task Force*, the D.C. Circuit construed the provision:

> to mean that "exceptional circumstances exist" when an agency . . . is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.

547 F.2d 605, 616 (D.C. Cir. 1976). *See also Exner v. FBI*, 542 F.2d 1121 (9th Cir. 1976); *Gilmore v. National Sec. Agency*, No. C-92-3646 THE, 1993 U.S. Dist. LEXIS 7694, at *34 (N.D. Cal. May 3, 1993) (*Exner* adopted a "limited version of the holding in *Open America* allow[ing] an agency to claim 'exceptional circumstances' where it is faced with an unforeseen and unforeseeable increase in the number of FOIA requests").

The statute and relevant case law thus provide that standard, non-expedited requests must be processed within 20 days; that judicial supervision of the FOIA process is appropriate immediately upon the expiration of that time limit; and that an agency may be granted "additional time" only when it can show, *inter alia*, that it "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress." It defies logic to conclude, as the

government would apparently have it, that a request entitled to *expedited* processing somehow actually imposes a *lower* burden on a recalcitrant agency. As the court found in *EPIC*:

> Congress could not have intended to create the absurd situation wherein standard FOIA requests must be processed within twenty days (unless the agency can show that exceptional circumstances exist for a delay), yet expedited requests empower an agency to unilaterally decide to exceed the standard twenty-day period.

*EPIC*, 416 F. Supp. 2d at 38.[5] The court thus held:

> [A]n agency that violates the twenty-day deadline applicable to standard FOIA requests presumptively also fails to process an expedited request "as soon as practicable." That is, a *prima facie* showing of agency delay exists when an agency fails to process an expedited FOIA request within the time limit applicable to standard FOIA requests.
>
> The presumption of agency delay raised by failing to respond to an expedited request within twenty days is certainly rebuttable if the agency presents credible evidence that disclosure within such time period is truly not practicable.

*Id*. at 39 (footnote omitted). *See also Gerstein I*, 2006 U.S. Dist. LEXIS 89883, at **9-10 (this Court adopts *EPIC* analysis).

Here, Defendants do not even attempt to meet that burden.[6] They merely conclude that it is "impracticable" to complete the processing of EFF's requests (submitted on December 21, 2007) prior to the schedules that the agencies propose. Defs. Opp. at 16. In support of that assertion, the agencies vaguely cite "the existence of classified materials, which . . . contributes significantly to the complexities attendant to processing a FOIA request," and the routine fact that "documents subject to other exemptions . . . must similarly be identified and, where necessary, redacted, and documents generated by other agencies or authorities must be referred for review back to those same agencies or authorities." *Id*. at 15-16 (citations omitted). As this Court noted in a recent case in which defendant ODNI raised an identical argument, such issues are "generically applicable to all FOIA requests that would be received by the ODNI. Defendant has offered no explanation or

---

[5] The government makes much of the fact that the legislative history indicates that Congress' intent was "not to require that [expedited] requests be processed within . . . [a] specific period of time." Defs. Opp. at 13 (citation omitted). As the *EPIC* court noted, however, "[t]he legislative history of the amendments makes clear that, although Congress opted not to impose a specific deadline on agencies processing expedited requests, its intent was to 'give the request priority for processing *more quickly than otherwise would occur*.'" *EPIC*, 416 F. Supp. 2d at 38 (citation omitted; emphasis in original).

[6] While arguing that *EPIC* was "wrongly decided," the agency does not even mention the "credible evidence" standard in its opposition, let alone explain why an agency should not be required to make such a showing.

evidence of the existence of 'exceptional circumstances' *specific to this case.*" *Elec. Frontier Foundation v. Office of the Director of National Intelligence,* No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585, at * 15 (emphasis added). Similarly, the agencies fail to provide the Court with any extraordinary information that might justify taking *four to five months or longer* to process fewer than 2,500 pages (DOJ National Security Division),[7] 2,000 pages (DOJ Office of Legal Counsel),[8] 1,500 pages (DOJ Office of Legislative Affairs), 233 pages (DOJ Office of Legal Policy), 913 pages (DOJ Office of the Attorney General),[9] and 265 pages (ODNI)[10] identified as responsive to EFF's FOIA requests. *Id*. at 6-10.

