JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
CARL J. NICHOLS
Deputy Assistant Attorney General
JOSEPH P. RUSSONIELLO
United States Attorney
ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch
ANDREW I. WARDEN (IN Bar No. 23840-49)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7332
Washington, D.C. 20530
Telephone: (202) 616-5084
Facsimile: (202) 616-8460
Andrew.Warden@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

—————————————————————

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, ) ) ) ) Plaintiff, ) ) v. ) ) OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE and UNITED STATES DEPARTMENT OF JUSTICE ) ) ) ) ) ) Defendants. ) | Civil Action No. 3:08-cv-1023 JSW **DEFENDANTS' RESPONSE TO COURT'S APRIL 4, 2008 ORDER GRANTING PRELIMINARY INJUNCTION** |

—————————————————————

Pursuant to the Court's April 4, 2008 Order (dkt no. 43), defendants Office of the Director of National Intelligence (ODNI) and Department of Justice (DOJ) hereby submit the following six declarations attesting to defendants' compliance with the Court's April 4, 2008 Order:

- Exhibit 1 – Declaration of John F. Hackett (ODNI)

- Exhibit 2 – Declaration of GayLa D. Sessoms (DOJ - NSD)

- Exhibit 3 – Declaration of Paul P. Colborn (DOJ - OLC)

- Exhibit 4 – Declaration of Thomas E. Hitter (DOJ - OIP)

- Exhibit 5 – Declaration of David M. Hardy (DOJ - FBI)

- Exhibit 6 – Declaration of James M. Kovakas (DOJ - Civil)

As explained more fully in the declarations, in accordance with the Court's April 4, 2008 Order, defendants responded to plaintiff's Freedom of Information Act ("FOIA") requests and provided an initial release of records no later than April 17, 2008.  Today, April 21, 2008, defendants provided plaintiff with a final release of all responsive, non-exempt records.  With respect to those responsive records that defendants have withheld (both in full and in part) under the FOIA, the declarations explain the basis for the withholdings.


Dated: April 21, 2008                    Respectfully submitted,

                                         JEFFREY S. BUCHOLTZ
                                         Acting Assistant Attorney General

                                         CARL J. NICHOLS
                                         Deputy Assistant Attorney General

                                         JOSEPH P. RUSSONIELLO
                                         United States Attorney

1

2

ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch

3

*/S/ Andrew I. Warden*

4

ANDREW I. WARDEN (IN Bar No. 23840-49)

5

Trial Attorney, U.S. Department of Justice

Civil Division, Federal Programs Branch

6

20 Massachusetts Ave., N.W., Room 7332

Washington, D.C. 20530

7

Telephone: (202) 616-5084

Facsimile: (202) 616-8460

8

E-mail: Andrew.Warden@usdoj.gov

9

*Attorneys for Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| | ) | |
| | ) | |
| ELECTRONIC FRONTIER FOUNDATION | ) | |
| Plaintiff, | ) | Civil Action No. 07-1023 JSW |
| | ) | |
| v. | ) | |
| | ) | |
| OFFICE OF THE DIRECTOR OF NATIONAL | ) | |
| INTELLIGENCE | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF JOHN F. HACKETT**

Pursuant to 28 U.S.C. § 1746, I, John F. Hackett, declare the following to be true and correct:

1. I am the Director of the Information Management Office (IMO) for the Office of the Director of National Intelligence ("ODNI"). I have been in this position since April 2006. Prior to my arrival in the ODNI, I held similar positions in the National Counterterrorism Center and the Terrorist Threat Integration Center. I am the final decision-making authority for the IMO, which receives, processes, and responds to requests for ODNI records under the Freedom of Information Act (FOIA), 5 U.S.C. 552.

2. I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties.

3. By facsimile dated December 21, 2007, plaintiff Electronic Frontier Foundation submitted a FOIA request to ODNI for "all agency records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Director McConnell or other ODNI officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications companies concerning amendments to FISA, including any discussion of immunizing such companies or holding them otherwise unaccountable for their role in government surveillance activities." ODNI received the request

on December 26, 2007. (A copy of plaintiff's initial request letter is attached as Exhibit A to my March 18, 2008 declaration, previously submitted in this case).[1]

4. On April 4, 2008, the Court in the above-captioned matter granted plaintiff's motion for a preliminary injunction and ordered ODNI "to respond to plaintiff's FOIA request and provide an initial release of documents no later than April 17, 2008." The Court further ordered ODNI "to provide a final release of all responsive, non-exempt documents no later than April 21, 2008." Finally, the Court directed ODNI "to file with the Court and serve upon plaintiff's counsel, an affidavit or declaration attesting to Defendant's compliance and setting forth the basis for withholding any responsive document it does not release." This declaration is provided to the Court and plaintiff consistent with the Court's order.[2]

5. In the course of processing plaintiff's FOIA request ODNI located 226 pages of responsive documents. In addition, 11 documents were referred to ODNI by the Department of Justice for direct response to the requester. ODNI determined that two of those documents were not responsive to this request and four of them are duplicates of documents located by the ODNI. In sum, ODNI processed 250 pages of responsive material.

6. Pursuant to the Court's order, by letter dated April 17, 2008, 19 documents, totaling approximately 77 pages, were released to the plaintiff. Redactions were made on 11 pages pursuant to FOIA Exemption 2, 5 U.S.C. § 552(b)(2), which protects information related solely to the internal personnel rules and practices of an agency. The information that was redacted from these documents consists exclusively of non-public ODNI fax numbers and phone numbers. Because the internal phone numbers and fax numbers relate solely to ODNI's internal

---

[1] Plaintiff's request seeks information pertaining to, among other things, "any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities." Nothing in this declaration should be construed to confirm or deny any role that telecommunications companies may or may not have in any government surveillance activities.

[2] ODNI submits this declaration without prejudice to its rights to provide additional information regarding the processing of plaintiff's FOIA request or the reasons for any withholdings. ODNI specifically reserves the right to submit additional information in summary judgment or other subsequent proceedings in this case.

2

practices, because disclosure would not serve any public interest, and because disclosure could

impede ODNI's effectiveness in carrying out its official business (*i.e.*, subject ODNI employees

to harassing communications that could disrupt official business), the information was properly

withheld on the basis of FOIA Exemption 2.

7. Today, April 21, 2008, plaintiff is being provided with a final response to its FOIA

request. Twelve documents, totaling 80 pages, are being released in full. 14 documents, totaling

58 pages, are being released in part and 11 documents, totaling 31 pages, are being withheld in

full pursuant to FOIA Exemptions 1, 2, 3, 5, and 6, 5 U.S.C. § 552(b)(1), (2), (3), (5), and (6).[3]

8. There are five categories of documents responsive to the plaintiff's request that are being

withheld either in full or in part: (1) correspondence between ODNI and Members of Congress

and classified attachments to that correspondence; (2) classified portions of briefing slides used

by ODNI to brief Members of Congress regarding national security and intelligence matters; (3)

calendar entries and database print-outs reflecting briefings or meetings with Members of

Congress; (4) fax cover sheets and one letter exchanged between ODNI and representatives of

telecommunication companies; and (5) one email chain and 15 pages of memorandums

discussing meetings and briefings with Members of Congress.

9. With respect to the first category of materials (correspondence and classified

attachments), 22 pages are being withheld in part pursuant to FOIA Exemptions 1, 2, and 3. The

information being withheld pursuant to Exemption 2 consists of non-public telephone and fax

numbers. The information withheld pursuant to Exemption 1 is currently and properly classified

under Executive Order 12958, as amended. Specifically, the withheld information contained in

these documents meets the criteria for classification as set forth in subparagraphs (c) and (g) of

Section 1.4 of Executive Order 12958, as amended, which authorizes the classification of

---

[3] The Office of Legal Counsel's declaration explains that it located a December 18, 2007 letter that would be released in part by ODNI. That letter was included in today's release to the plaintiff.

information concerning "intelligence activities (including special activities), intelligence sources or methods or cryptology, and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection systems relating to the national security, which includes defense against transnational terrorism." The withheld information is classified at the secret and top secret levels, which means that its unauthorized disclosure could reasonably be expected to cause serious and in some instances exceptionally grave damage to the national security of the United States. Additionally, portions of the withheld information must be protected from disclosure pursuant to other statutes, in this instance, 50 U.S.C. § 403-1(i), 18 U.S.C. § 798 and 50 U.S.C. § 402 note and was therefore also withheld pursuant to Exemption 3.

10. With respect to the second category of materials (classified briefing slides), three pages are being released in full, three pages are being released in part, and 11 pages are being withheld in full. The withheld information is currently and properly classified under Executive Order 12958, as amended, for the same reasons described in paragraph nine. Additionally, portions of the withheld information must be protected from disclosure pursuant to other statutes, in this instance, 50 U.S.C. § 403-1(i), 18 U.S.C. § 798 and 50 U.S.C. § 402 note and was therefore also withheld pursuant to FOIA Exemption 3.

11. With respect to the third category of materials (calendar entries and database print-outs reflecting briefings and meetings with Members of Congress) five pages are being released in full and 10 pages are being released in part, pursuant to FOIA Exemptions 2 and 6. The withheld information consists of internal administrative information that is of no public interest such as database file numbers and certain logistical information. In addition, the names of certain ODNI employees have been withheld because disclosure of the names of certain Intelligence Community employees would result in an unwarranted invasion of personal privacy and would hamper the effectiveness of the ODNI and the Intelligence Community. .

4

12. With respect to the fourth category of materials (exchanges with representatives of telecommunications companies) 13 pages are being withheld in full pursuant to FOIA Exemptions 2, 3 and 6. The withheld information consists of four fax cover sheets and one letter, all of which were exchanged between the ODNI and representatives of telecommunications companies. Certain non-public administrative information that is of no public interest such as telephone and fax numbers is being withheld. In addition, the name of an ODNI employee is being withheld because disclosure of the names of certain Intelligence Community employees would result in an unwarranted invasion of personal privacy and would hamper the effectiveness of the ODNI and the Intelligence Community. Finally, any information that could reveal the identity of telecommunication carriers that may have assisted, or may in the future assist, the United States Government in conducting electronic surveillance for foreign intelligence purposes has been withheld. Such information is properly withheld pursuant to FOIA Exemption 3 because it directly implicates sensitive intelligence sources and methods protected from unauthorized disclosure by the National Security Act of 1947, as amended. *See* 50 U.S.C. § 403-1(i).

13. With respect to the fifth category of materials (an email exchange between ODNI and other government agencies and internal memorandums discussing meetings and briefings with Members of Congress), 18 pages are being withheld in full pursuant to FOIA Exemptions 1, 2, 3, 5 and 6. The withheld information is currently and properly classified under Executive Order 12958, as amended, for the same reasons described in paragraph nine. Additionally, portions of the withheld information must be protected from disclosure pursuant to other statutes, in this instance, 50 U.S.C. § 403-1(i), 18 U.S.C. § 798 and 50 U.S.C. § 402 note and was therefore also withheld pursuant to FOIA Exemption 3. In addition, the email exchange and the internal memorandums consist of ODNI official's summaries, views and comments regarding various

5

briefings and meetings with Members of Congress. These documents contain deliberative information that if disclosed would hinder the frank exchange of information within the ODNI and other government agencies and is therefore properly withheld pursuant to FOIA Exemption 5 (deliberative process privilege). Furthermore, these documents contain telephone numbers, email addressess and other internal information as well as the names of various Intelligence Community employees.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 21st day of April, 2008.

John F. Hackett
Director, Information Management Office

6

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-1023 JSW |
| | ) | |
| v. | ) | |
| | ) | |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE | ) | |
| | ) | |
| and | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF GAYLA D. SESSOMS**

I, GayLa D. Sessoms, do hereby state and declare as follows:

1.     I am the Freedom of Information Act (FOIA) Coordinator for the National Security Division (NSD), of the United States Department of Justice (DOJ). In that capacity, I manage day-to-day FOIA operations including the receipt, review, search, and records processing in connection with all incoming access requests.

2.     I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties.

3.     By letter dated December 21, 2007, the Electronic Frontier Foundation ("EFF") submitted a request to NSD under the Freedom of Information Act ("FOIA") for "all agency records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of

Representatives and 2) representatives or agents of telecommunications companies concerning

amendments to FISA, including any discussions or immunizing telecommunications companies

or holding them otherwise unaccountable for their role in government surveillance activities."

4.      On April 4, 2008, the Court in the above-captioned matter granted plaintiff's

request for a preliminary injunction requiring defendants to provide "an initial release of

documents no later than April 17, 2008, . . . and a final release of all responsive, non-exempt

documents no later than April 21, 2008." The Court also directed defendants to provide "an

affidavit or declaration attesting to Defendants' compliance, and setting forth the basis for

withholding any responsive documents it does not release." This declaration is provided to the

plaintiff and the Court consistent with the Court's order.[1]

5.      Pursuant to the Court's order, by letter dated April 8, 2008, six documents,

totaling 24 pages were released to plaintiff in full. (See attached Exhibit 1). Today, plaintiff is

being provided with a final response. Sixteen documents, totaling ninety-five pages are being

released in full. (See attached Exhibit 2).

6.      Additionally, two documents, totaling sixty-two pages are being released in part,

with excisions of information pursuant to Exemption 1, 5 U.S.C. §552 (b)(1). The withheld

information is currently and properly classified under Executive Order 12958, as amended.

Specifically, the withheld information contained in these documents meets the criteria for

classification as set forth in subparagraphs (c) and (g) of Section 1.4 of Executive Order 12958,

as amended, which authorizes the classification of information concerning "intelligence activities

---

[1] This declaration is provided to plaintiff without prejudice to the NSD's rights to provide additional information regarding the processing of plaintiff's request and/or the reasons for any withholdings. The NSD specifically reserves the right to submit additional information, as appropriate, in the context of summary judgement or other subsequent proceedings in this case.

(including special activities), intelligence sources or methods, or cryptology," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection systems relating to nation security, which includes defense against transnational terrorism." The withheld information is classified at the secret and top secret levels, which means that its unauthorized disclosure could reasonably be expected to cause serious and in some instances exceptionally grave damage to the national security of the United States. Additionally, it is my understanding that the withheld information must be protected from disclosure pursuant to other statues, in this instance, 50 U.S.C. § 403-1(i), 18 U.S.C. § 798 and 50 U.S.C. § 402 note, and is therefore also withheld pursuant to Exemption 3 of the FOIA, 5 U.S.C. §552 (b)(3).