The government's position here is strikingly similar to DOJ's in *EPIC*, where the court noted that the agency was "content to rest on its unsupported allegations that delay is necessary

---

[7] The declaration of GayLa D. Sessoms stated that the DOJ National Security Division ("NSD") had completed its search for responsive records and said NSD would inform EFF by March 21, 2008 how many responsive records had been located. Defs. Opp. Ex. 1 ¶ 10. Regardless of the volume, NSD asserted that it would provide an interim response to EFF by April 11, 2008, but declined to commit to a final response date. *Id*. at ¶¶ 12-13. By letter dated March 21, 2008, NSD informed EFF that it had located 2,500 pages responsive to EFF's request, a "significant volume" of which "includes various *Statements* and *Written Testimony* by the Assistant Attorney General for National Security before Congress and the multiple drafts that were generated during the course of finalizing these statements." Declaration of Marcia Hofmann ("Hofmann Decl.") Ex. A (emphases in original). The letter asked whether NSD should review all drafts of these materials as it processes EFF's request. *Id*. EFF responded on March 24, 2008 that it is willing to remove not only the drafts from the scope of the request, but any final versions of statements or testimony that are already publicly available. Hofmann Decl. Ex. B. EFF expects that this agreement will substantially decrease the number of pages to be reviewed by NSD, and should drastically reduce the amount of time necessary for NSD to process EFF's request. *Id*.

[8] The DOJ Office of Legal Counsel ("OLC") has reduced the universe of potentially responsive material to approximately 2,000 pages, a number that is likely to decrease upon further review. Defs. Opp. Ex. 2 ¶ 9.  OLC "anticipate[s] issuing at least an interim response by no later than March 25, 2008," and "could issue a final response to plaintiff's request by April 22, 2008." *Id*. ¶ 9.

[9] The DOJ Office of Information and Privacy ("OIP") reports that the DOJ Office of Legislative Affairs ("OLA") has located 1552 pages in response to EFF's request, the Office of Legal Policy ("OLP") has located 233 pages in response to EFF's request, and the Office of the Attorney General ("OAG") has found 913 pages in response to EFF's request. Defs. Opp. Ex. 3 ¶ 23. OIP concedes that these page counts are likely to go down as non-responsive material is removed from the scope of potentially responsive documents. *Id*. OIP will not even begin consulting other agencies about material in which they may have an interest until March 28, 2008, and expects to send a second round of consultations by April 30, 2008. *Id*. ¶¶ 26 & 28. The agency "anticipates" providing an interim response to EFF by April 14, 2008, and a final response by May 23, 2008, "assuming all consultations have been returned." *Id*. ¶¶ 27 & 29.

[10] ODNI states that it has completed its search for responsive records and located "approximately 185 pages of unclassified material and approximately 80 pages of classified material . . . responsive to plaintiff's request." Defs. Opp. Ex. 4 ¶ 8. ODNI has referred approximately 255 of these pages to other agencies for consultation. *Id*. ¶ 9. ODNI states that "[t]he agencies to which consultations have been sent have advised ODNI that they anticipate completing their review in approximately three weeks," and ODNI "anticipates" issuing a final response to EFF request "within three weeks of receive the other agencies [sic] responses to our consultations." *Id*. ¶ 12.

because EPIC's requests are 'broad' and involve classified documents." *EPIC,* 416 F. Supp. 2d at 40 (citation omitted). Finding that such "vague assertions, unsupported by credible evidence, are insufficient to demonstrate that further delay is currently necessitated," the court noted that "courts often find that one to two months is sufficient time for an agency to process broad FOIA requests that may involve classified or exempt material." *Id.* (citations omitted).[11]

In *Gilmore*, this Court considered – and rejected – similar agency claims in the context of an *Open America* enlargement of processing time sought by the National Security Agency. In asserting "exceptional circumstances," the agency claimed that "the highly complex and technical nature of the information dealt with by NSA, and the extreme sensitivity of much of that information necessarily delay the processing of FOIA requests." *Gilmore,* 1993 U.S. Dist. LEXIS 7694 at *36. Noting that "it does not appear that those are acceptable grounds for delay under FOIA," the Court emphasized that "[n]o special exception [from the statutory time limits] was created for any agency, including the NSA and *other intelligence agencies that face its particular problems*." *Id*. at **36-37 (emphasis added).