7.      One document, totaling two pages, is being withheld pursuant to FOIA Exemption 5 and because the remaining portions were not responsive to the request. It is my understanding that this document is a duplicate of a document that is accounted for in paragraph 12 of the declaration of Thomas E. Hitter, Department of Justice, Office of Information and Privacy ("OIP").

8.      Twelve documents, totaling 57 pages were referred by the NSD to the Office of the Director of National Intelligence ("ODNI") and/or OIP for review and direct response to plaintiff. It is my understanding that these documents are addressed in the declarations submitted herewith by John F. Hackett of ODNI and Thomas E. Hitter of OIP.

9.      Finally, in response to plaintiff's request, OIP referred six documents to the NSD for review and direct response to plaintiff. This material consists of five final *Statements* and *Written Testimony* by the Assistant Attorney General for National Security before Congress and a duplicate of a record already in NSD's possession. All of the referred material is being released in full.

10.    In sum, the NSD has completed processing Plaintiff's FOIA request, releasing twenty-two documents in full, and portions of two documents.  One document has been withheld in its entirety, and the ODNI and OIP are responding with respect to the remaining twelve documents.  Six additional documents referred to the NSD by OIP are being released in full.

I declare under penalty of perjury that the foregoing is true and correct.

GayLa D. Sessoms
FOIA Coordinator
National Security Division

Executed on this _____ 21st ____ day of April, 2008.



**U.S. Department of Justice**

National Security Division

---

*Washington, D.C. 20530*

APR  8  2008

Marcia Hofmann
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA. 94110

Re: FOIA #08-060

Dear Ms. Hofmann:

    This is in further reference to your Freedom of Information Act (FOIA) request seeking access to "all agency records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications companies concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities."

    We appreciate your agreement to narrow the scope of your request removing the *Statements* and *Written Testimony* by the Assistant Attorney General for National Security before Congress (including the multiple drafts that were generated during the course of finalizing these statements). Six unclassified documents (totaling 24 pages) are being released to you in their entirety. This material is enclosed. We are currently reviewing the remaining thirty-four documents (totaling 191 pages) and completing consults with other agencies and Department of Justice components. We will notify you as soon as our consults are completed. Feel free to contact me at 202-616-5460, if you have any questions.

Sincerely,

GayLa D. Sessoms
FOIA Coordinator

Enclosures (6)

EXHIBIT 1



**U.S. Department of Justice**

National Security Division

---

*Washington, D.C. 20530*

APR 21 2008

Marcia Hofmann
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA. 94110

Re: FOIA #08-060

Dear Ms. Hofmann:

This is our final response to your Freedom of Information Act (FOIA) request seeking access to "all agency records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications companies concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities."

In response to your request, this Office released six documents in full, (totaling 24 pages) on April 8, 2008, and we have completed our review of the remaining records. Sixteen documents, (totaling 95 pages) are being released to you in full. Portions of two documents, (totaling 62 pages) are being released to you with excisions pursuant to Exemptions 1 and 3, 5 U.S.C. §552 (b)(1), and (b)(3), and one document is being withheld in full pursuant to the deliberative process privilege embodied in Exemption 5, 5 U.S.C. §552 (b)(5). Exemption 1 pertains to national security information which is properly classified pursuant to Executive Order 12958, as amended. Specifically, the withheld information is classified at the secret and top secret levels, which means that its unauthorized disclosure could reasonably be expected to cause serious and in some instances exceptionally grave damage to the national security of the United States. Exemption 3 permits the withholding of information specifically exempted from disclosure by statute. The applicable statute is the National Security Act of 1947, as amended, 50 U.S.C. § 403-1(1), which protects sensitive intelligence sources and methods. None of the information being withheld is appropriate for discretionary disclosure.

**EXHIBIT 2**

Twelve documents, totaling 57 pages were referred to the Office of the Director of National Intelligence and/or the Office of Information and Privacy, DOJ for review and direct response to you.

Finally, in response to your request, the Office of Information & Privacy referred six documents to this office for review and direct response to you. We have reviewed this material which consists of five *Statements* and *Written Testimony* by the Assistant Attorney General for National Security before Congress and a duplicate of NSD document #11. All of this material is appropriate for release without excision, and has been enclosed. For your convenience, we have also enclosed the remaining *Statements* and *Written Testimony* referenced in our April 8th correspondence to you.

Although your access request is the subject of litigation, you may administratively appeal this determination by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. Both the letter and envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

John Demers
Deputy Assistant Attorney General
Law and Policy

Enclosures:    (24) documents
               Document Index

EFF (HOFMANN) FOIA LITIGATION (FISA AMENDMENTS)
DISPOSITION OF NSD DOCUMENTS

| DOCUMENT # | DISPOSITION |
| --- | --- |
| 1 | Released in full 4/21/08 |
| 2 | Released in full 4/21/08 |
| 3 | Referred to OIP/ODNI for direct response |
| 4 | Referred to OIP/ODNI for direct response |
| 5 | Referred to OIP/ODNI for direct response |
| 6 | Referred to ODNI for direct response |
| 7 | Referred to OIP/ODNI for direct response |
| 8 | Released in full 4/21/08 |
| **9** | **Released in full 4/8/08** |
| 10 | Referred to ODNI for direct response |
| 11 | Released in full 4/21/08 |
| 12 | Released in part 4/21/08 |
| 13 | Released in part 4/21/08 |
| 14 | Referred to OIP for direct response |
| 15 | Referred to OIP for direct response |
| 16 | Referred to OIP/ODNI for direct response |
| 17 | Released in full 4/21/08 |
| 18 | Released in full 4/21/08 |
| 19 | Referred to OIP for direct response |
| 20 | Released in full 4/21/08 |
| 21 | Referred to ODNI for direct response |
| 22 | Released in full 4/21/08 |
| **23** | **Released in full 4/8/08** |
| 24 | Released in full 4/21/08 |
| 25 | Referred to OIP for direct response |
| **26** | **Released in full 4/8/08** |
| **27** | **Released in full 4/8/08** |
| 28 | Released in full 4/21/08 |
| **29** | **Released in full 4/8/08** |
| **30** | **Released in full 4/8/08** |
| 31 | Withheld in full 4/21/08 |
| 32 | Released in full 4/21/08 |
| 33 | Released in full 4/21/08 |
| 34 | Released in full 4/21/08 |
| 35 | Released in full 4/21/08 |
| 36 | Released in full 4/21/08 |
| 37 | Released in full 4/21/08 |

# EXHIBIT 3

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. C 08-1023 JSW |
| | ) |
| OFFICE OF THE DIRECTOR OF NATIONAL | ) |
| INTELLIGENCE and UNITED STATES | ) |
| DEPARTMENT OF JUSTICE, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF PAUL P. COLBORN

I, Paul P. Colborn, declare the following:

1.   I am a Special Counsel in the Office of Legal Counsel ("OLC" or the "Office"),

a component of the United States Department of Justice. I joined OLC in 1986 and have had

the responsibility since 1987 of supervising OLC's responses to requests under the Freedom

of Information Act ("FOIA"), 552 U.S.C. § 552. In connection with that responsibility, I have

supervised OLC's response to Plaintiff's FOIA request in the above-captioned matter. This

declaration is based on personal knowledge and information disclosed to me in my official

capacity, and it supplements the declaration I submitted in this case on March 17, 2008.

2.   As explained more fully in my March 17 declaration, on December 21, 2007,

OLC received a FOIA request from Plaintiff seeking "all agency records from September 1,

2007 to the present concerning briefings, discussions, or other exchanges that the Justice

Department officials have had with 1) members of the Senate or House of Representatives and

2) representatives or agents of telecommunications companies concerning amendments to FISA

[the Foreign Intelligence Surveillance Act], including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government activities." Consistent with its other FOIA responsibilities, OLC began processing Plaintiff's request on January 8, 2008, and formally granted the request expedited processing status the following day, January 9, 2008.

3.    On April 4, 2008, the Court granted Plaintiff's motion for a preliminary injunction and ordered the Defendants "to respond to Plaintiff's FOIA request and provide an initial release of documents no later than April 17, 2008." The Court further ordered the Defendants "to provide a final release of all responsive, non-exempt documents no later than April 21, 2008." Finally, the Court directed the Defendants "to file with the Court and serve upon Plaintiff's counsel, an affidavit or declaration attesting to Defendant's compliance and setting forth the basis for withholding any responsive document it does not release." I submit this declaration to comply with the Court's order.[1]

### March 25 Interim Response

4.    On March 25, 2008, prior to the Court's order, OLC issued an interim response to Plaintiff's request. The response explained that OLC had completed searching its files and had identified nine unclassified records (totaling twenty-one pages) and four classified records (totaling fourteen pages) that are responsive to the request. We enclosed copies of two of the unclassified documents (two calendar entries totaling two pages with non-responsive entries redacted), withheld in full two unclassified documents (totaling two pages) pursuant to FOIA

---

[1] OLC submits this declaration without prejudice to its rights to provide additional information regarding the processing of Plaintiff's FOIA request or the reasons for any withholdings. OLC specifically reserves the right to submit additional information at the summary judgment stage or in other subsequent proceedings in this case.

Exemption Five, 5 U.S.C. § 552(b)(5),[2] and explained that the Office was consulting with other agencies and other components of the Department concerning the remaining documents.

5.    The two documents the Office withheld under FOIA Exemption Five are one-page e-mails sent by an OLC attorney to other attorneys in the Department, on December 15, 2007, and December 17, 2007, respectively. In both e-mails, the OLC attorney describes a conversation he had earlier in the day with an attorney for a telecommunications carrier and discusses whether the Department should support certain proposed amendments to FISA. Accordingly, as indicated in our March 25 interim response, both documents are highly deliberative and thus protected from disclosure by the privileges recognized under FOIA Exemption Five.

6.    Based on subsequent consultations, OLC has determined that the e-mails are protected from disclosure for an additional reason not referenced in our March 25 interim response:  Both documents contain information that could reveal the identity of telecommunication carriers that may have assisted, or may in the future assist, the Government in conducting electronic surveillance for foreign intelligence purposes. Such information is properly withheld under FOIA Exemption Three, 5 U.S.C. § 552(b)(3), because it directly implicates sensitive intelligence sources and methods protected from unauthorized disclosure by the National Security Act of 1947, as amended. *See* 50 U.S.C. § 403-1(i).

### April 17 Interim Response

7.    In light of the Court's April 4 order, OLC provided a second interim response on April 17, 2008. In that response, OLC indicated that it is withholding in full pursuant to FOIA

---

[2] Our March 25 interim response erroneously indicated that the two e-mails totaled four pages; in fact, the two e-mails total two pages.

Exemption Five the five unclassified documents identified in its March 25 interim response as requiring consultations. In addition, OLC explained that certain information in the documents is also protected from disclosure by FOIA Exemptions Two and Three, 5 U.S.C. §§ 552(b)(2)-(3).

8.    The documents addressed in our April 17 interim response are e-mails to or from attorneys in the Department. In three of the e-mails, attorneys from the Department or another government agency summarize recent conversations with Members of Congress concerning amendments to FISA and discuss possible legislative strategies. The remaining two e-mails forward communications between Department attorneys and attorneys for certain telecommunication carriers, in which the attorneys seek or discuss recommendations on legislative strategy. Given their highly deliberative nature, each of the five unclassified documents addressed in our April 17 interim response is protected by the privileges recognized by FOIA Exemption Five.

9.    In addition, portions of the five documents contain information that could reveal the identity of telecommunication carriers that may have assisted, or may in the future assist, the Government in conducting electronic surveillance for foreign intelligence purposes. Such information is properly withheld pursuant to FOIA Exemption Three because it directly implicates sensitive intelligence sources and methods protected from unauthorized disclosure by the National Security Act of 1947, as amended. *See* 50 U.S.C. § 403-1(i). Further, some of the e-mails contain non-public telephone numbers, non-public fax numbers, and non-public e-mail addresses used by Government employees in carrying out official business. Because disclosure of this information would not serve any public interest and could impede agencies' effectiveness (*e.g.*, by subjecting employees to harassing communications), OLC is withholding that information pursuant to FOIA Exemption Two.

4

10. Finally, based on recent consultations, OLC has concluded that one of the e-mails addressed in the April 17 interim response also contains information protected by FOIA Exemption Six, 5 U.S.C. § 552(b)(6). Specifically, one of the e-mails lists the name of a National Security Agency employee, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

April 21 Final Response

11. Today, April 21, 2008, OLC is providing a final response to Plaintiff's FOIA request, in which we address the four classified documents first identified in our March 25 interim response. Our letter explains that the Office of the Director of National Intelligence ("ODNI") and the Department's Office of Information and Privacy ("OIP") are responding directly to Plaintiff with respect to two of the documents. In particular, OLC understands that OIP is responding on (and releasing in redacted form) a three-page letter dated October 10, 2007, and that ODNI is responding on (and releasing in redacted form) a six-page letter dated December 18, 2007. Our letter also explains that OLC is withholding in full pursuant to FOIA Exemptions One, Three, and Five the remaining two documents, which total five pages.

12. The two classified documents that OLC is withholding consist of notes generated by an OLC attorney during meetings with Members of Congress. The notes are properly classified at the Top Secret level, which means that their unauthorized disclosure could reasonably be expected to cause exceptionally grave damage to the national security of the United States. Portions of the notes also contain information that implicates sensitive intelligence sources and methods protected from disclosure by the National Security Act of 1947, as amended. *See* 50 U.S.C. § 403-l(i). Finally, the notes are highly deliberative in nature; they reflect the thoughts and impressions of an OLC attorney concerning ongoing discussions with Members of Congress

5

concerning possible amendments to FISA. Accordingly, the Office is withholding the two documents pursuant to FOIA Exemptions One, Three, and Five, 5 U.S.C. § 552(b)(1), (3), (5).

13. In sum, OLC has completed processing Plaintiff's FOIA request. The Office identified nine unclassified documents (totaling twenty-one pages) and four classified documents (totaling fourteen pages) that are responsive to the request. It released two of the unclassified documents (totaling two pages); withheld in full the remaining seven unclassified documents (totaling nineteen pages); and withheld in full two classified documents (totaling five pages). ODNI and OIP are responding with respect to the two remaining classified documents (totaling nine pages).

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 21, 2008.