Furthermore, we note that the Ninth Circuit has unequivocally held that "practical difficulties" of the sort the agencies cite here do not justify FOIA processing delays:

> Though FOIA doubtless poses practical difficulties for federal agencies, federal agencies can educate Congress on the practical problems they have, and attempt to persuade Congress to change the law or provide additional funds to achieve compliance. So long as the Freedom of Information Act is the law, we cannot repeal it by a construction that vitiates any practical utility it may have[.]
>
> It may be that agency heads, such as the Attorney General in this case, can be forced by the Freedom of Information Act to divert staff from programs they think more valuable to Freedom of Information Act compliance. . . . But these policy concerns are legislative, not judicial, and we intimate no views on them. Congress wrote a tough statute on agency delay in FOIA compliance, and recently made it tougher.

*Fiduccia v. Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999); *see also Elec. Frontier Foundation v. Office of the Director of National Intelligence*, No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585, at *16 ("While defendant notes that it has a small FOIA staff, that argument is more

---

[11] By no stretch of the imagination can EFF's requests be characterized as "broad." The *EPIC* court cited judicial orders requiring "agencies to process over 6000 pages of material within 60 days," and "the 'vast majority' of the processing of 7500 pages to be completed within 32 days." *Id.* (citations omitted). The amount of material responsive to each FOIA request at issue in this case pales in comparison.

properly directed at Congress, not to the courts."). The "tough statute" that Congress enacted does not countenance a delay of four to five months or longer in the processing of 233 to 2,500 pages of material responsive to "expedited" FOIA requests. Defendants are in violation of the law and have failed to demonstrate an entitlement to any more time than they have already had.

### III. EFF Will Suffer Irreparable Injury in the Absence of Preliminary Relief

As we noted in our opening memorandum, "[c]ourts have recognized that the requisite injury is present, and preliminary injunctive relief is appropriate, in cases [where] expedited FOIA processing is at issue and where time thus is of the essence, because delay 'constitutes a cognizable harm.'" Mot. for Prelim. Inj. at 16 (Dkt. No. 7), quoting *Gerstein I*, 2006 U.S. Dist. LEXIS 89883, at *15. This Court and others have made it clear that the pendency of legislation related to the subject of a FOIA request weighs in favor of expedited processing. Pl. Mot. at 18-19; *see Elec. Frontier Foundation v. Office of the Director of National Intelligence*, No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585, at **19-20 (finding a likelihood of irreparable harm where plaintiff sought records "specifically so that plaintiff, Congress, and the public may participate in the debate over the pending legislation on an informed basis," and rejecting defendant's argument that there is no irreparable harm where a legislative debate has been going on for years and because law is always subject to further modification); *Gerstein v. CIA*, No. C-06-4643 MMC, 2006 U.S. Dist. LEXIS 89847, at *20 (N.D. Cal. Nov. 29, 2006) ("*Gerstein II*") (granting expedited processing where court noted that "there is a significant recognized interest in enhancing public debate on potential legislative action"); *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 31 (D.D.C. 2004).

In the face of this clear authority, the government argues that EFF has failed to show the requisite injury because the government believes that legislative debate will continue for some time due to the "current legislative stalemate." Defs. Opp. at 2. Contrary to the government's claim, the debate in Congress on immunity for telecommunications companies is robust, ongoing and intense, and the White House continues to demand immediate congressional action to shield carriers from accountability for their participation in unlawful surveillance activities. If anything has changed in the wake of the Protect America Act's expiration, it is that the Administration has stepped up its

demands that Congress immediately approve legislation to replace the lapsed law. For instance, on February 22, 2008, shortly after the Protect America Act expired, the Attorney General and Director of National Intelligence wrote a letter to the chairman of the House Permanent Select Committee on Intelligence concerning the "urgent need" to amend the Foreign Intelligence Surveillance Act ("FISA"), declaring that it is "critical to our national security that Congress acts as soon as possible" to pass the Administration's preferred version of such legislation. Letter from Attorney General Michael B. Mukasey and Director of National Intelligence J.M. McConnell to The Honorable Silvestre Reyes, Chairman House Permanent Select Committee on Intelligence, Feb. 22, 2008, http://www.lifeandliberty.gov/docs/ag-dni-letter-to-chairman-reyes.pdf  (Hofmann Decl. Ex. C.)