Paul P. Colborn

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 08-1023 (JSW) |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE | ) ) ) | |
| and | ) ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendants. | ) ) ) | |

DECLARATION OF THOMAS E. HITTER

I, Thomas E. Hitter, declare the following to be true and correct:

1) I am an Attorney-Advisor with the Office of Information and Privacy (OIP), United States Department of Justice. In this capacity, I am responsible for reviewing the actions of the Initial Request (IR) Staff before release determinations are made. The IR Staff is responsible for searching for and reviewing records within OIP and the senior leadership offices of the Department of Justice, including the Offices of the Attorney General, Legal Policy, and Legislative Affairs, in response to requests made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2006), amended by OPEN Government Act of 2007, Pub. L. No. 110-175, 121

Stat. 2524. The IR Staff determines whether records responsive to access requests exist and, if

so, whether they can be released in accordance with the FOIA. In processing such requests, the

IR Staff consults with personnel in the senior leadership offices and, when appropriate, with

other components within the Department of Justice as well as with other Executive Branch

entities.

2) I make the statements herein on the basis of my personal knowledge, as well as on

information that I acquired while performing my official duties.

3) As previously stated in Melanie Ann Pustay's declaration dated March 18, 2008

[hereinafter Pustay Declaration], which is hereby incorporated by reference, by letters dated

December 21, 2007, Marcia Hofmann, on behalf of plaintiff Electronic Frontier Foundation,

submitted three FOIA requests to OIP for records from the Offices of the Attorney General,

Legal Policy, and Legislative Affairs "from September 1, 2007 to the present concerning

briefings, discussions, or other exchanges that Justice Department officials have had with

1) members of the Senate or House of Representatives and 2) representatives or agents of

telecommunications companies concerning amendments to FISA, including any discussion

immunizing telecommunications companies or holding them otherwise unaccountable for their

role in government surveillance activities," (footnote omitted). Plaintiff also requested expedited

processing and a fee waiver. OIP received the request on December 27, 2007. (See Pustay

Declaration, attached hereto as Exhibit A.)[1]

4) On April 4, 2008, the Court in the above-captioned matter granted plaintiff's motion

_____

[1] The Pustay Declaration addresses OIP's acknowledgment of these requests, searches for responsive records, and processing of plaintiff's request through March 18, 2008.

for a preliminary injunction. The Court ordered defendants to "respond to Plaintiff's FOIA request and provide an initial release of documents no later than April 17, 2008." The Court further ordered defendants "to provide a final release of all responsive, non-exempt documents no later than April 21, 2008." The Court also directed the defendants to "file with the Court and serve upon Plaintiff's counsel, an affidavit or declaration attesting to Defendants' compliance and setting forth the basis for withholding any responsive documents it does not release," by April 21, 2008. This declaration is provided to the Court and plaintiff, pursuant to this order.[2]

5)  As stated in the Pustay Declaration, OIP's search located 147 documents, totaling 1552 pages, in the Office of Legislative Affairs (OLA) that were potentially responsive. Also, nine documents, totaling 233 pages, of potentially responsive material were located in the Office of Legal Policy (OLP). Lastly, 355 documents, totaling 913 pages, of potentially responsive material were located in the Office of the Attorney General.

6)  Throughout the pendency of this litigation, OIP has continued to review the universe of material initially located and identified as responsive. We have determined that many of the records located are not, in fact, responsive to plaintiff's FOIA request. In those instances, non-responsive documents were removed or the non-responsive portions, of otherwise responsive documents, have been blacked-out and only the responsive portions of the documents have been processed. Furthermore, many pages were found duplicative, and were removed accordingly.

---

[2] OIP submits this declaration without prejudice to its rights to provide additional information regarding the processing of Plaintiff's FOIA request or the reasons for any withholdings. OIP specifically reserves the right to submit additional information in summary judgment or other subsequent proceedings in this case.

7) By letter dated April 3, 2008, OIP released to plaintiff, one document, consisting of five pages, without excision.

8) By memorandum dated April 4, 2008, OIP referred six documents, totaling 141 pages, to the Department of Justice's National Security Division (NSD) for processing and direct response to plaintiff. Please refer to the declaration of GayLa D. Sessoms (NSD) regarding the processing of these documents.

9) By memorandum dated April 4, 2008, OIP referred three documents, totaling nine pages, to the Department of Justice's Civil Division for processing and direct response to plaintiff. Please refer to the declaration of James M. Kovakas (Civil Division) regarding the processing of these documents.

10) By memorandum dated April 4, 2008, OIP referred three documents, totaling nine pages, to the Office of the Director of National Intelligence (ODNI) for processing and direct response to plaintiff. Please refer to the declaration of John F. Hackett (ODNI) regarding the processing of these documents.

11) By memorandum dated April 4, 2008, OIP referred two classified documents, totaling fifteen pages, to the Federal Bureau of Investigation (FBI) for processing and direct response to plaintiff. Please refer to the declaration of David M. Hardy (FBI) regarding the processing of these documents.

12) By letter dated April 21, 2008, OIP provided plaintiff with a final response to its FOIA requests. OIP released fifty-two documents, totaling 293 pages, in their entirety, and two documents, totaling three pages, were released with excisions made pursuant to Exemptions 2 and 5 of the FOIA, 5 U.S.C. § 552(b)(2) and (5). OIP also informed plaintiff that the responsive

-4-

portions of one document, totaling two pages, was being withheld pursuant to FOIA Exemption 5 and the remaining portions were not responsive to the request. The responsive portions of this document consists of electronic mail (e-mail messages) in which Department of Justice officials discuss the positions certain senators have taken on proposed amendments to the Foreign Intelligence Surveillance Act. Accordingly, a copy of this two-page document was withheld in full.

13) With respect to the information withheld pursuant to FOIA Exemption 2, which protects information related solely to the internal personnel rules and practices of an agency, redactions were made on document number OLA-90 which consists of one page. The redacted information consists of contact information of intelligence agency employees. This information was withheld at the request of the ODNI.

14) With respect to the information withheld pursuant to FOIA Exemption 5, which pertains to certain inter- and intra-agency communications protected by the deliberative process privilege, redactions were made on document number OAG-22 which consists of two pages. The redacted information consists of a brief analysis between Department personnel regarding testimony before Congress. This withholding was made on behalf of the Department's Office of Legal Counsel.

15) In addition to the documents found by OIP during the course of its search, as explained further below, OIP received referrals of documents from three agencies for processing and direct response to plaintiff. By electronic mail (e-mail) message sent April 4, 2008, the NSD forwarded nine documents, totaling thirty-two pages, to OIP for processing and direct response to plaintiff. Upon review, OIP determined that seven of these documents, totaling twenty-eight

pages, were duplicates of documents located during OIP's search, and were being processed

pursuant to the request to OIP. The remaining two documents, totaling four pages, were released

in full to plaintiff in OIP's letter dated April 21, 2008.

16) By Facsimile dated April 18, 2008, the NSD, on behalf of the Office of Legal

Counsel, forwarded one classified document, totaling three pages, to OIP for processing and

direct response to plaintiff. This document was released in part to plaintiff in OIP's letter dated

April 21, 2008, with excisions made by NSD pursuant to Exemption 1 of the FOIA,

5 U.S.C. § 552(b)(1). It is my understanding that the withheld information is currently and

properly classified under Executive Order 12958, as amended. Specifically, it is my

understanding that the withheld information contained in these documents meets the criteria for

classification as set forth in subparagraphs (c) and (g) of Section 1.4 of Executive Order 12958,

as amended, which authorizes the classification of information concerning "intelligence activities

(including special activities), intelligence sources or methods, or cryptology," and "vulnerabilities

or capabilities of systems, installations, infrastructures, projects, plans, or protection systems

relating to national security, which includes defense against transnational terrorism." It is my

understanding that the withheld information is classified at the secret and top secret levels, which

means that its unauthorized disclosure could reasonably be expected to cause serious and in some

instances exceptionally grave damage to the national security of the United States. It is also my

understanding that none of the information being withheld is appropriate for discretionary

release. Additionally, it is my understanding that the withheld information is protected from

disclosure pursuant to other statutes, in this instance, 50 U.S.C. § 403-1(i), 18 U.S.C. § 798, and

50 U.S.C. § 402 note and is therefore also withheld pursuant to Exemption 3.

-6-

17)  By e-mail message sent April 15, 2008, the ODNI forwarded one document, totaling one page, for processing and direct response to plaintiff.  In its letter dated April 21, 2008, OIP advised plaintiff that the referred document is being withheld in its entirety pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5) which pertains to certain inter- and intra-agency communications protected by the presidential communications privilege.  This document is an e-mail from a Department of Justice official written to several White House officials providing a candid analysis of and comments on, a briefing given to certain members of Congress regarding amendments to the FISA.  The underlying purposes of the presidential communications privilege are the same as those of the deliberative process privilege, but they take on a distinct significance at the level of presidential decisionmaking.  Advisers must feel free to give the most candid and thorough advice possible in order for the President's decisionmaking process to be effective.  The President is the ultimate decisionmaker on Executive Branch positions regarding amendments to the FISA.  He, and his advisors must be free to solicit the advice of the Department of Justice without fear of those communications being disclosed.  Because the protected document was sent by a high-ranking Department of Justice official to the White House regarding a presidential decision, the document and a description of the document are protected by the presidential communications privilege and, as such, the document is exempt in full and contains no reasonably segregable, non-exempt information.

18)  In sum, OIP has released fifty-fifty documents in full, three in part, withheld two documents in their entirety, and referred fourteen documents to other offices for processing and direct response to the requester.  The processing of plaintiff's request is complete.

I declare under penalty of perjury that the foregoing is true and correct.


THOMAS E. HITTER

Executed this 21st day of April, 2008.

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |  |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 08-1023 (JSW) |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE | ) ) ) ) | |
| and | ) ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF MELANIE ANN PUSTAY

I, Melanie Ann Pustay, declare the following to be true and correct:

1) I am the Director of the Office of Information and Privacy (OIP), United States

Department of Justice. In this capacity, I am responsible for overseeing the actions of the Initial

Request (IR) Staff. The IR Staff is responsible for searching for and reviewing records of the

Senior Leadership Offices of the Department of Justice, including the Offices of the Attorney

General, Legal Policy, and Legislative Affairs, in response to requests made under the Freedom

of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. IV 2004). The IR Staff determines

whether records responsive to access requests exist and, if so, whether they can be released in

-1-

accordance with the FOIA. In processing such requests, the IR Staff consults with personnel in the senior leadership offices and, when appropriate, with other components within the Department of Justice, as well as with other Executive Branch agencies.

2) I make the statements herein on this basis of my personal knowledge, as well as on information that I acquired while performing my official duties.

OIP's Processing of Plaintiff's Requests

3) By letters dated December 21, 2007, Marcia Hofmann, on behalf of plaintiff Electronic Frontier Foundation, submitted three FOIA requests to OIP for records from the Offices of the Attorney General, Legal Policy, and Legislative Affairs dated "from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications companies concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities" (footnote omitted). Plaintiff also requested expedited processing and a fee waiver. OIP received the request on December 27, 2007. (Copies of plaintiff's three initial request letters are attached hereto as Exhibit A.)

4) By letter dated December 28, 2007, OIP acknowledged receipt of plaintiff's FOIA requests and granted plaintiff's request for expedited processing. Plaintiff was advised that searches had been initiated in the Offices of the Attorney General, Legal Policy, and Legislative Affairs. OIP also advised plaintiff that we were deferring a decision on its fee waiver request until we determined whether any fees would be incurred in the processing of plaintiff's requests. (A copy of OIP's December 28, 2007 letter is attached hereto as Exhibit B.)

-2-

5) As soon as plaintiff's requests were granted expedited processing, each request was given priority at OIP and moved ahead of requests received at an earlier date in OIP's regular queue. Pursuant to Department of Justice regulation 28 C.F.R. § 16.5(d)(4) (2007) these requests are being processed as soon as practicable.

6) By memoranda dated December 28, 2007, records searches were initiated in the Offices of the Attorney General, Legal Policy, and Legislative Affairs. These Offices were advised that the requests had been granted expedited processing. The practice for these three Offices is to notify each individual staff member in that Office of the receipt of OIP's memoranda requesting that a search be conducted, and each staff member's files, both paper and electronic, are then searched as necessary for records responsive to the request. A search of this nature typically involves hand searches of large paper files, as well as a vast number of e-mail files. Furthermore, because the files at issue are current, they were physically located in the individual offices of senior Department officials. Most of these officials personally conducted the search for any responsive records that they might possess. While the officials in these Offices make every effort to respond to our search memoranda in a timely fashion, it is not always possible for senior Department officials to stop their pressing day-to-day duties in order to immediately perform a search for records responsive to a FOIA request. These officials and employees performed the necessary searches as soon as it was practicable to do so.

### Office of Legislative Affairs

7) By memorandum dated January 29, 2008, the Office of Legislative Affairs (OLA) informed OIP that it had identified both classified and unclassified records potentially responsive to plaintiff's request to OLA, including potentially responsive electronic mail (e-mail) messages of one

-3-

record custodian, that needed to be searched.

8) On February 1, 2008, after the FOIA Specialist assigned to plaintiff's requests left the Department, OIP reassigned plaintiff's requests to a Senior FOIA Specialist.

9) During the week of February 25, 2008, a FOIA Specialist contacted a staff member in OLA to arrange a time for OIP to retrieve the potentially responsive material OLA identified.

10) On March 7, 2008, a FOIA Specialist retrieved the unclassified potentially responsive records from OLA. On March 11, 2008, a FOIA Specialist retrieved the one classified potentially responsive record from OLA.

11) On March 11, 2008, the Senior FOIA Specialist assigned to plaintiff's request completed an initial review of the potentially responsive documents retrieved from OLA.

12) On March 11, 2008, a Senior Attorney at OIP contacted the Justice Management Division requesting a remote access point in the Justice Consolidated Office Network that allows OIP to search e-mail messages of certain record custodians in the Senior Leadership Offices. This was done in order to most efficiently search the e-mail records of the custodian in OLA who had indicated he had responsive e-mail.

13) On March 12 through 14, 2008, OIP conducted an e-mail search in the Enterprise Vault of the OLA custodian who indicated that there may be responsive e-mail records. Those e-mail messages that appeared responsive to plaintiff's request were printed for further processing and review by OIP's IR Staff.

14) On March 17, 2008, the Senior FOIA Specialist assigned to plaintiff's requests completed an initial review of the potentially responsive e-mail messages located in OLA.