On March 13, 2008, despite the pressure of the Administration to enact legislation to immunize telecommunications carriers, the House of Representatives passed an amendment to the Senate-modified version of H.R. 3773 that removed language that had been approved by the Senate, and did not provide prospective or retroactive immunity for telecommunications companies. H.R. 3773 (with House amendment to the Senate amendment). Upon learning that the House would consider this amendment, President Bush pushed for an immediate vote on the Senate version of the legislation, stating that members of the House "should not leave for their Easter recess without getting the Senate bill to my desk." President Bush Discusses FISA, March 13, 2008, http://www.whitehouse.gov/news/releases/2008/03/20080313.html (Hofmann Decl. Ex. D); s*ee also* Statement by the Press Secretary, March 11, 2008 http://www.whitehouse.gov/news/releases/2008/03/20080311-7.html (Hofmann Decl. Ex. E) ("It is time for House Democratic leaders to get serious about our national security, put aside these partisan games, and bring the bipartisan Senate bill to a vote *immediately*.") (emphasis added).

EFF seeks access to information "vital to the current and ongoing debate surrounding whether, and how, foreign intelligence surveillance law should be amended, especially with regard to providing legal immunity to telecommunications carriers for their past participation in unlawful government surveillance operations." Declaration of Marcia Hofmann in Support of Motion for Preliminary Injunction ¶ 21 ("Hofmann Decl. to Mot. Prelim. Inj.") (Dkt. No. 8). Key members of

Congress have indicated in recent months that they are less likely to support a grant of such immunity if the Executive Branch refuses to disclose relevant information. For example, on May 21, 2007, Sens. Patrick J. Leahy and Arlen Specter (Chairman and Ranking Member of the Senate Judiciary Committee, respectively) wrote to the Attorney General to reiterate the Committee's longstanding requests for various documents concerning foreign intelligence surveillance. Hofmann Decl. Ex. F. The senators noted that the Committee is considering legislation relating to surveillance activities, and that the requested information is "critical" to the legislative process:

> [T]he Administration has offered a legislative proposal that it contends seeks to "modernize" the Foreign Intelligence Surveillance Act (FISA). As you know, the Judiciary Committee has historically overseen changes to FISA and it is this Committee's responsibility to review the Administration's proposal with great care. The draft legislation would make dramatic and far-reaching changes to a critical national security authority. *Before we can even begin to consider any such legislative proposal, we must be given appropriate access to the information necessary to carry out our oversight and legislative duties*.

*Id*. at 2 (emphasis added). More recently, on October 22, 2007, Sens. Leahy and Specter wrote to the Counsel to the President and reiterated their unwillingness "to consider immunity" if the Administration is not more forthcoming with relevant information.

> If the Administration wants our support for immunity [from liability for communications carriers], it should comply with the [Committee's] subpoenas, provide the information, and justify its request. As we have both said, it is wrongheaded to ask Senators to consider immunity without their being informed about the legal justifications purportedly excusing the conduct being immunized. Although the two of us have been briefed on certain aspects of the President's program, this cannot substitute for access to the documents and legal analysis needed to inform the legislative decisions of the Committee as a whole.

Hofmann Decl. Ex. G. It is thus clear that a decision by the agencies to withhold the requested information while legislation is still pending would, in and of itself, be a "meaningful [albeit perverse] contribution to the ongoing public debate," *Gerstein II*, 2006 U.S. Dist. LEXIS 89847, at *21 (internal quotation marks omitted), and render some members of Congress less inclined to support a grant of immunity. Indeed, Defendants have now acknowledged that each office that received one of EFF's FOIA requests has located responsive documents. Defs. Opp. at 6-10. As for the question of whether the agencies will ultimately disclose "non-exempt" material, even a decision to *withhold* all of the responsive documents would influence consideration of the pending legislation.

The government also argues that "there is no appropriate legal or factual basis to tether releases of agency records in a FOIA case to Congress's legislative calendar[.]" Defs. Opp. at 21. The government's assertion flies in the face of the rationale adopted by this Court in *Elec. Frontier Foundation* and *Gerstein II,* as well as other courts that have recognized that the value of requested information will diminish after a legislative debate has concluded. *See*, *e.g.*, *Elec. Frontier Foundation v. Office of the Director of National Intelligence*, No. 07-5278 SI, 2007 U.S. Dist. LEXIS 89585, at *19 ("irreparable harm can exist in FOIA cases such as this because ongoing public and congressional debates about issues of vital national importance cannot be restarted or wound back.") (quotation marks and citation omitted); *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) ("FOIA requests could have vital impact on development of the substantive record in favor of reauthorizing or making permanent the special provisions of the Voting Rights Act"); *ACLU v. Dep't of Justice*, 321 F. Supp. 2d at 30 ("a principle aim of plaintiff's FOIA request is to provide information for the ongoing national debate about whether Congress should renew Section 215 and other Patriot Act surveillance provisions before they expire"). As the Ninth Circuit has recognized, "[t]he value of information is partly a function of time," *Fiduccia*, 185 F.3d at 1041, and delay in the processing of FOIA requests "may well result in disclosing the relevant documents after the need for them in the formulation of national . . . policy has been overtaken by events." *Natural Resources Defense Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002). While the government blithely contends that the usefulness of the requested information will be "merely postponed" by further processing delays, the relevant precedent recognizes that its value will, in fact, be lost.[12]