## Office of Legal Policy

15) By memorandum dated February 27, 2008, the Office of Legal Policy (OLP) advised OIP that its search was complete. OLP forwarded to OIP records potentially responsive to plaintiff's request to OLP.

16) On February 29, 2008, a FOIA Specialist conducted an initial review of the potentially responsive documents forwarded to OIP by OLP.

## Office of the Attorney General

17) On February 28, 2008, an Attorney-Advisor at OIP contacted the Office of the Attorney General regarding the status of that Office's search.

18) On March 4, 2008, a staff member in the Office of the Attorney General contacted the Senior FOIA Specialist assigned to plaintiff's request. She advised him that at least one staff member in the Office of the Attorney General had identified records that were potentially responsive to plaintiff's request and that other staff members were still searching.

19) On March 4, 2008, the Senior FOIA Specialist assigned to plaintiff's request retrieved potentially responsive records from the Office of the Attorney General files that had been identified as of that date.

20) On March 11, 2008, OIP searched the electronic database of the Departmental Executive Secretariat, which uses a central database to control and track certain incoming and outgoing correspondence for the Office of the Attorney General and for certain records of OLA. Those documents that appeared responsive to plaintiff's request were retrieved for further processing and review by OIP's IR Staff.

21) On March 13, 2008, a senior official in the Office of the Attorney General advised me that the search in that Office was complete. On March 14, 2008, potentially responsive records from the Office of the Attorney General were forwarded to OIP for further review.

22) On March 17, 2008, the Senior FOIA Specialist assigned to plaintiff's request completed an initial review of the potentially responsive records forwarded by the Office of the Attorney General to OIP.

### Current Status Of Plaintiff's FOIA Requests

23) All searches for responsive records have now been completed. In the Office of Legislative Affairs, 147 documents, totaling 1552 pages, were located. Also, nine documents, totaling 233 pages, of responsive material were located in the Office of Legal Policy. Lastly, 355 documents, totaling 913 pages, of responsive material were located in the Office of the Attorney General. OIP is in the process of further review of these documents. During that process it is likely that adjustments to these page counts will be made as duplicate and non-responsive material is identified and culled from the other documents.

24) The records located all require further review, including consultations with multiple Department components and other Executive Branch agencies, before a response can be provided. Such consultations are required by Department of Justice regulation 28 C.F.R. § 16.4(c)(1), and are appropriate because other components within the Department and other Executive Branch agencies have an interest in the documents. In fact, none of the documents originate with OIP and so disclosure determinations necessarily must be made in consultation with the originating offices. Many of these consultations will need to be conducted in stages, as certain offices need to know the views of other offices in order to make their disclosure determinations. Until these steps are

completed, OIP cannot complete the processing of the documents and make a final response to plaintiff.

25) Additionally, OIP has located the existence of classified material, which adds significantly to the complexities attendant to processing a FOIA request. The responsive document that contains classified information must undergo an additional time-intensive review to ensure that the document is appropriately classified in accordance with Executive Order 12958, as amended. Such review also includes a page-by-page and line-by-line review of the document to determine which, if any, FOIA exemptions may apply. In light of the sensitive nature of classified information, potentially responsive material must also be reviewed by offices and agencies with equities in the document to ensure that no improper disclosures are made.

26) OIP will make every effort to process these requests as soon as practicable and is willing to provide the court with status reports every thirty days regarding its progress. I anticipate that OIP's first round of consultations will be sent to other Department components and other Executive Branch agencies that have an interest in the documents by March 28, 2008.

27) By April 14, 2008, OIP anticipates being able to provide plaintiff with an interim response concerning those documents which do not require further consultations.

28) I anticipate that OIP's second round of consultations will be sent to the remaining Department components and other Executive Branch agencies that have an interest in the documents by April 30, 2008.

29) By May 23, 2008, assuming all consultation responses have been returned, OIP anticipates being able to provide plaintiff with a final response addressing the remaining documents.

30) Plaintiff's request that OIP complete the processing of its three FOIA requests within ten days is simply not practicable. OIP is devoting appropriate resources and effort to processing

plaintiff's FOIA requests as soon as practicable. Plaintiff's request for release of records within ten

days is not practicable because OIP has identified records that require consultations with other

agencies, as well as a classified record that requires multiple layers of review. Imposing a ten-day

deadline would increase the chances of an inadvertent disclosure of classified national security

information, as well as information otherwise protected from release under FOIA. In addition,

although plaintiff's requests have been granted expedited treatment and are being processed

accordingly, due to the many consultations that must be conducted with other offices, and due to the

pressing concerns those other offices face on a daily basis, the proposed response time is

practicable.

I declare under penalty of perjury that the foregoing is true and correct.

MELANIE ANN PUSTAY

Executed this **18** day of March, 2008.

# EXHIBIT

# A

DEC 2 7 2007

# RECEIVED

**E F** **Electronic Frontier Foundation**

454 Shotwell Street
San Francisco, CA 94110
+1 415 436 9333 (tel)
+1 415 436 9993 (fax)

## FAX COVER SHEET

**DATE:**        December 21, 2007

**TO:**          Carmen L. Mallon, OIP, DOJ

**Fax Number:**  (202) 514-1009

**FROM:**        Marcia Hofmann, Electronic Frontier Foundation

**RE:**          **Freedom of Information Act Requests and Requests for Expedited Processing**

**Pages sent:**  30 including cover page

## COMMENTS:

Dear Ms. Mallon,

Following please find three separate FOIA requests and requests for expedited processing, along with the supporting enclosures referenced by all three. If you have any questions or concerns, please call at (415) 436-9333 x. 116.

Thank you,

Marcia

NOTICE This fax is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure. If you are not the intended recipient or his or her agent, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and asked to please notify us immediately by telephone. Thank you.

PLEASE CALL IF THERE IS A PROBLEM



 **Electronic Frontier Foundation**

December 21, 2007

**VIA FACSIMILE** — (202) 514-1009

Carmen L. Mallon
Chief of Staff
Office of Information and Privacy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, DC 20530-0001

RE:    **Freedom of Information Act Request and Request for Expedited Processing**

Dear Ms. Mallon:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Justice Office of the Attorney General on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On August 5, 2007, President Bush signed into law the Protect America Act, legislation which amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power to intercept communications without warrants, as well as shield telecommunications companies from future liability for their role in such activity.

Since the passage of this law, the Administration has tried to convince Congress to amend FISA to make it impossible for courts to impose liability on telecommunications companies for participating in a massive and illegal warrantless spying operation conducted by the National Security Agency. *See* Signing Statement, *President Bush Commends Congress on Passage of Intelligence Legislation*, Aug. 6, 2007; James Risen, Bush Signs Law to Widen Reach for Wiretapping, *NY Times*, Aug, 6, 2007; Mark Hosenball and Michael Isikoff, Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About, *Newsweek*, updated Sept. 26, 2007, *available at* http://www.newsweek.com/id/41142; Eric Lichtblau, James Risen and Scott Shane, Wider Spying Fuels Aid Plan for Telecom Industry, *NY Times*, Dec. 16, 2007.

We are seeking all agency records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications

**454 Shotwell Street, San Francisco, CA 94110 USA**
**+1 415 436 9333 (v) +1 415 436 9993 (f) www.eff.org**

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 2

companies[1] concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities. This request includes, but is not limited to, all e-mail, appointment calendars, telephone message slips, or other records indicating that such briefings, discussions, or other exchanges took place.

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information about which there is "[a]n urgency to inform the public about an actual or alleged federal government activity," and it is "made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii). The information we request easily satisfies this standard.

As an initial matter, it is worth noting that the DOJ and Office of the Director of National Intelligence recently granted expedited processing for FOIA requests nearly identical to this one (see DOJ and ODNI letters granting expedited processing attached hereto).

The federal government activity at issue here — DOJ efforts to secure immunity for telecoms engaged in illegal surveillance — raises serious questions about the DOJ's interests in revision of the FISA. Moreover, the Protect America Act includes a sunset provision requiring Congress to decide within weeks whether to reauthorize the legislation. This decisionmaking process has involved, and will continue to involve, congressional debate about whether to expand the law further, and if so, how much. Because Congress will imminently consider modifying FISA again, there is an urgency to inform the public about the lobbying forces pushing for reform of the law. The information we have requested will help the public and Congress fully participate in the current and ongoing debate over whether the government's authority to conduct electronic surveillance should be further expanded and facilitated by telecommunications companies.

The purpose of this request is to obtain information directly relevant to the DOJ's communications with members of Congress and telecommunications carriers about updating FISA to grant the companies retroactive immunity for illegal activities. There is an urgency to inform the public about the information we seek. Therefore, this request clearly meets the

---

[1] The phrase "representatives or agents of telecommunications companies" is intended to include lobbyists and lawyers acting on behalf of such companies. According to Newsweek, these individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff, Case Dismissed?, *Newsweek*, updated Sept. 26, 2007.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 3

standard for expedited processing set forth in DOJ regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is
"primarily engaged in disseminating information."

## Request for News Media Fee Status

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a
"representative of the news media" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(6). In
requesting this classification, we note that the Department of Homeland Security and Department
of State have recognized that EFF qualifies as a "news media" requester based upon the
publication activities set forth below (see DHS stipulation and State Department letter attached
hereto). In addition, the National Security Agency has previously determined that EFF is not
only a "news media requester," but also "primarily engaged in disseminating information" for
purposes of expedited processing (see attached EFF FOIA request and NSA response, in which
EFF requested expedited processing because it sought information "urgently needed by an
individual primarily engaged in disseminating information in order to inform the public
concerning actual or alleged Federal Government activity," and NSA granted the request). We
further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different
agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d
300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280,
1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil
liberties in the digital age."[2]  One of EFF's primary objectives is "to educate the press,
policymakers and the general public about online civil liberties."[3]  To accomplish this goal, EFF
routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received
46,682,194 hits in July 2007 — an average of 62,744 per hour.  The web site reports the latest
developments and contains in-depth information about a variety of civil liberties and intellectual
property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990.  The EFFector
currently has more than 77,000 subscribers.  A complete archive of past EFFectors is available at
http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet.
DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in

---

[2] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/
pqShowGsReport.do?npoId=561625 (last visited Dec. 18, 2007).
[3] *Id.*

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 4

technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 510,633 hits in July 2007.[4]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 2,600 times from EFF's in July 2007.

Due to these extensive publication activities, EFF is a "representative of the news media" under the FOIA and agency regulations.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k). To determine whether a request meets this standard, Department of Justice components determine whether "[d]isclosure of the requested information is likely to contribute significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. §§ 16.11(k)(i), (ii). This request clearly satisfies these criteria.

First, the DOJ's relationship with telecommunications companies concerns "the operations or activities of the government." 28 C.F.R. § 16.11(k)(2)(i). Furthermore, the DOJ's push to amend

---

[4] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 5

FISA unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on how and why the DOJ is lobbying to immunize telecommunications companies from liability for their role in conducting illegal surveillance.

Third, the requested material will "contribute to public understanding" of the DOJ's efforts to modify FISA. 28 C.F.R. § 16.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of the reasons why and manner in which the DOJ is lobbying for legal reform, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of the DOJ's push to amend FISA to protect telecommunications companies. 28 C.F.R. § 16.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested information will help inform the public about the Justice Department's efforts to reform the law and the interests behind them, as well as contribute to the public debate about whether FISA should be further modified.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 28 C.F.R. § 16.11(k)(3). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Thank you for your consideration of this request. As applicable Department regulations provide, we will anticipate your determination within ten (10) calendar days. 28 C.F.R. § 16.5(d)(1). Please be advised that, given the urgency of this matter, EFF intends to seek immediate judicial relief if a response to this request for expedition is not issued in a timely manner.

Sincerely,

Marcia Hofmann
Staff Attorney

Enclosures

OLA/08-R0184
JNJ

 **Electronic Frontier Foundation**

December 21, 2007

**VIA FACSIMILE** — (202) 514-1009

Carmen L. Mallon
Chief of Staff
Office of Information and Privacy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, DC 20530-0001

　　　**RE:** **Freedom of Information Act Request and Request for Expedited Processing**

Dear Ms. Mallon:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552, and is submitted to the Department of Justice Office of Legislative Affairs on
behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's
FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain
government documents and make them widely available to the public.

On August 5, 2007, President Bush signed into law the Protect America Act, legislation which
amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power
to intercept communications without warrants, as well as shield telecommunications companies
from future liability for their role in such activity.

Since the passage of this law, the Administration has tried to convince Congress to amend FISA
to make it impossible for courts to impose liability on telecommunications companies for
participating in a massive and illegal warrantless spying operation conducted by the National
Security Agency. *See* Signing Statement, *President Bush Commends Congress on Passage of
Intelligence Legislation*, Aug. 6, 2007; James Risen, Bush Signs Law to Widen Reach for
Wiretapping, *NY Times*, Aug, 6, 2007; Mark Hosenball and Michael Isikoff, Case Dismissed?:
The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About,
*Newsweek*, updated Sept. 26, 2007, *available at* http://www.newsweek.com/id/41142; Eric
Lichtblau, James Risen and Scott Shane, Wider Spying Fuels Aid Plan for Telecom Industry, *NY
Times*, Dec. 16, 2007.

We are seeking all agency records from September 1, 2007 to the present concerning briefings,
discussions, or other exchanges that Justice Department officials have had with 1) members of
the Senate or House of Representatives and 2) representatives or agents of telecommunications

**454 Shotwell Street, San Francisco, CA 94110 USA**
**+1 415 436 9333 (v) +1 415 436 9993 (f) www.eff.org**

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 2

companies[1] concerning amendments to FISA, including any discussion of immunizing
telecommunications companies or holding them otherwise unaccountable for their role in
government surveillance activities. This request includes, but is not limited to, all e-mail,
appointment calendars, telephone message slips, or other records indicating that such briefings,
discussions, or other exchanges took place.

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information about which there
is "[a]n urgency to inform the public about an actual or alleged federal government activity," and
it is "made by a person primarily engaged in disseminating information." 28 C.F.R. §
16.5(d)(1)(ii). The information we request easily satisfies this standard.

As an initial matter, it is worth noting that OLA recently granted expedited processing for two
FOIA requests nearly identical to this one (see EFF request letters seeking expedited processing
and OLA letter granting expedited processing attached hereto).

The federal government activity at issue here — DOJ efforts to secure immunity for telecoms
engaged in illegal surveillance — raises serious questions about the DOJ's interests in revision of
the FISA. Moreover, the Protect America Act includes a sunset provision requiring Congress to
decide within weeks whether to reauthorize the legislation. This decisionmaking process has
involved, and will continue to involve, congressional debate about whether to expand the law
further, and if so, how much. Because Congress will imminently consider modifying FISA again,
there is an urgency to inform the public about the lobbying forces pushing for reform of the law.
The information we have requested will help the public and Congress fully participate in the
current and ongoing debate over whether the government's authority to conduct electronic
surveillance should be further expanded and facilitated by telecommunications companies.

The purpose of this request is to obtain information directly relevant to the DOJ's
communications with members of Congress and telecommunications carriers about updating
FISA to grant the companies retroactive immunity for illegal activities. There is an urgency to
inform the public about the information we seek. Therefore, this request clearly meets the

---

[1] The phrase "representatives or agents of telecommunications companies" is intended to include
lobbyists and lawyers acting on behalf of such companies. According to Newsweek, these
individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black
and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and
U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing
Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom
Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law
firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under
President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff,
Case Dismissed?, *Newsweek*, updated Sept. 26, 2007.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 3

standard for expedited processing set forth in DOJ regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information."

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a "representative of the news media" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(6). In requesting this classification, we note that the Department of Homeland Security and Department of State have recognized that EFF qualifies as a "news media" requester based upon the publication activities set forth below (see DHS stipulation and State Department letter attached hereto). In addition, the National Security Agency has previously determined that EFF is not only a "news media requester," but also "primarily engaged in disseminating information" for purposes of expedited processing (see attached EFF FOIA request and NSA response, in which EFF requested expedited processing because it sought information "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity," and NSA granted the request). We further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[2]  One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[3]  To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received 46,682,194 hits in July 2007 — an average of 62,744 per hour. The web site reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet. DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in

---

[2] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/
pqShowGsReport.do?npoId=561625 (last visited Dec. 18, 2007).
[3] *Id.*

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 4

technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 510,633 hits in July 2007.[4]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 2,600 times from EFF's in July 2007.

Due to these extensive publication activities, EFF is a "representative of the news media" under the FOIA and agency regulations.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k). To determine whether a request meets this standard, Department of Justice components determine whether "[d]isclosure of the requested information is likely to contribute significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. §§ 16.11(k)(i), (ii). This request clearly satisfies these criteria.

First, the DOJ's relationship with telecommunications companies concerns "the operations or activities of the government." 28 C.F.R. § 16.11(k)(2)(i). Furthermore, the DOJ's push to amend

---

[4] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 5

FISA unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on how and why the DOJ is lobbying to immunize telecommunications companies from liability for their role in conducting illegal surveillance.

Third, the requested material will "contribute to public understanding" of the DOJ's efforts to modify FISA. 28 C.F.R. § 16.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of the reasons why and manner in which the DOJ is lobbying for legal reform, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of the DOJ's push to amend FISA to protect telecommunications companies. 28 C.F.R. § 16.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested information will help inform the public about the Justice Department's efforts to reform the law and the interests behind them, as well as contribute to the public debate about whether FISA should be further modified.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 28 C.F.R. § 16.11(k)(3). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Thank you for your consideration of this request. As applicable Department regulations provide, we will anticipate your determination within ten (10) calendar days. 28 C.F.R. § 16.5(d)(1). Please be advised that, given the urgency of this matter, EFF intends to seek immediate judicial relief if a response to this request for expedition is not issued in a timely manner.

Sincerely,

Marcia Hofmann
Staff Attorney

Enclosures

 **Electronic Frontier Foundation**

December 21, 2007

**VIA FACSIMILE — (202) 514-1009**

Carmen L. Mallon
Chief of Staff
Office of Information and Privacy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, DC 20530-0001

RE:     <u>Freedom of Information Act Request and Request for Expedited Processing</u>

Dear Ms. Mallon:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Justice Office of Legal Policy on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On August 5, 2007, President Bush signed into law the Protect America Act, legislation which amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power to intercept communications without warrants, as well as shield telecommunications companies from future liability for their role in such activity.

Since the passage of this law, the Administration has tried to convince Congress to amend FISA to make it impossible for courts to impose liability on telecommunications companies for participating in a massive and illegal warrantless spying operation conducted by the National Security Agency. *See* Signing Statement, *President Bush Commends Congress on Passage of Intelligence Legislation*, Aug. 6, 2007; James Risen, Bush Signs Law to Widen Reach for Wiretapping, *NY Times*, Aug, 6, 2007; Mark Hosenball and Michael Isikoff, Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About, *Newsweek*, updated Sept. 26, 2007, *available at* http://www.newsweek.com/id/41142; Eric Lichtblau, James Risen and Scott Shane, Wider Spying Fuels Aid Plan for Telecom Industry, *NY Times*, Dec. 16, 2007.

We are seeking all agency records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications

**454 Shotwell Street, San Francisco, CA 94110 USA**
**+1 415 436 9333 (v) +1 415 436 9993 (f) www.eff.org**

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 2

companies[1] concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities. This request includes, but is not limited to, all e-mail, appointment calendars, telephone message slips, or other records indicating that such briefings, discussions, or other exchanges took place.

## Request for Expedited Processing

This request warrants expedited processing because it pertains to information about which there is "[a]n urgency to inform the public about an actual or alleged federal government activity," and it is "made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii). The information we request easily satisfies this standard.

As an initial matter, it is worth noting that the DOJ and Office of the Director of National Intelligence recently granted expedited processing for FOIA requests nearly identical to this one (see DOJ and ODNI letters granting expedited processing attached hereto).

The federal government activity at issue here — DOJ efforts to secure immunity for telecoms engaged in illegal surveillance — raises serious questions about the DOJ's interests in revision of the FISA. Moreover, the Protect America Act includes a sunset provision requiring Congress to decide within weeks whether to reauthorize the legislation. This decisionmaking process has involved, and will continue to involve, congressional debate about whether to expand the law further, and if so, how much. Because Congress will imminently consider modifying FISA again, there is an urgency to inform the public about the lobbying forces pushing for reform of the law. The information we have requested will help the public and Congress fully participate in the current and ongoing debate over whether the government's authority to conduct electronic surveillance should be further expanded and facilitated by telecommunications companies.

The purpose of this request is to obtain information directly relevant to the DOJ's communications with members of Congress and telecommunications carriers about updating FISA to grant the companies retroactive immunity for illegal activities. There is an urgency to inform the public about the information we seek. Therefore, this request clearly meets the

---

[1] The phrase "representatives or agents of telecommunications companies" is intended to include lobbyists and lawyers acting on behalf of such companies. According to Newsweek, these individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff, *Case Dismissed?*, *Newsweek*, updated Sept. 26, 2007.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 3

standard for expedited processing set forth in DOJ regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is
"primarily engaged in disseminating information."

### Request for News Media Fee Status

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a
"representative of the news media" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(6). In
requesting this classification, we note that the Department of Homeland Security and Department
of State have recognized that EFF qualifies as a "news media" requester based upon the
publication activities set forth below (see DHS stipulation and State Department letter attached
hereto). In addition, the National Security Agency has previously determined that EFF is not
only a "news media requester," but also "primarily engaged in disseminating information" for
purposes of expedited processing (see attached EFF FOIA request and NSA response, in which
EFF requested expedited processing because it sought information "urgently needed by an
individual primarily engaged in disseminating information in order to inform the public
concerning actual or alleged Federal Government activity," and NSA granted the request). We
further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different
agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d
300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280,
1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil
liberties in the digital age."[2] One of EFF's primary objectives is "to educate the press,
policymakers and the general public about online civil liberties."[3] To accomplish this goal, EFF
routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received
46,682,194 hits in July 2007 — an average of 62,744 per hour. The web site reports the latest
developments and contains in-depth information about a variety of civil liberties and intellectual
property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector
currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at
http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet.
DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in

---

[2] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/
pqShowGsReport.do?npoId=561625 (last visited Dec. 18, 2007).
[3] *Id.*

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 4

technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 510,633 hits in July 2007.[4]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 2,600 times from EFF's in July 2007.

Due to these extensive publication activities, EFF is a "representative of the news media" under the FOIA and agency regulations.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k). To determine whether a request meets this standard, Department of Justice components determine whether "[d]isclosure of the requested information is likely to contribute significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. §§ 16.11(k)(i), (ii). This request clearly satisfies these criteria.

First, the DOJ's relationship with telecommunications companies concerns "the operations or activities of the government." 28 C.F.R. § 16.11(k)(2)(i). Furthermore, the DOJ's push to amend

---

[4] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 5

FISA unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on how and why the DOJ is lobbying to immunize telecommunications companies from liability for their role in conducting illegal surveillance.

Third, the requested material will "contribute to public understanding" of the DOJ's efforts to modify FISA. 28 C.F.R. § 16.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of the reasons why and manner in which the DOJ is lobbying for legal reform, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of the DOJ's push to amend FISA to protect telecommunications companies. 28 C.F.R. § 16.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested information will help inform the public about the Justice Department's efforts to reform the law and the interests behind them, as well as contribute to the public debate about whether FISA should be further modified.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 28 C.F.R. § 16.11(k)(3). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Thank you for your consideration of this request. As applicable Department regulations provide, we will anticipate your determination within ten (10) calendar days. 28 C.F.R. § 16.5(d)(1). Please be advised that, given the urgency of this matter, EFF intends to seek immediate judicial relief if a response to this request for expedition is not issued in a timely manner.

Sincerely,

Marcia Hofmann
Staff Attorney

Enclosures



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

AUG 27 2007

Ms. Marcia Hofmann
Electronic Frontier Foundation
Suite 650                                    Re:    OLA/07-R0909
1875 Connecticut Avenue, NW                          OLA/07-R0910
Washington, DC 20009                                 MLF:JNJ

Dear Ms. Hofmann:

This is to acknowledge receipt of your two letters dated August 16, 2007, which were
received in this Office on August 17, 2007, in which you requested all records of
communications between the Department of Justice and Congress and between Justice and
telecommunications companies from December 2005 to the present concerning amendments to
the Foreign Intelligence Surveillance Act. This response is made on behalf of the Office of
Legislative Affairs.

I have determined that for purposes of these requests, it is appropriate to afford them
expedited processing. At this time, your requests have been assigned to a FOIA Specialist in this
Office and a records search has been initiated in the Office of Legislative Affairs.

We have not yet made a decision on your requests for fee waivers. We will do so after
we determine whether fees will be assessed for these requests.

If you have any questions or wish to discuss the processing of your requests, you may
contact Julie N. Johns, the analyst processing your requests, by telephone at the above number or
you may write to her at the above address.

Sincerely,

Carmen L. Mallon
Chief of Staff

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
DIRECTOR OF THE INTELLIGENCE STAFF


Mr. John F. Hackett
Chief, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 600
Washington, DC 20009

Reference:  DF-2007-00079

Dear Ms. Hofmann:

On 4 September 2007 the Office of the Director of National Intelligence received your facsimile dated 31 August 2007, wherein you requested under the Freedom of Information Act (FOIA) records concerning:

> "... ODNI's communications with telecommunications companies about updating FISA to provide them retroactive legal immunity for illegal activities."

We accept your request and have assigned it the reference number above.  Please use this number when corresponding with us so that we can identify it easily.  In addition, your request for expedited processing is granted and your request will be processed as soon as practicable.

If you have any questions you may contact the FOIA Requester Service Center at 571-204-4774.


Sincerely,

John F. Hackett
Director, Information Management Office

SEP-10-2007 11:24 From:                    7034822144            To:2027979066           P.3/5

IMS/IRRG/PIPD/carey/.../6 September 2007

Distribution:
  Orig - Adse
    1 - PIPD/DF-2007-00079 ACC

**FOIA\RFC 00079 DNI Hofmann ACC.doc**

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
DIRECTOR OF THE INTELLIGENCE STAFF

Mr. John F. Hackett
Chief, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 600
Washington, DC 20009

Reference: DF-2007-00080

Dear Ms. Hofmann:

On 4 September 2007 the Office of the Director of National Intelligence received your facsimile dated 31 August 2007, wherein you requested under the Freedom of Information Act (FOIA) records concerning:

> "... .exchanges that Director McConnell or other ODNI officials have had with members of the Senate or House of Representatives concerning amendments to FISA ..."

We accept your request and have assigned it the reference number above. Please use this number when corresponding with us so that we can identify it easily. In addition, your request for expedited processing is granted and your request will be processed as soon as practicable.

If you have any questions you may contact the FOIA Requester Service Center at 571-204-4774.

Sincerely,

John F. Hackett
Director, Information Management Office

IMS/IRRG/PIPD/carey/.../6 September 2007

Distribution:
   Orig - Adse
     1 - PIPD/DP-2007-00080 ACC

**FOIA\RFC 00080 DNI Hofmann ACC.doc**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 06-1988 (ESH) |
| DEPARTMENT OF HOMELAND SECURITY, | ) ) ) | |
| Defendant. | ) ) ) | |

## STIPULATED DISMISSAL OF PLAINTIFF'S SECOND CAUSE OF ACTION

Plaintiff Electronic Frontier Foundation (EFF) and Defendant Department of Homeland Security (DHS), by counsel, hereby stipulate and agree as follows:

1.      Defendant DHS has granted news media status to Plaintiff EFF based on the representations contained in EFF's FOIA requests, which demonstrate that EFF is an "entity that is organized and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6). Defendant DHS will continue to regard Plaintiff EFF as a "representative of the news media" absent a change in circumstances that indicates that EFF is no longer an "entity that is organized and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6).

2.      Accordingly, the parties herewith agree to the dismissal of Plaintiff EFF's Second Cause of Action, related to EFF's status as a "representative of the news media."

3.      The parties further agree that each will pay its own fees and costs for work on the dismissed claim.

SO STIPULATED AND AGREED this 27th day of February, 2007.

  /s/ David L. Sobel
DAVID L. SOBEL                          PETER D. KEISLER
D.C. Bar 360418                         Assistant Attorney General

MARCIA HOFMANN                          JEFFREY A. TAYLOR
D.C. Bar 484136                         United States Attorney

ELECTRONIC FRONTIER FOUNDATION          ELIZABETH J. SHAPIRO
1875 Connecticut Avenue, N.W.           D.C. Bar 418925
Suite 650                               Assistant Branch Director
Washington, D.C. 20009                  U.S. Department of Justice
(202) 797-9009                          Civil Division, Federal Programs Branch

*Counsel for Plaintiff*

                                          /s/ John R. Coleman
                                        JOHN R. COLEMAN
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        20 Massachusetts Avenue, NW, Room 6118
                                        Washington, D.C. 20530
                                        (202) 514-4505

                                        *Counsel for Defendant*

-2-



**United States Department of State**

*Washington, D.C. 20520*

May 1, 2007
Case Number: 200701765

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W., Suite 650
Washington, DC 20009

Dear Ms. Hofmann:

This is in response to your Freedom of Information Act (FOIA) request, dated March 19, 2007 for copies of documents concerning copyright matters between the U.S. and Canada.

We will begin the processing of your request based upon the information provided in your communication. We will notify you as soon as responsive material has been retrieved and reviewed.

We wish to advise you that the cut-off date for retrieving records is either the date you have given the Department by specifying a particular time frame or the date the search is initiated.

**Fees:** The Freedom of Information Act requires agencies to assess fees to recover the direct costs of processing requests, unless a fee waiver has been granted.

By making a FOIA request, you have agreed to pay all applicable fees up to $25.00 unless a fee waiver has been granted. You may

Office of Information Programs and Services
U.S. Department of State SA-2
Washington, DC 20522-8100
Web site: foia.state.gov

Inquiries:
Phone: 1-202-261-8484
FAX: 1-202-261-8579
email: FOIAStatus@state.gov

-2-

specify a willingness to pay a greater or lesser amount. If the estimated fees exceed this limit, you will be notified.

Based upon the information that you have provided, we have placed you in the "news media" requester category. This category requires us to assess:

- duplication costs after first 100 pages.(see 22 CFR 171, enclosed)

Therefore, without an agreement to pay fees please be advised that your request will be processed without cost up to the required duplication of the first 100 pages.

Please let us know if you are willing to pay the fees that will incurred in the processing of your request. You may set a limit of the maximum amount that you wish to pay.

Based upon the information provided in your letter, your request for a fee waiver has been denied. If you wish to appeal this decision, you may write to the Chief, Requester Liaison Division, at the address given on the bottom of this page. Your appeal should address the points listed in the enclosed sheet entitled "Requests for Fee Waivers." Your appeal must be sent to us within 30 days from the date that you receive this letter.

While we will make every effort to meet the time limits cited in the Freedom of Information Act (5 USC § 552), unusual circumstances

Office of Information Programs and Services
U.S. Department of State SA-2
Washington, DC 20522-8100
Web site: foia.state.gov

Inquiries:
Phone: 1-202-261-8484
FAX: 1-202-261-8579
email: FOIAStatus@state.gov

- 3 -

may arise for extending the time limit (see enclosure).  We appreciate your patience in this matter.

If you have any questions, please do not hesitate to contact us.  We can provide faster service if you include the case number of your request in your communications with us.

We are pleased to be of service to you.

Sincerely,

Katrina M. Wood
Requester Communications Branch

Enclosure: As stated.

Office of Information Programs and Services
U.S. Department of State SA-2
Washington, DC 20522-8100
Web site: foia.state.gov

Inquiries:
Phone: 1-202-261-8484
FAX: 1-202-261-8579
email: FOIAStatus@state.gov



**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

January 23, 2007

BY FACSIMILE — (301) 688-4762

National Security Agency
ATTN: FOIA Office (DC34)
9800 Savage Road STE 6248
Ft. George G. Meade, MD 20755-6248

RE:    Freedom of Information Act Request and
       Request for Expedited Processing

Dear Sir or Madam:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the National Security Agency on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On January 9, 2007, the Washington Post reported:

> When Microsoft introduces its long-awaited Windows Vista operating system this month, it will have an unlikely partner to thank for making its flagship product safe and secure for millions of computer users across the world: the National Security Agency.
>
> For the first time, the giant software maker is acknowledging the help of the secretive agency, better known for eavesdropping on foreign officials and, more recently, U.S. citizens as part of the Bush administration's effort to combat terrorism. The agency said it has helped in the development of the security of Microsoft's new operating system -- the brains of a computer -- to protect it from worms, Trojan horses and other insidious computer attackers.

Alec Klein and Ellen Nakashima, "For Windows Vista Security, Microsoft Called in Pros," *Washington Post*, Jan. 9, 2007, at D01 (attached hereto).

We are seeking all agency records (including, but not limited to, electronic records) related to the NSA's review of and input on the configuration of the Microsoft Windows Vista operating system ("Vista").

1875 Connecticut Ave., NW · Suite 650 · Washington, DC 20009
☎ 202 797 9009    📠 202 797 9066    🌐 www.eff.org    ✉ information@eff.org

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information that "is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 32 CFR § 286.4(d)(3)(ii). According to DOD regulations, information is "urgently needed" when it "has a particular value that will be lost if not disseminated quickly. Ordinarily this means a breaking news story of general public interest." 32 CFR § 286.4(d)(3)(ii)(A). The information we request easily satisfies this standard.

The government activity at issue here — the NSA's involvement in the configuration of Microsoft's latest operating system — raises serious questions about the Department of Defense's interest in Vista's development. Indeed, the NSA's involvement in the system's configuration has already attracted substantial media interest since the publication of the *Washington Post* story. Specifically, a Google News search for "Vista and 'National Security Agency'" returned 67 results from news outlets throughout the world since January 9, 2007 (see first page of Google News search results attached hereto).

Furthermore, the *Washington Post* reported that Microsoft plans to make Vista available to consumers on January 30, 2007, and the system will likely be used by more than 600 million computer users by 2010. Thus, the information we request is unquestionably the subject of a breaking news story of general public interest particularly in the days leading to the product launch.

The purpose of this request is to obtain information directly relevant to the NSA's involvement in Vista's development, which has attracted considerable interest from the press and public in the past several days. The information we request is the subject of a breaking news story of general public interest, and therefore clearly meets the standard for expedited processing set forth in DOD regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information."

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a "representative of the news media" pursuant to the FOIA and 32 C.F.R. § 286.28(e)(7). In requesting this classification, we note that the Department of Homeland Security has recognized that EFF qualifies as a "news media" requester, based upon the publication activities set forth below (see DHS letter, attached hereto). We further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

2



NATIONAL SECURITY AGENCY
CENTRAL SECURITY SERVICE
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FOIA Case: 52276
6 February 2007

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, NW
Suite 650
Washington, DC 20009

Dear Ms. Hofmann:

This is an initial response to your Freedom of Information Act (FOIA)
request submitted via facsimile on 23 January 2007, which was received by
this office on 24 January 2007, for all agency records (including, but not
limited to, electronic records) related to the NSA's review of and input on the
configuration of the Microsoft Windows Vista operating system ("Vista"). Your
request has been assigned Case Number 52276.

As we began to process your request, we realized that the first page of the
actual request was missing from your 18-page facsimile package. On
1 February 2007, a member of my staff contacted you to advise you of this fact.
As a result, you submitted another facsimile of your original five-page request,
which we received and have begun to process. There is certain information
relating to this processing about which the FOIA and applicable Department of
Defense (DoD) and NSA/CSS regulations require we inform you.

For purposes of this request and based on the information you provided
in your letter, you are considered a representative of the media. Unless you
qualify for a fee waiver or reduction, you must pay for duplication in excess of
the first 100 pages. Your request for a fee waiver has been granted. In
addition, please be advised your request for expedited treatment has been
accepted. We are currently in the process of searching for responsive
documents and will notify you of the status of your request as soon as that
search has been completed.

Correspondence related to your request should include the case number
assigned to your request, which is included in the first paragraph of this letter.
Your letter should be addressed to National Security Agency, FOIA Office

FOIA Case: 52276

(DC34), 9800 Savage Road STE 6248, Ft. George G. Meade, MD 20755-6248 or may be sent by facsimile to 443-479-3612. If sent by fax, it should be marked for the attention of the FOIA office. The telephone number of the FOIA office is 301-688-6527.

Sincerely,

*Marianne Stigsar*
for

PAMELA N. PHILLIPS
Chief
FOIA/PA Office

# EXHIBIT

# B



**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

DEC 2 8 2007

Ms. Marcia Hofmann                          Re:    OAG/08-R0183
Electronic Frontier Foundation                     OLA/08-R0184
454 Shotwell Street                                OLP/08-R0185
San Francisco, CA 94110                            MAP:NDD

Dear Ms. Hofmann:

   This is to acknowledge receipt of your three letters dated December 21, 2007, which were received in this Office on December 27, 2007, in which you requested all records concerning communications Department of Justice officials had with Congress and/or telecommunications companies from September 1, 2007, to the present regarding amendments to the Foreign Intelligence Surveillance Act. This response is made on behalf of the Offices of the Attorney General, Legislative Affairs and Legal Policy.

   With regard to your requests for expedited processing, I have determined that for purposes of these requests, it is appropriate to afford them expedited processing. At this time, your requests have been assigned to a FOIA Specialist in this Office and record searches have been initiated in the Offices of the Attorney General, Legislative Affairs and Legal Policy.

   We have not yet made a decision on your requests for fee waivers. We will do so after we determine whether fees will be assessed for these requests.

   If you have any questions or wish to discuss the processing of your requests, you may contact Julie N. Johns, the analyst processing your requests, by telephone at the above number or you may write to her at the above address.

                              Sincerely,

                              Melanie Ann Pustay

                              Melanie Ann Pustay
                              Director

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICE OF THE DIRECTOR OF NATIONAL<br>INTELLIGENCE, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)  Civil Action No. 08-1023-JSW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters

("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the

FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for

Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy,

procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as

a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an

attorney who has been licensed to practice law in the State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 192

employees who staff a total of ten (10) FBIHQ units and a field operational service center unit whose

collective mission is to effectively plan, develop, direct, and manage responses to requests for access to

FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended;

Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential

and Congressional directives. My responsibilities also include the review of FBI information for

classification purposes as mandated by Executive Order 12958, as amended,[1] and the preparation of

affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2]  I have been

designated by the Attorney General of the United States as an original classification authority and a

declassification authority pursuant to Executive Order 12958, as amended, §§ 1.3 and 3.1.  The

statements contained in this declaration are based upon my personal knowledge, upon information

provided to me in my official capacity, and upon conclusions and determinations reached and made in

accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the

FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5

U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am aware of the

treatment which has been afforded the 15 pages of FBI-originated documents that were referred on

April 4, 2008, by U.S. Department of Justice ("DOJ"), Office of Information and Privacy ("OIP") in

connection with plaintiff's request to them.

(4)     I am advised that by letter dated December 21, 2007, the Electronic Frontier

---

[1] 60 Fed. Reg. 19825 (1995) and 69 Fed. Reg. 15315 (2003).

[2] 5 U.S.C. § 552(b)(1).

2

foundation ("EFF") submitted a FOIA request to the Office of the Attorney General ("OAG"), U.S.

Department of Justice ("DOJ") for "all agency records from September 1, 2007 to the present

concerning briefings, discussions, or other exchanges that DOJ officials have had with 1) members of

the Senate or House of Representatives and 2) representatives or agents of telecommunications

companies concerning amendments to FISA, including any discussions or immunizing

telecommunications companies or holding them otherwise unaccountable for their role in government

surveillance activities." **(See Exhibit A.)**

    (5)    I have been further advised that on April 4, 2008, the Court in the above-captioned

matter granted plaintiff's request for a preliminary injunction requiring defendants to provide "an initial

release of documents no later than April 17, 2008 . . . and a final release of all responsive, non-exempt

documents no later than April 21, 2008." The Court also directed defendants to provide "an affidavit

or declaration attesting to Defendants' compliance, and setting forth the basis for withholding any

responsive documents it does not release."

    (6)    The FBI, although a component of defendant DOJ, is not directly involved in this case,

not having received a direct FOIA request from plaintiff. However, the FBI is providing this

declaration consistent with the Court's April 4, 2008 Order in order to address 15 pages of FBI-

originated material which were referred to the FBI for direct response by the DOJ Office of

Information and Privacy ("OIP") on behalf of the OAG. The referred documents concern statements

made by FBI Director Robert S. Mueller III, before the Permanent Select Committee

3

on Intelligence, United States House of Representatives, regarding the Foreign Intelligence Surveillance Act ("FISA") on September 6, 2007.[3]

(7)    The FBI has processed and released all reasonably segregable information from the 15 pages of referred records responsive to plaintiff's request to the ODAG. The remaining information continues to warrant classification at the "Secret " level, and is exempt from disclosure pursuant to E.O. 12958, as amended, §§ 1.4 categories (c) intelligence activities (including special activities) or methods, and (d) foreign relations or foreign activities of the United States. This information is therefore exempt from disclosure pursuant to FOIA Exemption 1, 5 U.S.C. § 552 (b)(1). In addition, these 15 pages also contain information that implicates sensitive intelligence sources and methods protected from disclosure by the National Security Act of 1947, as amended, 50 U.S.C. § 403l(i), and this information is also exempt from disclosure pursuant to FOIA Exemption 3, 5 U.S.C. § 552(b)(3).

## CONCLUSION

(8)    In sum, the FBI is hereby releasing plaintiff 5 pages in their entireties, and 10 pages with redactions. **(See Exhibit B.)**

---

[3] This declaration is submitted without prejudice to the FBI's rights to provide additional information regarding the processing of the 15 referred pages and/or the reasons for any withholdings. The FBI specifically reserves the right to submit additional information, as appropriate, in the context of summary judgment or other subsequent proceedings in this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A and B attached hereto are true and correct copies.

Executed this 21st day of April, 2008.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 08-1023-JSW |
| v. ) | |
| ) | |
| OFFICE OF THE DIRECTOR OF NATIONAL ) | |
| INTELLIGENCE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

# EXHIBIT A

 **Electronic Frontier Foundation**

December 21, 2007

**VIA FACSIMILE** — (202) 514-1009

Carmen L. Mallon
Chief of Staff
Office of Information and Privacy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, DC 20530-0001

RE:    <u>Freedom of Information Act Request and Request for Expedited Processing</u>

Dear Ms. Mallon:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Justice Office of the Attorney General on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On August 5, 2007, President Bush signed into law the Protect America Act, legislation which amended the Foreign Intelligence Surveillance Act ("FISA") to expand the government's power to intercept communications without warrants, as well as shield telecommunications companies from future liability for their role in such activity.

Since the passage of this law, the Administration has tried to convince Congress to amend FISA to make it impossible for courts to impose liability on telecommunications companies for participating in a massive and illegal warrantless spying operation conducted by the National Security Agency. *See Signing Statement, President Bush Commends Congress on Passage of Intelligence Legislation, Aug. 6, 2007; James Risen, Bush Signs Law to Widen Reach for Wiretapping, NY Times*, Aug. 6, 2007; Mark Hosenball and Michael Isikoff, Case Dismissed?: The Secret Lobbying Campaign Your Phone Company Doesn't Want You to Know About, *Newsweek*, updated Sept. 26, 2007, *available at* http://www.newsweek.com/id/41142; Eric Lichtblau, James Risen and Scott Shane, *Wider Spying Fuels Aid Plan for Telecom Industry, NY Times*, Dec. 16, 2007.

We are seeking all agency records from September 1, 2007 to the present concerning briefings, discussions, or other exchanges that Justice Department officials have had with 1) members of the Senate or House of Representatives and 2) representatives or agents of telecommunications

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 2

companies[1] concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities. This request includes, but is not limited to, all e-mail, appointment calendars, telephone message slips, or other records indicating that such briefings, discussions, or other exchanges took place.

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to information about which there is "[a]n urgency to inform the public about an actual or alleged federal government activity," and it is "made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii). The information we request easily satisfies this standard.

As an initial matter, it is worth noting that the DOJ and Office of the Director of National Intelligence recently granted expedited processing for FOIA requests nearly identical to this one (see DOJ and ODNI letters granting expedited processing attached hereto).

The federal government activity at issue here — DOJ efforts to secure immunity for telecoms engaged in illegal surveillance — raises serious questions about the DOJ's interests in revision of the FISA. Moreover, the Protect America Act includes a sunset provision requiring Congress to decide within weeks whether to reauthorize the legislation. This decisionmaking process has involved, and will continue to involve, congressional debate about whether to expand the law further, and if so, how much. Because Congress will imminently consider modifying FISA again, there is an urgency to inform the public about the lobbying forces pushing for reform of the law. The information we have requested will help the public and Congress fully participate in the current and ongoing debate over whether the government's authority to conduct electronic surveillance should be further expanded and facilitated by telecommunications companies.

The purpose of this request is to obtain information directly relevant to the DOJ's communications with members of Congress and telecommunications carriers about updating FISA to grant the companies retroactive immunity for illegal activities. There is an urgency to inform the public about the information we seek. Therefore, this request clearly meets the

---

[1] The phrase "representatives or agents of telecommunications companies" is intended to include lobbyists and lawyers acting on behalf of such companies. According to Newsweek, these individuals may include, but are not limited to, "powerhouse Republican lobbyists Charlie Black and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is representing Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under President George W. Bush who now represents AT&T." Mark Hosenball and Michael Isikoff, Case Dismissed?, *Newsweek*, updated Sept. 26, 2007.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 3

standard for expedited processing set forth in DOJ regulations.

Further, as I explain below in support of our request for "news media" treatment, EFF is
"primarily engaged in disseminating information."

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a
"representative of the news media" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(6). In
requesting this classification, we note that the Department of Homeland Security and Department
of State have recognized that EFF qualifies as a "news media" requester based upon the
publication activities set forth below (see DHS stipulation and State Department letter attached
hereto). In addition, the National Security Agency has previously determined that EFF is not
only a "news media requester," but also "primarily engaged in disseminating information" for
purposes of expedited processing (see attached EFF FOIA request and NSA response, in which
EFF requested expedited processing because it sought information "urgently needed by an
individual primarily engaged in disseminating information in order to inform the public
concerning actual or alleged Federal Government activity," and NSA granted the request). We
further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different
agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d
300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280,
1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil
liberties in the digital age."[2]  One of EFF's primary objectives is "to educate the press,
policymakers and the general public about online civil liberties."[3]  To accomplish this goal, EFF
routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received
46,682,194 hits in July 2007 — an average of 62,744 per hour. The web site reports the latest
developments and contains in-depth information about a variety of civil liberties and intellectual
property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector
currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at
http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet.
DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in

---

[2] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/
pqShowGsReport.do?npoId=561625 (last visited Dec. 18, 2007).
[3] *Id.*

technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 510,633 hits in July 2007.[4]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 2,600 times from EFF's in July 2007.

Due to these extensive publication activities, EFF is a "representative of the news media" under the FOIA and agency regulations.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k). To determine whether a request meets this standard, Department of Justice components determine whether "[d]isclosure of the requested information is likely to contribute significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. §§ 16.11(k)(i), (ii). This request clearly satisfies these criteria.

First, the DOJ's relationship with telecommunications companies concerns "the operations or activities of the government." 28 C.F.R. § 16.11(k)(2)(i). Furthermore, the DOJ's push to amend

---

[4] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

Freedom of Information Act Request and Request for Expedited Processing
December 21, 2007
Page 5

FISA unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on how and why the DOJ is lobbying to immunize telecommunications companies from liability for their role in conducting illegal surveillance.

Third, the requested material will "contribute to public understanding" of the DOJ's efforts to modify FISA. 28 C.F.R. § 16.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of the reasons why and manner in which the DOJ is lobbying for legal reform, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of the DOJ's push to amend FISA to protect telecommunications companies. 28 C.F.R. § 16.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested information will help inform the public about the Justice Department's efforts to reform the law and the interests behind them, as well as contribute to the public debate about whether FISA should be further modified.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 28 C.F.R. § 16.11(k)(3). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Thank you for your consideration of this request. As applicable Department regulations provide, we will anticipate your determination within ten (10) calendar days. 28 C.F.R. § 16.5(d)(1). Please be advised that, given the urgency of this matter, EFF intends to seek immediate judicial relief if a response to this request for expedition is not issued in a timely manner.

Sincerely,

Marcia Hofmann
Staff Attorney

Enclosures

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 08-1023-JSW |
| v. | ) |
| | ) |
| OFFICE OF THE DIRECTOR OF NATIONAL | ) |
| INTELLIGENCE, et al., | ) |
| | ) |
| Defendants. | ) |

# EXHIBIT B

SE~~CRE~~T//NOFORN



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**Statement of
Robert S. Mueller III
Director
Federal Bureau of Investigation
Before the
Permanent Select Committee on Intelligence
United States House of Representatives
Concerning
The Foreign Intelligence Surveillance Act
September 6, 2007**

(U)  Good morning Chairman Reyes, Representative Hoesktra, and members of the Committee.

I am pleased to be here today to discuss modernization of the Foreign Intelligence Surveillance Act

(FISA), particularly the impact of the recently passed Protect America Act of 2007 on FBI

operations.  I would also like to thank you for your continued oversight of the Bureau and your

efforts to ensure our success as we pursue the shared goals of making America safer.

(U)  In your invitation to testify, the Committee asked that I address "the legal authorities provided

to the National Security Agency after September 11, 2001 and how the FBI worked with the NSA

in connection with those authorities; how the FBI worked with the NSA after the Terrorist

Surveillance Program was brought under the authority of the FISA Court; how the FBI will work

with NSA under the Protect America Act; the impact that law will have on FBI operations; and any

permanent changes the Congress should consider making to FISA."

1

DATE: 04-18-2008
CLASSIFIED BY 65179 DMH/HKG/CH
REASON: 1.4 (C,D)
DECLASSIFY ON: 04-18-2033

SE~~CRE~~T//NOFORN

OLA-147

SECRET//NOFORN

### (U) NSA Post-9/11 Program Activities

(S//NF) I will defer to the NSA to explain the legal authorities that were given to it by the President following the 9/11 attacks but will describe how those authorities intersected with the FBI's authorities. Following the President's grant of expanded authority to the NSA, the Attorney General directed the FBI to cooperate with the NSA. Operationally, FBI's involvement has largely been comprised of receiving information from NSA for transmittal as leads to the appropriate FBI field office. Our agents and analysts who are assigned to work at NSA take the leads that are developed from the program, supplement those leads with information already known to the FBI, and communicate those leads to the appropriate field office for further investigation. Over the years, NSA and FBI have worked together to determine the characteristics of leads that are most likely to be of value to the FBI. Our operational relationship vis-a-vis the NSA's program did not change when the January 10, 2007, order was issued by the FISA Court.

### (U) Protect America Act of 2007

(S)    (S//NF)



(S)

b1
b3

(S)

(S)

2

SECRET//NOFORN

SECRET//NOFORN

(S)

b1
b3

That collection is vitally important to the safety and security of the United States and it should occur. Requiring FISA Court orders for such collection never made sense. The FISA Court should be focused on ensuring there is adequate information to meet the legal standard for collection of foreign intelligence from persons inside the United States, not non-U.S. persons outside the United States.

(S//NF) The Protect America Act of 2007 achieved the goal of amending FISA to take such foreign and international communications outside the requirements to obtain a FISA Court order, and it did so in a way that did no damage to the fundamental structure and protections U.S. citizens

(S)    enjoy from FISA.

b1
b3

(S//NF) For the FBI, this change of law will have substantial benefits.

(S)

b1
b3

3

SECRET//NOFORN

(S)

(S)

SECRET//NOFORN

Separate from the January 10, 2007 order issued by the FISA Court, the FBI currently has

approximately [____] FISA Court orders authorizing collection of [_____]    b1

(S) b3

(S) [____] Each one of those orders required substantial time and effort of the employees of our

Intelligence Community partners, of FBI agents, analysts and attorneys, of Department of Justice

attorneys, and of the judges and legal advisors of the FISA Court. Because we all have limited

resources, every person hour spent obtaining a court order to collect from [_____]

(S) [_____] is an hour that cannot be spent seeking and obtaining

FISA orders for individuals inside the United States who, though posing a national security threat,

are not as high a priority as the terrorist operatives on whom CIA or NSA were seeking coverage.    b1

b3

Put differently, by giving the Intelligence Community the ability to compel cooperation by

[_____] so that the Intelligence Community can collect foreign intelligence collection

(S) [_____] without a court order, Congress has freed up hundreds

of person hours that had been spent previously obtaining court orders to surveil non-U.S. persons

outside the United States. We anticipate that once the new FISA provision is fully operational, the

total number of FISA orders signed each year should be substantially reduced – perhaps by as much

as 50%.

(S)

(S//NF) Moving the collection of [_____] outside the strictures of the FISA Court    b1

b3

approval process should benefit the FBI in several respects. First, once we are no longer

(S) processing [_____] on behalf of our Intelligence Community partners, many agents at

4

SECRET//NOFORN

FBI Headquarters who are assigned to those duties will be free to return to their primary duties in    (S)

direct support of the FBI mission. Moreover, currently there are approximately [        ] attorneys

b1
b3

at DOJ's Office of Intelligence Policy and Review (OIPR) who work almost exclusively on

preparing FISA packages fo[                    ] Once all such accounts have been    (S)

transitioned to the new section 105B directives available under the Protect America Act, those

attorneys can return to national security legal work that is more directly associated with the

protection of privacy and civil liberties of Americans. Those attorneys have performed a great

service to the country, but their talents can be better directed at preparing FISA packages that

directly affect persons inside the United States. We anticipate that with those resources, DoJ will

reduce further the average length of time it takes to prepare FISA packages on FBI investigative

targets and will prepare renewal packages more quickly. Further, those additional resources can be

used for increased oversight of the FBI's national security program.


(U)  In addition to the benefits to the FBI, the new law will also benefit the FISA Court. Once we

have fully transitioned to the new law, the FISA Court will be able to focus its very limited

resources to evaluating requests for FISA orders that affect the privacy rights of persons inside the

United States.

(S)

b1
b3

(S//NF)  Although moving the collection of [        ] traffic outside of the strictures of the

FISA Court approval process will certainly relieve the FBI of many burdens associated with this

important collection, the FBI is expected to have continuing involvement in the collection.


5

SECRET//NOFORN



SECRET//NOFORN

(S)  Although the exact logistics have not been finalized, we anticipate that the FBI will be the interface between the [                                                    ] for this collection.

The FBI has strong, well-established relationships with all of the largest [                    ]

(S)  [            ] We anticipate that the FBI will play an intermediary role, and the FBI will rely on DoJ and ODNI to provide the appropriate oversight of our partners to ensure that they are, in fact, only

(S)  designating for coverage accounts that are reasonably believed [                ] and are applying their minimization procedures to reasonably ensure the privacy of U.S. persons.

b1
b3

(U) Commentators and others have raised two concerns with the new law. Some have expressed concern that the phrase "foreign intelligence information concerning persons reasonably believed to be outside the United States" that appears in Section 105B(a) is so broad that it could mean that the DNI and the AG could authorize – without a FISA Court order – collection of stored email of an American if the email "concerns" someone outside the United States. The FBI has never understood the word "concerning" as used in 105B(a) to relate to the contents of a communication. Our understanding has consistently been that in this context the phrase "foreign intelligence information concerning persons reasonably believed to be outside the United States" means foreign intelligence information collected from the communications of persons reasonably believed to be outside the United States. The FBI would have very grave concerns if that phrase were interpreted to allow, without consent and without a FISA Court order, the Intelligence Community to search the stored email accounts of individuals believed to be in the United States.

6

SECRET//NOFORN

SECRET//NOFORN

(U) The second issue that has been raised involves the collection of foreign intelligence from U.S. persons who are outside the United States. Because 105B by its terms is not limited to non- U.S. persons who are reasonably believed to be outside the United States, some have questioned whether this law would permit the government to target for collection U.S. persons who are outside the United States. The issue of collection of foreign intelligence from U.S. persons outside the United States has never been addressed by FISA; it has, however, long been addressed by Executive Order. Section 2.5 of E.O. 12,333 authorizes the Attorney General to approve surveillance and physical searches of U.S. persons outside of the United States. The Executive Order requires the Attorney General to make an individualized determination that there is probable cause to believe that the person being searched or surveilled is an agent of a foreign power. Thus, although the statute is silent as to the issue of U.S. persons outside the United States, by long-standing Executive Branch policy, such surveillance requires an individualized determination by the Attorney General. We fully anticipate that policy will continue.

### (U) Conclusion

(U) In conclusion, from the FBI's perspective, the Protect America Act will provide huge benefits for the FBI and the rest of the Intelligence Community and will do so without compromising the protections FISA had traditionally provided for persons inside the United States. Having said that, we recognize that the law was passed with a sunset provision. We look forward to working with Congress to renew and improve the law.

7

SECRET//NOFORN

SECRET//NOFORN

(U)  Mr. Chairman, I appreciate the opportunity to appear before this Committee and look forward

to answering your questions.  Thank you.

SECRET//NOFORN

SECRET / NOFORN



ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**Statement of**
**Robert S. Mueller III**
**Director**
**Federal Bureau of Investigation**
**Before the**
**Permanent Select Committee on Intelligence**
**United States House of Representatives**
**Concerning**
**The Foreign Intelligence Surveillance Act**
**September 6, 2007**

Good morning Chairman Reyes, Representative Hoesktra, and members of the Committee.

I am pleased to be here today to discuss modernization of the Foreign Intelligence Surveillance Act

(FISA), particularly the impact of the recently passed Protect America Act of 2007 on FBI

operations. I would also like to thank you for your continued oversight of the Bureau and your

efforts to ensure our success as we pursue the shared goals of making America safer.

In your invitation to testify, the Committee asked that I address "the legal authorities

provided to the National Security Agency after September 11, 2001 and how the FBI worked with

the NSA in connection with those authorities; how the FBI worked with the NSA after the Terrorist

Surveillance Program was brought under the authority of the FISA Court; how the FBI will work

with NSA under the Protect America Act; the impact that law will have on FBI operations; and any

DATE: 04-18-2008
CLASSIFIED BY 65179 DMH/HKG/CH
REASON: 1.4 (C, D)
DECLASSIFY ON: 04-18-2033

1


SECRET

OLA-148

SECRET / NOFORN

permanent changes the Congress should consider making to FISA."

**NSA Post-9/11 Program Activities**

 I will defer to the NSA to explain the legal authorities that were given to it by the President following the 9/11 attacks but will describe how those authorities intersected with the FBI's authorities. Following the President's grant of expanded authority to the NSA, the Attorney General directed the FBI to cooperate with the NSA. Operationally, FBI's involvement has largely been comprised of receiving information from NSA for transmittal as leads to the appropriate FBI field office. Our agents and analysts who are assigned to work at NSA take the leads that are developed from the program, supplement those leads with information already known to the FBI, and communicate those leads to the appropriate field office for further investigation. Over the years, NSA and FBI have worked together to determine the characteristics of leads that are most likely to be of value to the FBI. Our operational relationship vis-a-vis the NSA's program did not change when the January 10, 2007 order was issued by the FISA Court.

**Protect America Act of 2007**

(S)



b1
b3

(S)

(S)

(S)

2

SECRET

SECRET / NOFORN

(S)

b1
b3

That collection is vitally important to the safety and security of the United States and it should occur. Requiring FISA Court orders for such collection never made sense. The FISA Court should be focused on ensuring there is adequate information to meet the legal standard for collection of foreign intelligence from persons inside the United States, not non-U.S. persons outside the United States.

The Protect America Act of 2007 achieved the goal of amending FISA to take such foreign and international communications outside the requirements to obtain a FISA court order, and it did so in a way that did no damage to the fundamental structure and protections U.S. citizens enjoy from FISA.

(S)

b1
b3

For the FBI, this change of law will have substantial benefits.

(S)

b1
b3

Separate from the January 10, 2007 order issued by the FISA Court, the FBI currently has

SECRET / NOFORN

3

(S)

SECRET / NOFORN

approximately [ ] FISC orders authorizing collection of [                    ] (S)     b1
                                                                                        b3
[                                                                              ] (S)

Each one of those orders required substantial time and effort of the employees of our intelligence

community partners, of FBI agents, analysts and attorneys, of Department of Justice attorneys, and

of the judges and legal assistants of the FISA Court. Because we all have limited resources, every

(S) person hour spent obtaining a court order to collect from [                        ]

[                                    ] is an hour that cannot be spent seeking and obtaining FISA

orders for individuals inside the United States who, though posing a national security threat, are

not as high a priority as the terrorist operatives on whom CIA or NSA were seeking coverage. Put     b1
                                                                                                     b3
(S) differently, by giving the intelligence community the ability to compel cooperation by [      ]

[   ] so that the Intelligence Community can collect foreign intelligence collection [   ]
(S)
[                                    ] without a court order, Congress has freed up hundreds of

persons hours that had been spend previously obtaining court orders to surveil non-U.S. persons

outside the United States. We anticipate that once the new FISA provision is fully operational, the

total number of FISA orders signed each year should be substantially reduced – perhaps by as much

as 50%.                                                                                    (S)

        Moving the collection of [                    ] outside the strictures of the FISA Court

approval process should benefit the FBI in several respects. First, once we are no longer

(S) processing [                ] on behalf of our Intelligence Community partners, many agents at

FBI Headquarters who are assigned to those duties will be free to return to their primary duties in

direct support of the FBI mission. Moreover, currently there are approximately [      ] ttorneys     b1
                                                                                             (S)     b3

SECRET / NOFORN

4

SECRET / NOFORN

at DOJ's Office of Intelligence Policy and Review (OIPR) who work almost exclusively on

preparing FISA packages for [                    ] Once all such accounts have been     **(S)**     b1
b3

transitioned to the new section 105B directives available under the Protect America Act, those

attorneys can return to national security legal work that is more directly associated with the

protection of privacy and civil liberties of Americans. Those attorneys have performed a great

service to the country, but their talents can be better directed at preparing FISA packages that

directly affect persons inside the United States. We anticipate that with those resources, DoJ will

reduce further the average length of time it takes to prepare FISA packages on FBI investigative

targets and will prepare renewal packages more quickly. Further, those additional resources can be

used for increased oversight of the FBI's national security program.

　　　In addition to the benefits to the FBI, the new law will also benefit the FISA Court. Once

we have fully transitioned to the new law, the FISA Court will be able to focus its very limited

resources to evaluating requests for FISA orders that affect the privacy rights of persons inside the

United States.     **(S)**     b1
b3

　　　Although moving the collection of [        ] traffic outside of the strictures of the

FISA Court approval process will certainly relieve the FBI of many burdens associated with this

important collection, the FBI is expected to have continuing involvement in the collection.

Although the exact logistics have not been finalized, we anticipate that the FBI will be the interface

**(S)** between the [                                        ] for this collection.

　　　The FBI has strong, well-established relationships with all of the largest [                    ]

**(S)** [            ] We anticipate that the FBI will play an intermediary role, and the FBI will rely on DoJ

SECRET / NOFORN

5

SECRET / NOFORN

and DNI to provide the appropriate oversight of our partners to ensure that they are, in fact, only

(S)  designating for coverage accounts that are reasonably believed[                    ]and are                    b1
                                                                                                                   b3
applying their minimization procedures to reasonably ensure the privacy of U.S. persons.

Commentators and others have raised two concerns with the new law. Some have

expressed concern that the phrase "foreign intelligence information concerning persons reasonably

believed to be outside the United States" that appears in Section 105B(a) is so broad that it could

mean that the DNI and the AG could authorize – without a FISA Court order – collection of stored

email of an American if the email "concerns" someone outside the United States. The FBI has

never understood the word "concerning" as used in 105B(a) to relate to the contents of a

communication. Our understanding has consistently been that in this context the phrase "foreign

intelligence information concerning persons reasonably believed to be outside the United States"

means foreign intelligence information collected from the communications of persons reasonably

believed to be outside the United States. The FBI would have very grave concerns if that phrase

were interpreted to allow, without consent and without a FISA Court order, the intelligence

community to search the stored email accounts of individuals believed to be in the United States.

To the extent Congress sees this as a statutory ambiguity, we look forward to working with this

Committee to draft language to resolve any unintended ambiguity.

The second issue that has been raised involves the collection of foreign intelligence from

U.S. persons who are outside the United States. Because 105B by its terms is not limited to non-

U.S. persons who are reasonably believed to be outside the United States, some have questioned

whether this law would permit the government to target for collection U.S. persons who are outside

SECRET / NOFORN
6

SECRET / NOFORN

the United States. The issue of collection of foreign intelligence from U.S. persons outside the United States has never been addressed by FISA; it has, however, long been addressed by Executive Order. Section 2.5 of E.O. 12,333 authorizes the Attorney General to approve surveillance and physical searches of U.S. persons outside of the United States. The Executive Order requires the Attorney General to make an individualized determination that there is probable cause to believe that the person being searched or surveilled is an agent of a foreign power. Thus, although the statute is silent as to the issue of U.S. persons outside the United States, by long-standing Executive Branch policy, such surveillance requires an individualized determination by the Attorney General. We fully anticipate that policy will continue.

In conclusion, from the FBI's perspective, the Protect America Act will provide huge benefits for the FBI and the rest of the Intelligence Community and will do so without compromising the protections FISA had traditionally provided for persons inside the United States. Having said that, we recognize that the law was passed with a sunset provision and that some members of Congress have expressed a desire to alter some of the language in the Act. We believe that any alterations should continue to ensure that the intelligence community can collect foreign intelligence contained in electronic communications and telephone traffic of persons who are located outside the United States without obtaining a FISA order. We are, however, fully prepared to work with Congress to make improvements in the bill that appropriately balance national security with privacy concerns.

Mr. Chairman, I appreciate the opportunity to appear before this Committee and look forward to answering your questions. Thank you.

# EXHIBIT 6

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 08-1023 JSW |
| | ) | |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE and UNITED STATES DEPARTMENT OF JUSTICE | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |

## DECLARATION OF JAMES M. KOVAKAS

I, James M. Kovakas, make the following declaration under penalty of perjury.

1. I am Attorney-In-Charge of the Freedom of Information and Privacy Acts (FOI/PA) Office, Civil Division, Department of Justice. The FOI/PA Office responds to FOI/PA requests for records of the Civil Division, Department of Justice, made under the Freedom of Information Act (FOIA), 5 U.S.C. §552 (1994), as amended by the Electronic Freedom of Information Act Amendments of 1996, 5 U.S.C.A. §552, and/or the Privacy Act (PA), 5 U.S.C. §552a (1994). Pursuant to Civil Division Directive No. 137-80, I am authorized to exercise the authority of the Assistant Attorney General, Civil Division, to deny requests for records under 5 U.S.C. §§ 552 and 552a. My official duties include the supervision of all processing of such requests for Civil Division records. Pursuant to my duties I am familiar with the administrative

-1-

procedures used in the processing of record requests under the FOIA and the PA at the

Department of Justice. My knowledge of the processing of plaintiffs' request which is at issue in

this case results from my personal review of the documents as well as information obtained in my

official capacity.

2. By letter dated December 21, 2007, plaintiff Electronic Frontier Foundation submitted

a Freedom on Information Act request to the Department of Justice, Office of Information and

Privacy (OIP) for "all agency records from September 1, 2007 to the present concerning

briefings, discussions, or other exchanges that Justice Department Officials have had with 1)

members of the Senate or House of Representatives and 2) representatives or agents of

telecommunications companies concerning amendments to FISA, including any discussion of

immunizing telecommunications companies or holding them otherwise unaccountable for their

role in government surveillance activities."

3. On April 4, 2008, the Court in the above-captioned case granted plaintiff's motion for

a preliminary injunction. The Court, *inter alia*, ordered defendants "to provide a final release of

all responsive, non-exempt documents no later than April 21, 2008" and "to file with the Court

and serve upon Plaintiff's counsel[] an affidavit or declaration attesting to Defendants'

compliance and setting forth the basis for withholding any responsive documents it does not

release." This declaration is provided to plaintiff and the Court in accordance with the Court's

April 4, 2007 order[1].

---

[1]

The Civil Division submits this declaration without prejudice to its rights to provide additional
information regarding the processing of Plaintiff's FOIA request or the reasons for any withholdings. The
Civil Division specifically reserves the right to submit additional information in summary judgment or
other subsequent proceedings in this case.

4. On April 8, 2008 the Civil Division received the OIP referral of three records consisting of emails and attachments which had been identified as originating in or received in the Civil Division. I reviewed the records which consisted of a single email (1 page) an email chain (1 page with a 5 page attachment) and an email chain (2 pages) and determined that they were exempt from disclosure under 5 U.S.C. 552 (b)(5) as they constituted pre-decisional deliberative process, the disclosure of which would chill future deliberations within the Civil Division. I also determined that the records met the (b)(5) threshhold as they were inter/intra agency records that had not been disclosed outside the executive branch. Finally, I determined that there were no non-exempt portions that could be disclosed.

5. By letter dated April 17, 2008 I advised the requester/plaintiff of my administrative determination. A copy of that letter is attached as Exhibit A.


I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on this 17th day of April, 2008.


James M. Kovakas
Attorney-In-Charge
FOI/PA Office, Civil Division
Department of Justice



**U.S. Department of Justice**

Civil Division

---

*Washington, D.C. 20530*

JMK:jmk#145-FOI-9502                          April 17, 2008

Marcia Hofmann
Staff Attorney
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110

Dear Ms. Hofmann:

    This is in response to your December 21, 2007 Freedom of Information Act (FOIA) request addressed to the Office of Information and Privacy (OIP), for records from September 1, 2007 through the present concerning briefings, discussions, or other exchanges between the Department of Justice (DOJ) and members of Congress or representative of telecommunications companies about amendments to FISA. Your request was received in OIP on December 27, 2007.

    During the processing of your request, OIP identified three email records and attachments, consisting of nine pages that originated in or were received by the Civil Division. Pursuant to DOJ regulations, these records were referred to this office on April 4, 2008 for review and direct response to you.

    The subject records include a single email and two email chains, one with attachments. Pursuant to my review of these records under the FOIA, I have determined that they are exempt from disclosure under 5 U.S.C. 552 (b)(5) as they are pre-decisional internal deliberations disclosure of which would likely have a chilling effect on agency deliberations. These records were not exchanged outside of the executive branch and were reviewed to determine if non-exempt portions could be released..

    I am aware that the this FOIA request is the subject of pending litigation, however, I am required to provide you with your administrative appeal rights as follows. You may appeal my denial of access to records as outlined above by writing within 60 working days of the receipt of this letter to Director, Office of Information and Privacy, 1425 New York Avenue, Suite 11050, United States Department of Justice, Washington, D.C. 20530. Both the letter appealing the decision and the envelope should be clearly marked "FOIA APPEAL."

**EXHIBIT A**

−2−

Thereafter, judicial review would be available in the U.S. District Court in the district in which you reside or have your principal place of business or in the United States District Court for the District of Columbia.

Sincerely,

James M. Kovakas
Attorney In Charge
FOI/PA Unit, Civil Division