---

[12] The government also argues that EFF could have filed its motion for preliminary injunction "in early January 2008," and that this delay undermines EFF's request for preliminary relief. Defs. Opp. at 20. Plaintiff respectfully submits that the government's calculation is incorrect. The FOIA provides that a federal agency must issue a determination on a request within 20 working days of receipt. 5 U.S.C. § 552(a)(6)(A)(i). EFF submitted its FOIA requests to Defendants by facsimile on December 21, 2007, though the various component offices indicate that the requests were not "received" until December 26 (ODNI) and December 27 (OAG, OLP, OLA and NSD). Hofmann Decl. to Mot. Prelim. Inj. Exs. O, P, R. OLC's correspondence does not indicate when that component received EFF's request, but receipt was not acknowledged until January 9. Hofmann Decl. to Mot. Prelim. Inj. Ex. Q. These dates indicate that EFF could have filed its lawsuit and motion for preliminary injunction no earlier than the last week in January 2008 against OAG, OLP, OLA and NSD, and the second week in February 2008 against OLC, since that component did not indicate that it had received EFF's request prior to January 9. EFF's delay in filing the instant motion was also due in part to EFF's repeated attempts to negotiate a processing schedule with the government, which, if successful, would have made it unnecessary to for EFF to seek preliminary relief. Hofmann Decl. to Mot. Prelim. Inj. ¶ 23.

### IV. A Court Order Securing EFF's Right to Expedition Will Not Impose Undue Burden on the Government and Will Serve the Public Interest

The government's final argument is that issuance of a preliminary injunction would "impose undue burden on defendants and injure their interests," and "has the potential to harm the public interest by complicating and disrupting the processing of other FOIA requests." Defs. Opp. at 22. EFF reiterates that it is only asking the Court to order the government to do what is already plainly required by the FOIA. The Defendants have had far more time already to process EFF's requests than permitted by the statute, and its excuses for non-compliance are unavailing. While an agency may have to evaluate records extensively before they can be released to a requester, the FOIA simply does not allow an agency as much time as it likes to review classified material or consult with other agencies. If Defendants feel "unduly burdened" by this requirement, they should ask Congress to extend the FOIA's deadlines.

The government's claim that preliminary relief would actually harm the public interest also fails. If, as the government claims, all of EFF's FOIA requests have been moved to the front of the appropriate FOIA queues and are currently being processed ahead of all other pending FOIA requests in those offices, *id.* at 6-9, it is difficult to understand how the hastened completion of the processing of EFF's requests would work to the detriment of other requesters. If anything, faster processing of EFF's requests will allow the agency to return to the processing of the other pending requests more quickly.

### CONCLUSION

When EFF submitted its FOIA requests to Defendants on December 21, 2007, it asserted that there was "an urgency to inform the public" about the requested information because "Congress will imminently consider modifying FISA" and such information "will help the public and Congress fully participate in the looming debate over whether the government's authority to conduct electronic surveillance should be further expanded and facilitated by telecommunications companies." Hofmann Decl. to Mot. Prelim. Inj. Exs. K-N. Defendants granted EFF's requests for expediting processing, thus acknowledging the "urgency to inform the public" and the relevance of

the requested information to the debate in Congress. With that heated legislative debate has now been well underway for months, the agencies assert that it will be *four to five months or longer* from the date of the requests before they will be able to complete the processing of between *233 and 2,500 pages* of material responsive to EFF's "expedited" requests.

The need for injunctive relief is clear. For the reasons stated above, EFF respectfully requests that its motion for a preliminary injunction be granted.

DATED: March 25, 2008

By  /s/ *Marcia Hofmann*
Marcia Hofmann, Esq.
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA  94110
Telephone:  (415) 436-9333
Facsimile:  (415) 436-9993

David L. Sobel (pro hac vice)
ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Ave. NW
Suite 650
Washington, DC  20009
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION